IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>      v.<br><br>GREGG M. AMORE, in his official capacity as Secretary of State for the State of Rhode Island,<br><br>      Defendant. | Civil No.   1:25-cv-00639 |

**MEMORANDUM OF LAW IN SUPPORT OF THE UNITED STATES' MOTION TO COMPEL PRODUCTION OF RECORDS PURSUANT TO 52 U.S.C. § 20701,** *et seq.*

# **TABLE OF CONTENTS**

INTRODUCTION…………………………………………………………………………...4

BACKGROUND…………………………………………………………………………….5

    A.    Title III of the Civil Rights Act of 1960……………………………………..5

    B.    The Attorney General made a written demand for Federal election records under the CRA stating the purpose and basis for her demand.………………………………..7

ARGUMENT……………………………………………………………………………….9

    A.    An Order to Show Cause to Produce Under the CRA Is Warranted……………………………………………………………………………….9

    B.    A State's Claims to Protecting Privacy Interests Are Not a Basis to Withhold the Information Requested…………………….…………………………………..11

    C.    The Attorney General is entitled to relief under the CRA's summary proceedings for obtaining Federal election records……………………………………………13

CONCLUSION…………………………………………………………….…………….14

# **TABLE OF AUTHORITIES**

**Cases**

*Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848 (M.D. Ala. 1960)………………………………………………………………………………….…5

*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013)………….………..12, 13

*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963)………………………….………4, 7, 11

*Crook v. S.C. Election Comm'n*, No. 2025-CP-40-06539 (Richland Cty. Comm. Pleas Oct. 1, 2025) …………………………………………………………………..………12

*Dinkens v. Attorney General*, 285 F.2d 430 (5th Cir. 1961)…………………….……..5

*Gonzalez v. Arizona*, 677 F.3d 383 (9th Cir. 2012)………………………………..13

*In re Gordon*, 218 F. Supp. 826 (S.D. Miss. 1963)……………………………..6, 14

*Kennedy v. Bruce*, 298 F.2d 860 (5th Cir. 1962)……………………………….…….6

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962)……………………………….passim

**Statutes**

52 U.S.C. § 20701……………………………………………………….……..passim

52 U.S.C. § 20703……………………………………………………………..passim

52 U.S.C. § 20704……………………………………………………………….8, 13

52 U.S.C. § 20501……...…………………………………………………..........……7

52 U.S.C. § 20507……………………………………………………………….7, 11

52 U.S.C. § 21083………………………………………………………….passim

## I.   INTRODUCTION

Section 301 of the Civil Rights Act of 1960 ("CRA") imposes a "sweeping" obligation on election officials, *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962).[1] It provides, "Every officer of election shall retain and preserve, for a period of twenty-two months from the date of [a federal election] *all* records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election…." 52 U.S.C. § 20701 (transferred from 42 U.S.C. § 1974) (emphasis added).

Section 303 provides the Attorney General of the United States a correspondingly sweeping power to obtain Federal election records: "Any record or paper required by [52 U.S.C. § 20701] to be retained and preserved shall, upon demand in writing by the Attorney General or [her] representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying… by the Attorney General or [her] representative…." 52 U.S.C. § 20703. The written demand need only "contain a statement of the basis and the purpose therefor." *Id.*; *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam).

On September 8, 2025, the Attorney General, through her representative, the Assistant Attorney General for Civil Rights, made a written demand pursuant to Section 303 of the CRA to Gregg M. Amore, the Secretary of State of the State of Rhode Island ("Secretary Amore"), to produce certain Federal election records covered by the CRA. *See* ECF 1, Compl. at ¶¶ 18-24. That written demand explained that the purpose was for enforcement of the list maintenance

---

[1] Caselaw addressing the CRA in any depth is confined to courts within the Fifth Circuit in the early years following the CRA's enactment. Since then, courts have not had occasion to revisit the issue. The United States is unaware of any courts disagreeing with the Fifth Circuit's approach to the CRA.

4

requirements of the National Voter Registration Act ("NVRA") and the Help America Vote Act ("HAVA"). *Id.* ¶ 20. Secretary Amore refused to produce the requested Federal election records. *Id.* ¶¶ 25-26. This litigation followed. *See* ECF 1, Compl.

Pursuant to Section 305 of the CRA, the United States, through the Attorney General, moves for a declaration that Secretary Amore is in violation of Section 303 of the CRA and for an order to compel Secretary Amore to produce the Federal election records identified in the written demand. *See Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 855-56 (M.D. Ala. 1960), *aff'd and adopted in full sub nom. Dinkens v. Attorney General*, 285 F.2d 430 (5th Cir. 1961) (per curiam). The CRA displaces the Federal Rules of Civil Procedure by creating a "special statutory proceeding." *Lynd*, 306 F.2d at 225. "All that is required is a simple statement by the Attorney General" or her representative that a written demand for Federal election records and papers covered by the statute was made, explaining that the person against whom an order is sought has failed or refused to make the requested records "'available for inspection, reproduction, and copying…'" *Id.* at 226 (quoting 42 U.S.C. § 1974b, transferred to 52 U.S.C. § 20703). The Attorney General, acting through her representative the Assistant Attorney General for Civil Rights, has satisfied those requirements. Accordingly, the United States respectfully requests that the Court issue an order compelling Secretary Amore to produce the Federal election records described in her written demand.

## II.     BACKGROUND

### A.     Title III of the Civil Rights Act of 1960.

Under Section 301 of the CRA, every "officer of election" must "retain and preserve … all records and papers which come into his possession relating to any … act requisite to voting in [a Federal] election" for a period of twenty-two months from that election, 52 U.S.C. § 20701.

Section 303 of the CRA provides, "Any record or paper required by section 301 to be retained and preserved shall, upon demand in writing by the Attorney General or [her] representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or [her] representative…." 52 U.S.C. § 20703. The written demand "shall contain a statement of the basis and the purpose therefor." *Id.*

If an officer of election refuses to comply with the CRA's command, the Act provides for "a special statutory proceeding in which the courts play a limited, albeit vital, role" in assisting the Attorney General's investigative powers. *Lynd*, 306 F.2d at 225. The Attorney General or her representative may request a Federal court to issue an order directing the officer of election to produce the demanded records, akin to "a traditional order to show cause, or to produce in aid of an order of an administrative agency." *Id.*

The special proceeding is "summary" in "nature" and neither "plenary [n]or adversary." *In re Gordon*, 218 F. Supp. 826, 826-27 (S.D. Miss. 1963); *see Kennedy v. Bruce*, 298 F.2d 860, 863 (5th Cir. 1962) (noting that this procedure "does not amount to the filing of a suit of any kind"). "All that is required is a simple statement by the Attorney General that after a … written demand" for Federal election records covered by Section 301 of the CRA (52 U.S.C. § 20701), "the person against whom an order for production is sought … has failed or refused to make such papers 'available for inspection, reproduction, and copying ….'" *Lynd*, 306 F.2d at 226 (quoting 52 U.S.C. § 20703). The court does not entertain "any other procedural device or maneuver – either before or during any hearing of the application – to ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand." *Id.* (quoting 52 U.S.C. § 20703). Rather, "[t]he Court, with expedition, should grant the

relief sought or, if the respondent-custodian opposes the grant of such relief, the matter should be set down without delay for suitable hearing on the matters open for determination." *Id.*

Those matters, though, are "severely limited." *Id.* The court may adjudicate only: (1) "whether the written demand has been made"; and (2) "whether the custodians against whom orders are sought have been given reasonable notice of the pendency of the proceeding." *Id.* Neither "the factual foundation for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose' contained in the written demand" nor "the scope of the order to produce" is open for review. *Id.*; *see Coleman*, 313 F.2d at 868. As the Fifth Circuit has explained, "No showing even of a prima facie case of a violation of Federal law need be made." *Id.* (citation omitted). Instead, "[i]f, after issuance of an order to produce, a genuine dispute subsequently arises as to whether or not any specified particular paper or record comes within [52 U.S.C. § 20701's] broad statutory classification," that issue may be decided by the court. *Lynd*, 306 F.2d at 226.

### B. The Attorney General made a written demand for Federal election records under the CRA stating the purpose and basis for her demand.

On September 8, 2025, the Attorney General, acting through her representative, the Assistant Attorney General for Civil Rights, sent a letter to Secretary Amore, "the chief state election official under section 10 of the National Voter Registration Act of 1993," R.I. Gen. Laws § 17-6-1.3, regarding Rhode Island's compliance with Federal list maintenance requirements. ECF 1, Compl. ¶¶ 18-24 (summarizing the September 8 Letter). The NVRA and HAVA have list maintenance requirements "to protect the integrity of the electoral process." 52 U.S.C. § 20501(b)(3). The statutes impose certain recordkeeping duties and require reasonable efforts to maintain lists of eligible voters for Federal elections. *See* 52 U.S.C. §§ 20507(a)(4)(A)-(B), 20507(i)(1), 21083(a)(1)(A).

The Attorney General's September 8 Letter requested, pursuant to Section 8(i) of the NVRA, a current electronic copy of Rhode Island's computerized statewide voter registration list ("SVRL"), which is required by HAVA. ECF 1, Compl. ¶¶ 19-21. The September 8 Letter specified that information produced must contain all fields, which includes the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required under HAVA to register individuals for federal elections. *Id.* ¶ 20. The September 8 Letter stated the demand was made pursuant to the CRA to assess Rhode Island's compliance with the list maintenance provisions of the NVRA and HAVA. *Id.*

The Attorney General, through the Assistant Attorney General, made clear in the September 8 Letter that she and her representatives would comply with Federal privacy laws applicable to the demanded Federal election records. *Id.* ¶¶ 22-23. For example, the letter pointed out that in addition to the Privacy Act, the CRA provides:

> Unless otherwise ordered by a court of the United States, neither the Attorney General nor any employee of the Department of Justice, nor any other representative of the Attorney General, shall disclose any record or paper produced pursuant to this chapter, or any reproduction or copy, except to Congress and any committee thereof, governmental agencies, and in the presentation of any case or proceeding before any court or grand jury.

ECF 1, Compl., Ex. 1 to Decl. of Maureen Riordan ("Riordan Decl."), September 8 Letter at 2 (quoting 52 U.S.C. § 20704).

The September 8 Letter further explained, "HAVA specifies that the 'last 4 digits of a social security number... shall not be considered a social security number for purposes of section 7 of the Privacy Act of 1974…'" *Id.* ¶ 21. In addition, the letter noted that any prohibition of disclosure of a motor vehicle record contained in the Driver's License Protection Act, codified at 18 U.S.C. § 2721(b)(1), is exempted when the disclosure is for use by a government agency, such

as the Department, that is carrying out its enforcement functions. *Id.* To facilitate Secretary Amore's safe transmission of the Federal election records, the Department provided instructions to use encrypted email or to send via the Department's secure file-sharing system. *Id.* ¶ 24.

On September 16, 2025, Secretary Amore answered the September 8 Letter refusing to produce the SVRL, claiming that "driver's license number or the last four digits of the registrant's social security number" constituted "personally identifiable information (PII)," which could not be released. *Id.* ¶¶ 25-26. Secretary Amore's letter did not identify any provisions in either federal or Rhode Island state law that prohibit the turning over of the requested information. *See* ECF 1, Compl., Ex. 2 to Riordan Decl. Instead of producing the required information, Secretary Amore wrote that he will be willing "provide [the Department] with a copy of the publicly available voter registration list." *Id.* at 1.

### III. ARGUMENT

**A. The United States is entitled to an Order to Compel under the CRA.**

An order to compel the production of documents under the CRA is appropriate when the Attorney General files a "simple statement" describing her written demand for inspection, reproduction, and copying, and explaining that the officer of election to whom it was directed has "failed or refused to make such papers 'available for inspection, reproduction, and copying.'" *Lynd*, 306 F.2d at 226 (citation omitted). The written demand must include "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703.

The September 8 Letter from the Assistant Attorney General for Civil Rights satisfies these requirements by: (1) making a written demand for inspection, reproduction, and copying of Federal election records, including the SVRL and records of voter registration application within twenty-two months of a Federal election; (2) directing that demand to Secretary Amore, an officer of

9

election as defined by Section 306 of the CRA;[2] and (3) stating that the purpose of the demand is "to ascertain Rhode Island's compliance with the list maintenance requirements of the NVRA and HAVA. ECF 1, Compl. ¶ 20.

Secretary Amore's attempt to limit the Attorney General to inspection of a "copy of [Rhode Island's] publicly available voter registration list," ECF 1, Compl., Ex. 2 to Decl. of Maureen Riordan ("Riordan Decl.") at 1, is insufficient to meet the CRA's requirements. Officers of election have no discretion to limit the Federal election records or papers or the content of those records made available to the Attorney General. *See* 52 U.S.C. § 20703; *see also* 52 U.S.C. § 20701 (referring to "all records and papers").

Moreover, a copy missing the information requested by the Attorney General would undermine the investigative purposes of Section 303 of the CRA. The Attorney General cannot assess compliance with HAVA and the NVRA without the full, unredacted SVRL and other requested Federal election records pertaining to Rhode Island's list maintenance efforts. HAVA prohibits a state from processing a voter registration application without the applicant's driver's license number, where an applicant has a current and valid driver's license, or, for other applicants, the last four digits of the applicant's social security number; for those lacking both identification

---

[2] Section 306 provides:

> As used in this chapter, the term ''officer of election'' means any person who, under color of any Federal, State, Commonwealth, or local law, statute, ordinance, regulation, authority, custom, or usage, performs or is authorized to perform any function, duty, or task in connection with any application, registration, payment of poll tax, or other act requisite to voting in any general, special, or primary election at which votes are cast for candidates for the office of President, Vice President, presidential elector, Member of the Senate, Member of the House of Representatives, or Resident Commissioner from the Commonwealth of Puerto Rico.

52 U.S.C. § 20706.

numbers, the state must assign a unique HAVA identifier. *See* 52 U.S.C. §§ 21083(a)(5)(A)(i)-(ii). Without the unredacted data including those identification numbers, the Attorney General cannot evaluate the state's compliance with HAVA.

Similarly, HAVA requires list maintenance to "be conducted in a manner that ensures" the elimination of duplicate names from the statewide list. 52 U.S.C. § 21083(a)(2)(B)(iii). Unredacted voter files, including the three identification numbers described above, are needed to determine if the state has a reasonable program of identifying and removing duplicate voter registrations. That is why twenty-five states and the District of Columbia (including Rhode Island) participate in the Electronic Registration Information Center ("ERIC") and routinely share that data with one another.

The same unredacted Federal election records, including the SVRL, are needed to assess Rhode Island's compliance with the NVRA. Section 8(a)(4) of the NVRA requires each state to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters…" 52 U.S.C. § 20507(a)(4). For example, use of unredacted voter data ensures that matches to identify deceased voters are more accurate and complete.

Secretary Amore has rejected the Attorney General's written demand pursuant to the CRA to produce Rhode Island's statewide VRL and other Federal election records. Consequently, the United States respectfully requests that this Court issue an Order to Compel Production requiring Secretary Amore to immediately produce those records through a secure method. *See Lynd*, 306 F.2d at 226; *Coleman*, 313 F.2d at 868.

### B. The CRA does not permit Secretary Amore to withhold Federal elections records because of privacy concerns.

Secretary Amore refused to produce the Federal election records demanded by the Attorney General under the CRA because he contends that they "must protect the personally identifiable

information of Rhode Island voters." ECF 1, Compl., Ex. 2 to Riordan Decl. at 2. To the extent that Secretary Amore rests on state law, the Supremacy Clause of the Constitution says otherwise. It is a basic tenet of our Federal system that when Federal and state law conflict, the Federal law governs. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 14 (2013) (quoting U.S. Const. art. I, § 4, cl. 1).

A South Carolina court recently confronted the same argument from an individual voter seeking to enjoin state officials from cooperating with the Attorney General. Addressing Federal preemption over state statutes governing privacy, the court explained, "Federal law likely requires the Election Commission to provide the requested information to DOJ, and while DOJ has also pointed to the National Voter Registration Act and the Help America Vote Act, Title III [of the Civil Rights Act] alone is sufficient to reach that conclusion." *Crook v. S.C. Election Comm'n*, No. 2025-CP-40-06539 (Richland Cty. Comm. Pleas Oct. 1, 2025), attached to the Declaration of Maureen Riordan as Ex. 3, at 10. The court noted, "Title III requires that, for 22 months after a federal election, a state election official 'retain and preserve' 'all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election.' 52 U.S.C. § 20701." *Id.* at 10-11. The court reasoned,

> Title III has long been understood to "encompass[], among other things, voting registration records," *McIntyre v. Morgan*, 624 F. Supp. 658, 664 (S.D. Ind. 1985), which is not surprising given the scope of the statutory text. And since HAVA's enactment two decades ago, registration records must include either "the applicant's driver's license number" or "the last four digits of the applicant's social security number." 52 U.S.C. § 21083(a)(5)(A). The Attorney General (or his representative) may demand in writing "[a]ny record or paper" that a state election official must keep under § 20701. *Id*. § 20703. That demand must simply "contain a statement of the basis and the purpose therefor." *Id*.

*Id.* at 11. As a result, the court found, "DOJ's request for South Carolina's voter registration list fits comfortably within this legal framework" and denied the voter's request to enjoin the state's

production of its list to the Department. *Id.* at 11-12. Any state-law privacy right to the contrary is preempted by the CRA's broad grant of access to the Attorney General. *See* 52 U.S.C. § 20703; *Gonzalez v. Arizona*, 677 F.3d 383, 394 (9th Cir. 2012), *aff'd sub nom. Inter Tribal Council*, 570 U.S. at 1. The Attorney General will comply with Section 304 of the CRA, 52 U.S.C. § 20704, as well as the other provisions of Federal privacy law described in the Complaint. *See* ECF 1, Compl. ¶¶ 22-23. Consequently, the Attorney General is entitled to the Federal election records she has demanded from Secretary Amore under the CRA.

      **C.**    **The Attorney General is entitled to relief under the CRA's summary proceedings for obtaining Federal election records.**

The CRA displaces the Federal Rules of Civil Procedure and creates a "special statutory proceeding" under which Secretary Amore, as an officer of election for Rhode Island, must produce the voter-registration lists and other Federal election records demanded by the Attorney General. *Lynd*, 306 F.2d at 225. The court in *Lynd* reasoned that a special proceeding was necessary to obtain Federal election records because no other procedural device or maneuver was available:

> There is no place for a motion for a bill of particulars or for a more definite statement under F.R.Civ.P. 12(e), 28 U.S.C.A. There is no place for any other procedural device or maneuver— either before or during any hearing of the application— to ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand. [52 U.S.C. § 20703]. Thus with respect to the reasons why the Attorney General considers the records essential, there is no place, either as a part of pleadings, discovery, or trial, for interrogatories under F.R.Civ.P. 33, oral depositions of a party under F.R.Civ.P. 26(a), 30, production of documents under F.R.Civ.P. 34, or request for admissions as to facts or genuineness of documents or other things under F.R.Civ.P. 36, 37.

*Id.* at 226.

The "special statutory proceeding" of these statutes is "a summary proceeding." *Id.* at 225-26. To institute this proceeding, the United States need only file a "simple statement" describing its written demand for the Federal election records and explaining that Secretary Amore, acting as

13

an officer of election for Rhode Island, "failed or refused to make such papers 'available for inspection, reproduction, and copying.'" *Id.* at 226 (citation omitted). Accordingly, the Court "should grant the relief sought or, if the respondent-custodian opposes the grant of such relief, the matter should be set down without delay for suitable hearing on the matters open for determination." *Id.* The Attorney General's right to reproduction and copying of Federal election records is not dependent upon any other showing. *Id.* Therefore, the United States respectfully requests that this Court issue an Order to Compel directing Secretary Amore and Rhode Island to produce the Federal election records described in the Attorney General's written demand.

## IV.     CONCLUSION

For the foregoing reasons, the United States requests that this Court enter an Order directing Defendants to comply with the Attorney General's request for all Federal election records described in its September 8 Letter. Those records should be provided electronically to the United States within fifteen days, or within such time as this Court deems reasonable. *See Gordon*, 218 F. Supp. at 827 (deeming "fifteen days [a]s a reasonable time"). For the Court's convenience, a proposed form of order is provided as Exhibit 1.

Dated: December 2, 2025.

                        Respectfully submitted:

                        HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division


*/s/ James Thomas Tucker*
MAUREEN RIORDAN
Acting Chief, Voting Section
TIMOTHY F. MELLETT
JAMES THOMAS TUCKER
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Room 8.923
Washington, D.C. 20530
Telephone: (202) 307-2767
Email: james.t.tucker@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2025, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

*/s/ James Thomas Tucker*
James Thomas Tucker
