# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>GREGG M. AMORE, in his official capacity as Secretary of State for the State of Rhode Island,<br><br>    Defendant. | Case No. 1:25-cv-00639<br>(Hon. Mary McElroy) |

## MOTION OF COMMON CAUSE, CATHERINE SAUNDERS, STUART WALDMAN, AND JULIA SANCHES TO INTERVENE AS DEFENDANTS

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITIES .............................................................................................. ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

    A.    DOJ's Efforts to Obtain Private Voter Information.......................................... 2

    B.    Proposed Intervenors ...................................................................................... 7

ARGUMENT ....................................................................................................................... 8

    I.  MOVANTS ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT. ................ 8

        A. The Motion to Intervene Is Timely ................................................................ 8

        B. Proposed Intervenors Have Concrete Interests in the Underlying Litigation ................ 9

        C. Disposition of this Case May Threaten the Interests of Proposed Intervenors............. 13

        D. Secretary Amore's Interests Are Different from Those of Proposed Intervenors. ........ 13

    II.  IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION .......................................................................................... 16

CONCLUSION.................................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*Allco Renewable Energy Ltd. v. Haaland*,
  No. 1:22-cv-10921-IT, 2022 WL 2117828 (D. Mass. June 13, 2022) ....................................... 9

*Am. Farm Bureau Federation v. EPA*,
  278 F.R.D. 98 (M.D. Pa. 2011) ............................................................................................. 15

*B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*,
  440 F.3d 541 (1st Cir. 2006) ................................................................................................. 13

*Berger v. N.C. State Conference of the NAACP*,
  597 U.S. 179 (2022) ............................................................................................................. 15

*Common Cause Rhode Island v. Gorbea*, No. 1:20-CV-00318-MSM-LDA, 2020 WL 4365608
  (D.R.I. July 30, 2020) ............................................................................................................ 9

*Conservation Law Foundation of New England, Inc. v. Mosbacher*,
  966 F.2d 39 (1st Cir. 1992) ................................................................................................... 14

*Cotter v. Massachusetts Association of Minority Law Enforcement Officers*,
  219 F.3d 31 (1st Cir. 2000) ............................................................................................. 10, 13

*Doe v. Town of Lisbon*,
  No. 1:21-cv-944, 2022 WL 2274785 (D.N.H. June 23, 2022) ............................................... 16

*Donald J. Trump for President, Inc. v. Boockvar*,
  No. 4:20-cv-2078, 2020 WL 8262029 (M.D. Pa. Nov. 12, 2020) .................................... 12, 17

*Donaldson v. United States*,
  400 U.S. 517 (1971) ............................................................................................................... 9

*In re Efron*,
  746 F.3d 30 (1st Cir. 2014) ..................................................................................................... 9

*Judicial Watch, Inc. v. Illinois State Board of Elections*,
  No. 24-C-1867, 2024 WL 3454706 (N.D. Ill. July 18, 2024 ................................................. 14

*Judicial Watch, Inc. v. Pennsylvania*,
  No. 1:20-cv-708 (M.D. Pa. Nov. 19, 2020) ........................................................................... 17

*Kobach v U.S. Election Assistance Commission*,
  No. 13-cv-04095, 2013 WL 6511874 (D. Kan. Dec. 12, 2013) ...................................... 12, 15

*LaRoque v. Holder*,
  755 F. Supp. 2d 156 (D.D.C. 2010) ...................................................................................... 12

*Maguire v. FMR LLC*,
  No. 16-499 S, 2016 WL 6998622 (D.R.I. Nov. 29, 2016) .................................................. 9, 16

*Melone v. Coit*,
  100 F.4th 21 (1st Cir. 2024) ............................................................................................. 10, 16

*Narragansett Electric Co. v. Constellation Energy Commodities Group Inc.*,
  526 F. Supp. 2d 260 (D.R.I. 2007) ....................................................................................... 17

*National Liability & Fire Insurance Co. v. Carman*,
  No. 17-038WES, 2018 WL 4080576 (D.R.I. Aug. 27, 2018) ............................................ 9, 16

*PA Fair Elections v. Pennsylvania Department of State*,
  337 A.3d 598 (Pa. Commw. Ct. 2025) ................................................................... 5

*Pontbriand v. Sundlun*,
  699 A.2d 856 (R.I. 1997) ....................................................................................... 10

*Public Interest Legal Foundation, Inc. v. Winfrey*,
  463 F. Supp. 3d 795 (E.D. Mich. 2020) .............................................................. 12

*Public Service of v. Patch*,
  136 F.3d 197 (1st Cir. 1998) ................................................................................. 8

*R & G Corp. v. Home Loan Corp.*,
  584 F.3d 1 (1st Cir. 2009) ..................................................................................... 8

*SEC v. LBRY, Inc.*,
  26 F.4th 96 (1st Cir. 2022) .................................................................................... 8

*Selcuk v. Pate*,
  No. 4:24-cv-00390-SHL-HCA, 2024 WL 5054961 (S.D. Iowa Nov. 3, 2024) ....... 11

*State v. Director, U.S. Fish & Wildlife Service*,
  262 F.3d 13 (1st Cir. 2001) ................................................................................... 14

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*,
  807 F.3d 472 (1st Cir. 2015) ................................................................................. 13

*Texas v. United States*,
  798 F. 3d 1108 (D.C. Cir. 2015) ........................................................................... 12

*Tirrell v. Edelblut*,
  No. 24-cv-251, 2025 WL 1939965 (D.N.H. July 15, 2025) ................................... 17

*T-Mobile Northeast LLC v. Town of Barnstable*,
  969 F.3d 33 (1st Cir. 2020) ................................................................................... 14

*Town of Chester v. Laroe Estates, Inc.*,
  581 U.S. 433 (2017) .............................................................................................. 10

*Ungar v. Arafat*,
  634 F.3d 46 (1st Cir. 2011) ............................................................................... 9, 10

*Victim Rights Law Center v. Rosenfelt*,
  988 F.3d 556 (1st Cir. 2021) ................................................................................. 8

**Statutes**

5 U.S.C. § 552a ..................................................................................................... 10

52 U.S.C. § 20703 ................................................................................................. 15

52 U.S.C. § 20704 ................................................................................................... 3

R.I. Gen. Laws § 17-28-9(b) ................................................................................... 8

R.I. Gen. Laws § 9-1-28.1(a)(3)(i) ................................................................................................ 10

**Other Authorities**

Alexandra Berzon & Nick Corasaniti, *Trump Empowers Election Deniers, Still Fixated on 2020 Grievances*, N.Y. TIMES, Oct. 22, 2025, https://www.nytimes.com/2025/10/22/us/politics/trump-election-deniers-voting-security.html 5

Carter Walker, *Efforts to Challenge Pennsylvania Voters' Mail Ballot Applications Fizzle*, SPOTLIGHT PA, Nov. 8, 2024, https://www.spotlightpa.org/news/2024/11/mail-ballot-application-challenges-pennsylvania-fair-elections/ ................................................................ 6

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. TIMES, Sept. 9, 2025, https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html ......................................................................................................... 4

Doug Bock Clark, *She Pushed to Overturn Trump's Loss in the 2020 Election. Now She'll Help Oversee U.S. Election Security*, PROPUBLICA (Aug. 26, 2025), https://www.propublica.org/article/heather-honey-dhs-election-security ................................... 5

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. TIMES MAGAZINE, Nov. 16, 2025, https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html ................................................................... 4

Hansi Lo Wang, *Thousands of Pennsylvania Voters Have Had Their Mail Ballot Applications Challenged*, NPR, Nov. 5, 2024, https://www.npr.org/2024/11/04/nx-s1-5178714/pennsylvania-mail-ballot-voter-challenges-trump ...................................................... 6

Jen Fifield, *Pa.'s Heather Honey, Who Questioned the 2020 Election, Is Appointed to Federal Election Post*, PA. CAPITAL-STAR (Aug. 27, 2025), https://penncapital-star.com/election-2025/pa-s-heather-honey-who-questioned-the-2020-election-is-appointed-to-federal-election-post/ ........................................................................................................................... 5

Jeremy Roebuck & Katie Bernard, *'I Can't Think of Anything Less American': Right-Wing Activists' Effort to Nullify Hundreds of Pa. Votes Met with Skepticism*, PHILA. INQUIRER, Nov. 1, 2024, https://www.inquirer.com/politics/election/heather-honey-pa-fair-elections-vote-challenges-pennsylvania-20241101.html ..................................................................... 6

Jonathan Shorman, *DOJ is Sharing State Voter Roll Lists with Homeland Security*, STATELINE (Sept. 12, 2025), https://stateline.org/2025/09/12/doj-is-sharing-state-voter-roll-lists-with-homeland-security ........................................................................................................ 4, 7

Jonathan Shorman, *Trump's DOJ Wants State to Turn Over Voter Lists, Election Info*, STATELINE, July 16, 2025, https://stateline.org/2025/07/16/trumps-doj-wants-states-to-turn-over-voter-lists-election-info/ ............................................................................................................... 7

Jude Joffe-Block & Miles Parks, *The Trump Administration Is Building a National Citizenship Data System*, NPR (June 29, 2025), https://www.npr.org/2025/06/29/nx-s1-5409608/citizenship-trump-privacy-voting-database ...................................................... 5

Kaylie Martinez-Ochoa, Eileen O'Connor, and Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (updated Dec. 5, 2025), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information ........................................................................................................... 3

iv

Matt Cohen, *DHS Said to Brief Cleta Mitchell's Group on Citizenship Checks for Voting*, DEMOCRACY DOCKET (June 12, 2025), https://www.democracydocket.com/news-alerts/dhs-said-to-brief-cleta-mitchells-anti-voting-group-on-checking-citizenship-for-voters/ ................ 5

Press Release, U.S. Dep't of Justice, *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls* (Sept. 16, 2025), https://www.justice.gov/opa/pr/justice-department-sues-oregon-and-maine-failure-provide-voter-registration-rolls ........................... 3

Press Release, U.S. Dep't of Justice, *Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls* (Dec. 2, 2025), https://www.justice.gov/opa/pr/justice-department-sues-six-additional-states-failure-provide-voter-registration-rolls ......................... 3

Press Release, U.S. Dep't of Justice, *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls* (Sept. 25, 2025), https://www.justice.gov/opa/pr/justice-department-sues-six-states-failure-provide-voter-registration-rolls ............................................... 3

Sarah Lynch, *US Justice Dept Considers Handing over Voter Roll Data for Criminal Probes, Documents Show*, REUTERS (Sept. 9, 2025), https://www.reuters.com/legal/government/us-justice-dept-considers-handing-over-voter-roll-data-criminal-probes-documents-2025-09-09 . 4

**Rules**

Fed. R. Civ. P. 24(a) ................................................................................................... 1, 8

Fed. R. Civ. P. 24(b) ................................................................................................. 1, 16

Fed. R. Civ. P. 24(c) ...................................................................................................... 1

L.R. Civ. P. 7(a) ............................................................................................................. 1

Common Cause, Catherine Saunders, Stuart Waldman, and Julia Sanches (collectively, "Proposed Intervenors") respectfully move to intervene as Defendants pursuant to Rule 24(a) of the Federal Rules of Civil Procedure or, in the alternative, pursuant to Rule 24(b), and set forth the legal argument necessary to support their motion below. *See* L.R. Civ. P. 7(a). Proposed Intervenors append as Exhibit 1 to this motion a proposed motion to dismiss by way of a response to the United States' Complaint, while reserving the right to supplement their response to the Complaint within the time allowed for response by Rule 12 after intervention is granted. *See* Fed. R. Civ. P. 24(c). As of the filing of this motion, Plaintiff the United States had not informed Proposed Intervenors of its position on the motion. Defendant Rhode Island Secretary of State Amore has not yet been served or appeared in the case.

## INTRODUCTION

The United States seeks to force Rhode Island to turn over voters' sensitive personal information and data. It has been widely reported that the United States will use this data to build an unauthorized national voter database and to target voters for potential challenges and disenfranchisement. These efforts are being driven by self-styled "election-integrity" advocates who have previously used ill-conceived database-matching and database-analysis methods to mass-challenge voters and deny the results of elections, and who now serve in or advise the present Administration.

Proposed Intervenors are Common Cause, a non-partisan, good-government organization dedicated to grassroots voter engagement in Rhode Island, whose members and whose own work are at risk by the relief sought by the United States in this case, as well as voters who are directly threatened. Proposed Intervenors have an extremely strong interest in preventing the United States' requests for unfettered and total access to the most sensitive aspects of Rhode Island's non-public voter data from being used to harass and potentially disenfranchise voters. Common Cause

works to expand access to the ballot and civic engagement, as well as to protect civil liberties, and thus has an interest in protecting the voting and privacy rights of its members and all Rhode Island voters. Its grassroots work engaging voters is threatened by the United States' request for sensitive, non-public voter data, which risks discouraging Rhode Islanders from registering to vote. And the privacy and voting-rights interests of Common Cause's members and of the individual voter intervenors are also directly at stake here. Proposed Intervenors include members of some of those groups who are under particular threat from the United States' requested form of relief, such as voters who are naturalized citizens, voters who have a felony conviction, voters who have previously been registered to vote in another state, voters who registered to vote by mail, and voters whose personal information is especially sensitive and who thus have heightened privacy interests.

Proposed Intervenors are entitled to intervene as of right under Rule 24 because this motion is timely, because both their rights and interests are at stake, and because those rights and interests are not adequately represented by the existing Defendant, who unlike Proposed Intervenors, is a state actor, subject to broader public policy and political considerations external to the legal issues presented in this case. Their unique interests in this case, their unique perspective, and their unique motivation to interrogate the purpose of the United States' sweeping request for non-public Rhode Island voter data will ensure the full development of the record here and aid the Court in its resolution of this case. Intervention as of right pursuant to Rule 24(a), or in the alternative permissive intervention pursuant to Rule 24(b), should be granted.

## BACKGROUND

### A. DOJ's Efforts to Obtain Private Voter Information

Beginning in May 2025, Plaintiff the United States, through its Department of Justice ("DOJ"), began sending letters to election officials in at least forty states, making escalating demands for the production of voter registration databases, with plans to gather data from all fifty

states.  *See* Kaylie Martinez-Ochoa, Eileen O'Connor, and Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (updated Dec. 5, 2025), https://perma.cc/A73C-8YDZ.  On September 8, 2025, it sent such a letter to Defendant Amore, Rhode Island's Secretary of State, demanding that Rhode Island provide to DOJ its complete, non-public voter database.  *See* Decl. of Maureen Riordan, Exhibit No. 1, Letter of Harmeet K. Dhillon to the Hon. Gregg Amore dated Sept. 8, 2025, Dkt. No. 2-2 ("Sept. 8 Letter").  DOJ specifically requested private voter information, including registrants' full name, date of birth, address, driver's license number, and the last four digits of the registrant's social security number ("SSN4").  *Id.* The letter waved away any privacy issues, claiming that the federal prohibition on sharing voter information obtained under the Civil Rights Act of 1960 with the public was sufficient to assuage concerns.  *See id.* at 2 (citing 52 U.S.C. § 20704).

Secretary Amore responded on September 16, 2025.  *See* Decl. of Maureen Diordan, Exhibit No. 2, Letter of the Hon. Gregg M. Amore to Harmeet K. Dhillon dated Sept. 16, 2025, Dkt. No. 2-2.  His letter offered to give the DOJ the publicly-available voter registration list, but declined to provide a version containing uniquely sensitive personally identifiable information. *Id.*

The United States responded by filing this lawsuit, which is one of at least fourteen that DOJ has initiated recently against states and their top election officials, seeking to compel them to hand over this sensitive voter data.[1]

---

[1] *See* Press Release, U.S. Dep't of Just., *Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls* (Dec. 2, 2025), https://perma.cc/F5MD-NWHD; Press Release, U.S. Dep't of Just., *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls* (Sept. 25, 2025), https://perma.cc/7J99-WGBA; Press Release, U.S. Dep't of Just., *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls* (Sept. 16, 2025),  https://perma.cc/M69P-YCVC.

Notably, according to public reporting, DOJ's request for private, sensitive voter data from Rhode Island and other states appears to be in connection with novel efforts by the United States to construct a national voter database, and to otherwise use untested forms of database analysis to scrutinize state voter rolls. According to this reporting, DOJ employees "have been clear that they are interested in a central, federal database of voter information." Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. TIMES, Sept. 9, 2025, https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html. DOJ is coordinating in these novel efforts with the federal Department of Homeland Security (DHS). *Id.*; Jonathan Shorman, *DOJ is Sharing State Voter Roll Lists with Homeland Security*, STATELINE, Sept. 12, 2025, https://stateline.org/2025/09/12/doj-is-sharing-state-voter-roll-lists-with-homeland-security ("Shorman, *DOJ Sharing Lists with Homeland Security*"); Sarah Lynch, *US Justice Dept Considers Handing over Voter Roll Data for Criminal Probes, Documents Show*, REUTERS, Sept. 9, 2025, https://www.reuters.com/legal/government/us-justice-dept-considers-handing-over-voter-roll-data-criminal-probes-documents-2025-09-09. One recent article extensively quoted a recently departed lawyer from DOJ's Civil Rights Division, describing DOJ's aims in this case and others like it:

> "We were tasked with obtaining states' voter rolls, by suing them if necessary. Leadership said they had a DOGE person who could go through all the data and compare it to the Department of Homeland Security data and Social Security data . . . . I had never before told an opposing party, Hey, I want this information and I'm saying I want it for this reason, but I actually know it's going to be used for these other reasons. That was dishonest. It felt like a perversion of the role of the Civil Rights Division.").

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. TIMES MAG., Nov. 16, 2025, https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html.

According to additional public reporting, these efforts are being conducted with the involvement of self-proclaimed "election integrity" advocates within and outside government who have previously sought to disenfranchise voters and overturn elections.  Those advocates include Heather Honey, who sought to overturn the result of the 2020 presidential election in multiple states and now serves as DHS's "deputy assistant secretary for election integrity."[2]  Also involved is Cleta Mitchell, a private attorney and leader of a national group called the "Election Integrity Network," who has promoted the use of artificial intelligence to challenge registered voters.[3] These actors, including some associated with Ms. Honey, have previously sought to compel states to engage in aggressive purges of registered voters, and have abused voter data to mass challenge and attempt to disenfranchise voters in other states.  *See, e.g.*, *PA Fair Elections v. Pa. Dep't of State*, 337 A.3d 598, 600 n.1 (Pa. Commw. Ct. 2025) (determining that complaint brought by group

---

[2] *See* Alexandra Berzon & Nick Corasaniti, *Trump Empowers Election Deniers, Still Fixated on 2020 Grievances*, N.Y. TIMES, Oct. 22, 2025, https://www.nytimes.com/2025/10/22/us/politics/trump-election-deniers-voting-security.html (documenting "ascent" of election denier Honey); Jen Fifield, *Pa.'s Heather Honey, Who Questioned the 2020 Election, Is Appointed to Federal Election Post*, PA. CAPITAL-STAR (Aug. 27, 2025), https://penncapital-star.com/election-2025/pa-s-heather-honey-who-questioned-the-2020-election-is-appointed-to-federal-election-post/; Doug Bock Clark, *She Pushed to Overturn Trump's Loss in the 2020 Election. Now She'll Help Oversee U.S. Election Security*, PROPUBLICA, Aug. 26, 2025, https://www.propublica.org/article/heather-honey-dhs-election-security.

[3] *See, e.g.*, Matt Cohen, *DHS Said to Brief Cleta Mitchell's Group on Citizenship Checks for Voting*, DEMOCRACY DOCKET, June 12, 2025, https://www.democracydocket.com/news-alerts/dhs-said-to-brief-cleta-mitchells-anti-voting-group-on-checking-citizenship-for-voters/; *see also* Jude Joffe-Block & Miles Parks, *The Trump Administration Is Building a National Citizenship Data System*, NPR, June 29, 2025, https://www.npr.org/2025/06/29/nx-s1-5409608/citizenship-trump-privacy-voting-database (reporting that Mitchell had received a "full briefing" from federal officials); *see also* Andy Kroll & Nick Surgey, *Inside Ziklag, the Secret Organization of Wealthy Christians Trying to Sway the Election and Change the Country*, PROPUBLICA, July 13, 2024, https://www.propublica.org/article/inside-ziklag-secret-christian-charity-2024-election ("Mitchell is promoting a tool called EagleAI, which has claimed to use artificial intelligence to automate and speed up the process of challenging ineligible voters.").

affiliated with current DHS official Honey, challenging Pennsylvania's voter roll maintenance practices pursuant to the federal Help America Vote Act, was meritless).[4]

DOJ's actions also indicate that it may focus on or target specific groups of voters in its use of the requested data. In letters to other states requesting the same private voter data, the DOJ also requested information about how election officials, among other things, process applications to vote by mail; identify and remove duplicate registrations; and verify that registered voters are not ineligible to vote, such as due to a felony conviction or lack of citizenship.[5] The Administration has also confirmed that it was sharing the requested information with the DHS, which will use the data to "scrub aliens from voter rolls." *See* Jonathan Shorman, *Trump's DOJ Wants State to Turn Over Voter Lists, Election Info*, STATELINE, July 16, 2025, https://stateline.org/2025/07/16/trumps-

---

[4] *See* Carter Walker, *Efforts to Challenge Pennsylvania Voters' Mail Ballot Applications Fizzle*, SPOTLIGHT PA, Nov. 8, 2024, https://www.spotlightpa.org/news/2024/11/mail-ballot-application-challenges-pennsylvania-fair-elections/ (describing mass-challenges and noting connection to Honey and her organization "PA Fair Elections"); *see also* Jeremy Roebuck & Katie Bernard, *'I Can't Think of Anything Less American': Right-Wing Activists' Effort to Nullify Hundreds of Pa. Votes Met with Skepticism*, PHILA. INQUIRER, Nov. 1, 2024, https://www.inquirer.com/politics/election/heather-honey-pa-fair-elections-vote-challenges-pennsylvania-20241101.html (noting sworn testimony regarding PA Fair Elections' involvement in the challenges); Hansi Lo Wang, *Thousands of Pennsylvania Voters Have Had Their Mail Ballot Applications Challenged*, NPR, Nov. 5, 2024, https://www.npr.org/2024/11/04/nx-s1-5178714/pennsylvania-mail-ballot-voter-challenges-trump (same).

[5] *See, e.g.*, Br. in Supp. of Mot. to Intervene as Defs., Exhibit No. 1, Letter from Maureen Riordan to Sec'y of State Al Schmidt (June 23, 2025), *United States v. Pennsylvania*, No. 25-cv-01481 (W.D. Pa. Oct. 9, 2025), Dkt. No. 37-1 (Pennsylvania); Mot. for Leave to File Mot. to Dismiss, Exhibit A, Letter from Michael E. Gates to Sec'y of State Jocelyn Benson (July 21, 2025), *United States v. Benson*, No. 25-cv-01148 (W.D. Mich. Nov. 25, 2025), Dkt. No. 34-3 (Michigan); Decl. of Thomas H. Castelli in Supp. of State Defs.' Mot. to Dismiss, Exhibit No. 1, Letter from Michael E. Gates to Sec'y of State Tobias Read (July 16, 2025), *United States v. Oregon*, No. 25-cv-01666 (D. Or. Nov. 17, 2025), Dkt. No. 33-1 (Oregon); Decl. of Malcolm A. Brudigam in Supp. of Defs.' Mot. to Dismiss, Exhibit No. 1, Letter from Michael E. Gates to Sec'yy of State Shirley Weber (July 10, 2025), *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Nov. 7, 2025), Dkt. No. 37-2 (California).

doj-wants-states-to-turn-over-voter-lists-election-info/ (characterizing letters in nine states); Shorman, *DOJ Sharing Lists with Homeland Security*.

### B.    Proposed Intervenors

Proposed Intervenor Common Cause is a nonpartisan organization committed to, *inter alia*, ensuring that all eligible Rhode Island voters register to vote and exercise their right of suffrage at each election.  *See* Ex. 2, Decl. of Common Cause Rhode Island Executive Director John Marion ("Marion Decl.") ¶¶ 5–7, 9–10; *see also* Ex. 3, Decl. of Catherine Saunders ("Saunders Decl.") ¶ 8.  Common Cause expends significant resources conducting on-the-ground voter engagement and assistance efforts, including registering qualified individuals to vote, helping voters navigate the vote-by-mail process, encouraging voters to participate, and assisting voters when they experience problems in trying to vote.  *See* Marion Decl. ¶¶ 9–10, 13.  The success of these efforts, especially with respect to voter registration, depend on voters' trust that, when they provide personal information to the State as part of the registration process, that information will not be abused, their privacy will be respected, and their right to participate will be honored.  *See* Marion Decl. ¶¶ 10–11.

Common Cause also has over four thousand members and supporters in Rhode Island.  *See* Marion Decl. ¶ 4.  Those members include Rhode Island voters, whose personal data will be provided to the federal government if DOJ prevails in this lawsuit.  *See* Marion Decl. ¶ 6; *see also* Saunders Decl. ¶¶ 10–11.  Common Cause's members in Rhode Island and the individual voter Proposed Intervenors include voters who are at particular risk of being caught up in the DOJ's efforts to remove voters from voter rolls, whether because they have a supposed "duplicate" record in the system, registered to vote by mail, have a felony conviction, and/or are naturalized citizens. *See* Marion Decl. ¶¶ 6, 11–12; Ex. 4, Decl. of Stuart Waldman ("Waldman Decl.") ¶ 5 (Rhode Island voter who moved to Rhode Island and registered in the last year); Ex. 5, Decl. of Julia

Sanches ("Sanches Decl.") ¶¶ 9–10 (Rhode Island voter who is a naturalized citizen).  They also may include voters whose identifying information is particularly important to keep private, for example due to their particular status as victims of domestic violence.  *See* Marion Decl. ¶¶ 11–12; R.I. Gen. Laws § 17-28-9(b) (prohibiting state officials from including the name or address of a participant in the state's domestic violence address protection program in voter data).

## ARGUMENT

### I.    MOVANTS ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT.

In the First Circuit, a party is entitled to intervene as of right under Fed. R. Civ. P. 24(a) upon establishing:

> (1) the timeliness of its motion; (2) a concrete interest in the pending action; (3) a realistic threat that resolution of the pending action will hinder its ability to effectuate that interest; and (4) the absence of adequate representation by any existing party.

*SEC v. LBRY, Inc.*, 26 F.4th 96, 99 (1st Cir. 2022) (quotation marks and brackets omitted).  "[A]n applicant for intervention need only make a minimal showing that the presentation afforded by existing parties likely will prove inadequate."  *Pub. Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 207 (1st Cir. 1998); *accord Victim Rts. L. Ctr. v. Rosenfelt*, 988 F.3d 556, 561 (1st Cir. 2021).  Because the Proposed Intervenors easily meet Rule 24(a)'s requirements, the Court should grant their intervention as a matter of right.

### A.    The Motion to Intervene Is Timely

"A motion to intervene is timely if it is filed promptly after a person obtains actual or constructive notice that a pending case threatens to jeopardize his rights."  *R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 8 (1st Cir. 2009).  In assessing the timeliness of an intervention motion, "the most important factor is the length of time that the putative intervenor

knew or reasonably should have known that his interest was imperiled before he deigned to seek intervention." *In re Efron*, 746 F.3d 30, 35 (1st Cir. 2014).

This motion is indisputably timely. The United States filed this suit on December 2, 2025, and, upon receiving notice of the suit, the Proposed Intervenors promptly prepared this motion. *See Nat'l Liab. & Fire Ins. Co. v. Carman*, No. 17-038WES, 2018 WL 4080576, at *2 (D.R.I. Aug. 27, 2018) (describing a motion to intervene "just one week" after the event that put the proposed intervenor on notice as "unambiguously timely"); *Maguire v. FMR LLC*, No. 16-499 S, 2016 WL 6998622, at *1 (D.R.I. Nov. 29, 2016) (describing a motion filed ten days after the filing of a complaint "undoubtedly timely"). Defendant Secretary Amore has not yet filed an answer or a motion to dismiss (and indeed as of the date of this motion has not been served yet), meaning that this litigation is at its earliest stages. *See Efron*, 746 F.3d at 35 ("[T]imeliness is to be gauged from all the circumstances, including the stage to which the proceedings have progressed before intervention is sought." (quotation marks and citation omitted)).[6]

### B.  Proposed Intervenors Have Concrete Interests in the Underlying Litigation

The Proposed Intervenors have a "sufficient"—*i.e.*, a "significantly protectable"—interest in the litigation. *E.g.*, *Donaldson v. United States*, 400 U.S. 517, 531 (1971). "To satisfy the interest requirement, . . . [a party must] assert, at a minimum, that it has something at stake in the underlying litigation . . . ." *Ungar v. Arafat*, 634 F.3d 46, 52 (1st Cir. 2011). Although the interest requirement "is not amenable to a surgically precise definition," a claimed interest must be "direct"

---

[6] This case is thus extremely different from *Common Cause Rhode Island v. Gorbea*, No. 1:20-CV-00318-MSM-LDA, 2020 WL 4365608 (D.R.I. July 30, 2020), where the RNC's intervention was denied because it had delayed unreasonably in the context of a fast-moving case involving the rules for an upcoming election. *Id.* at *3 n.5.

rather than "too contingent or speculative." *Id* at 51–52.[7] Here, Proposed Intervenors have multiple, independently sufficient interests that support intervention as of right.

*First*, the Proposed Intervenors have a right to privacy in the sensitive voter data the United States seeks. The September 8 Letter demanded that Secretary Amore turn over voters' full name, date of birth, residential address, driver's license number, and their SSN4s. Sept. 8 Letter at 1. This type of sensitive personal information is protected from disclosure by Rhode Island law. *See, e.g.*, R.I. Gen. Laws § 9-1-28.1(a)(3)(i); *Pontbriand v. Sundlun*, 699 A.2d 856, 865 (R.I. 1997) (noting that under state statutory law, for information to be protected, a plaintiff "must demonstrate that they actually expected a disclosed fact to remain private, and that society would recognize this expectation of privacy as reasonable and be willing to respect it"); *see also Pontbriand*, 699 A.2d at 869 & n.20 (treating the right to privacy under the federal and Rhode Island constitutions as coextensive). It is also protected by federal law, which prohibits the creation of a national voter database of the type that the United States is reportedly seeking to assemble with the data it seeks. *See* 5 U.S.C. § 552a(e)(7) (provision of the federal Privacy Act prohibiting the creation or maintenance of any database "describing how any individual exercises rights guaranteed by the First Amendment," which necessarily includes exercising the right to vote). These privacy interests are significant and inure to each of the individual voter Proposed Intervenors as well as to Common Cause's members who are Rhode Island voters. Marion Decl. ¶¶ 10–11; Saunders

---

[7] The interest requirement is distinct from Article III standing and "'whether an intervenor-defendant must show some separate form of standing' is a needless inquiry at the intervention stage." *Allco Renewable Energy Ltd. v. Haaland*, No. 22-cv-10921-IT, 2022 WL 2117828, at *1 n.2 (D. Mass. June 13, 2022) (quoting *Cotter v. Mass. Ass'n of Minority L. Enf't Officers*, 219 F.3d 31, 34 (1st Cir. 2000)). Proposed Intervenors would in any case not need to separately establish Article III standing because they seek to intervene as *defendants*, not plaintiffs, and Secretary Amore will presumably seek the same ultimate outcome as Proposed Intervenors, namely, dismissal or denial of the claims brought by the United States. *See Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439–40 (2017); *Melone v. Coit*, 100 F.4th 21, 28–29 (1st Cir. 2024).

Decl. ¶¶ 9–10; Waldman Decl. ¶ 6; Sanches Decl. ¶ 9. Other voters have additional privacy interests in preventing the disclosure of their personal information because of their status as crime victims or some other sensitive designation. *See, e.g.*, Marion Decl. ¶¶ 11–12.

*Second*, and based on DOJ's similar data requests to other States, the data DOJ seeks is likely to be used to challenge the voter registration of certain Rhode Islanders, including voters with felony convictions; voters who have moved within Rhode Island or left the state and then returned to Rhode Island (but might be deemed "duplicate" voters or "out-of-state" voters due to a shoddy matching system); voters who are naturalized citizens (who may have indicated they were not a citizen on a government form prior to naturalization); and voters who vote by mail. *See supra* 6–7 & n.5. A number of the individual voter Proposed Intervenors as well as numerous Common Cause members fall within those categories. *E.g.*, Marion Decl. ¶¶ 11–12. For example, Proposed Intervenor Stuart Waldman moved to Rhode Island relatively recently and was previously registered to vote in another state, and is concerned that an attempt to demand that states purge the voter rolls based on cross-state database matching could ensnare people like him. Waldman Decl. ¶ 5. Proposed Intervenor Julia Sanches is a naturalized citizen; she is concerned that an attempt to demand states purge the voter rolls based on database matching using the names of persons who were once non-citizens could ensnare people like her. Sanches Decl. ¶ 9. *Cf. Selcuk v. Pate*, No. 4:24-cv-00390-SHL-HCA, 2024 WL 5054961, at *8–9 (S.D. Iowa Nov. 3, 2024) (noting a state purge program, based on database-matching, which purportedly targeted alleged noncitizens that flagged 2,176 voters, of whom at least 88% were citizens eligible to vote, many of them naturalized citizens). Proposed Intervenors, especially those most likely to be targeted using the information DOJ seeks in this lawsuit, have a concrete interest in not being disenfranchised by so-called "election integrity measures."

11

*Third*, Common Cause as an organization has a protectable interest at stake because their core mission as an organization will be harmed if the relief sought is granted. For one, Common Cause's voter registration activities will be harmed because voters will be chilled from registering and participating if they believe their sensitive personal data will be provided to the federal government (and ingested into an unauthorized and illegal national database). *E.g.*, Marion Decl. ¶¶ 11–13. Moreover, Common Cause will be further harmed if and when the sensitive voter data sought by the United States is then used to engage in mass challenges of registered voters by "election integrity" activists wielding the power of the federal government. Such mass challenges will force Common Cause to redirect resources to educating the public about threats to voting rights and mitigating the disenfranchisement of existing voters, and away from their core activities of registering voters and engaging new voters in the democratic process. *Id.* ¶ 12. Courts routinely find that non-partisan public interest organizations, like the organizational Proposed Intervenors, should be granted intervention in election-related cases, demonstrating the significantly protectable interests such organizations have in safeguarding the electoral process. *See, e.g.*, *Texas v. United States*, 798 F. 3d 1108, 1111–12 (D.C. Cir. 2015); *Donald J. Trump for President, Inc. v. Boockvar*, No. 20-cv-2078, 2020 WL 8262029, at *1 (M.D. Pa. Nov. 12, 2020); *Pub. Int. Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 799–800 (E.D. Mich. 2020); *Kobach v U.S. Election Assistance Comm'n*, No. 13-cv-04095, 2013 WL 6511874, at *1–2 (D. Kan. Dec. 12, 2013); *LaRoque v. Holder*, 755 F. Supp. 2d 156, 162 n.3 (D.D.C. 2010), *rev'd in part on unrelated grounds*, 650 F.3d 777 (D.C. Cir. 2011). This case is no exception. Indeed, in a similar case brought by the Department of Justice challenging California's refusal to turn over sensitive voter information, such organizations were granted intervention. *See* Order, *United States v. Weber*, No. 25-cv-09149, (C.D. Cal. Nov. 19, 2025), Dkt. No. 70; *see also* Op. & Order, *United States v.*

*Oregon*, No. 25-cv-01666, (D. Or. Dec. 5, 2025), Dkt. No. 52 (granting intervention in Oregon case).

### C.    Disposition of this Case May Threaten the Interests of Proposed Intervenors

The Proposed Intervenors also satisfy the third prong of the intervention analysis because the litigation may result in an order that directly affects their interests. *See B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 545 (1st Cir. 2006). "[E]ven a small threat" to proposed Defendant-Intervenors' interests suffices to show that those interests may be "adversely affected." *Cotter*, 219 F.3d at 35. Here, the threat is significant. The United States proposes to summarily dispose of voters' interests by obtaining an immediate order compelling the disclosure of private voter data, bypassing the normal civil litigation process and any discovery into "the basis and the purpose" of their request, 52 U.S.C. § 20703. *See* U.S. Mot. to Compel Production of Records, Dkt. No. 2. This attempt to secure the irrevocable disclosure of private voter data to actors who may misuse it in any number of ways, including by mass-challenging or otherwise attacking Rhode Islanders' right to vote, at the very beginning of the case militates strongly in favor of allowing Proposed Intervenors into the case to represent voters' interests now.

### D.    Secretary Amore's Interests Are Different from Those of Proposed Intervenors.

A proposed intervenor's "burden of establishing inadequate representation should be treated as minimal and can be satisfied by showing that representation of the interest *may* be inadequate." *Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*, 807 F.3d 472, 475 (1st Cir. 2015) (internal quotation marks and brackets omitted; emphasis in original). The proposed intervenor may show inadequacy by "demonstrat[ing] that its interests are sufficiently different in kind or degree from those of the named party." *B. Fernandez*, 440 F.3d at 546. It is true that when "a group with recognized interests wishes to intervene and defend an

13

action of the government which the government is itself defending," courts presume "subject to evidence to the contrary, that the government will adequately defend its actions, at least where its interests appear to be aligned with those of the proposed intervenor." *Maine v. Dir., U.S. Fish & Wildlife Serv.*, 262 F.3d 13, 19 (1st Cir. 2001). However, "there is danger in a mechanistic application of such language" because this presumption "means no more . . . than calling for an adequate explanation as to why what is assumed . . . is not so." *Id.* Ultimately, the proposed intervenor "need only show that representation *may* be inadequate, not that it is inadequate." *Conservation L. Found. of New Eng., Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992) (emphasis added). Proposed Intervenors meet this minimal burden here.

As a government official, Secretary Amore has a generalized interest in carrying out his office's legal obligations under federal and state laws, and in minimizing burdens on governmental employees and resources. He also must consider broader public policy concerns, in particular the need to maintain working relationships with federal officials.

In contrast, Proposed Intervenors will "add [a] missing element" to this litigation, making the existing representation inadequate: the perspective of civil rights groups whose sole commitment is to ensuring access to the ballot and individual voters whose own rights are at risk. *T-Mobile Northeast LLC v. Town of Barnstable*, 969 F.3d 33, 40 (1st Cir. 2020). There may be arguments and issues that the Defendant Secretary Amore may not raise that are critical to organizations like Common Cause. As one example, courts have found a risk that political considerations external to the legal issues presented by a case like this can motivate elections officials to pursue a settlement that could jeopardize the private information of Proposed Intervenors or of their members. *See Judicial Watch, Inc. v. Ill. State Bd. of Elections*, No. 24-C-1867, 2024 WL 3454706, at *5 (N.D. Ill. July 18, 2024) (allowing intervention in NVRA case and

14

observing that "potential intervenors can cite potential conflicts of interests in future settlement negotiations to establish that their interests are not identical with those of a named party"); *cf. Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 198 (2022) (reversing denial of motion to intervene where North Carolina Board of Elections was "represented by an attorney general who, though no doubt a vigorous advocate for his clients' interests, is also an elected official who may feel allegiance to the voting public or share the Board's administrative concerns").

These diverging perspectives—between the government's general need to balance various considerations and the Proposed Intervenors' personal and particular interest in the privacy of their own data—present a classic scenario supporting intervention. *See, e.g.*, *Am. Farm Bureau Fed'n v. EPA*, 278 F.R.D. 98, 110–11 (M.D. Pa. 2011) (allowing public interest groups to intervene, "[b]ecause the EPA represents the broad public interest . . . not only the interests of the public interest groups" and similar stakeholders); *Kobach*, 2013 WL 6511874, at *4 (finding that applicants who had interests in protecting voter rights, particularly in minority and underprivileged communities, may have private interests that diverge from the public interest of an elections agency).

Moreover, the United States requests the data at issue pursuant to purported public disclosure provisions in the Civil Rights Act of 1960, but any requests pursuant to those provisions must come with "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. The motivations and purposes for DOJ's requests, including whether they will be used to create an unauthorized national database as has been reported, and whether they are a prelude to mass challenges based on faulty data-matching techniques, are highly relevant and potentially dispositive here. Proposed Intervenors' unique interest in pursuing this highly relevant line of

factual inquiry and argument, as a good-government, pro-democracy organization and individual Rhode Islanders whose own rights are at stake, is further strong grounds to support intervention.

## II.    IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION

If the Court declines to grant intervention as of right, it should grant permissive intervention under Federal Rule of Civil Procedure 24(b).  A court may grant permissive intervention when the motion to intervene is "timely," the proposed intervenors have "a claim or defense that shares with the main action a common question of law or fact," and intervention will not "unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b).  The decision to allow permissive intervention "is highly discretionary" and a court "may consider almost any factor rationally relevant in making that determination."  *Melone v. Coit*, 100 F.4th 21, 28 (1st Cir. 2024) (quotation marks omitted).  Because Proposed Intervenors may meaningfully contribute to the development of factual and legal issues in this case, permissive intervention is appropriate.

As discussed above, this motion is timely, coming shortly after the case began and prior to any discovery or motion practice.  *See Carman*, 2018 WL 4080576, at *2; *Maguire*, 2016 WL 6998622, at *2.  Because Proposed Intervenors seek to join the case at the beginning, their involvement runs no risk of delaying proceedings.  *See Doe v. Town of Lisbon*, No. 1:21-cv-944, 2022 WL 2274785, at *3 (D.N.H. June 23, 2022) (allowing intervention where, among other things, the motion came "in the preliminary stages of the case").

Moreover, Proposed Intervenors' defense goes directly to the issues already presented in this lawsuit, such as (1) whether federal law permits the United States to force Rhode Island to give it the personal information sought; (2) whether federal and state legal protections for individual privacy prohibit the disclosure of that information; and (3) whether the United States' motivations and its potential uses for the data sought are permissible.  Proposed Intervenors'

distinct perspective on the legal and factual issues before the Court will thus complement or amplify Defendant's arguments and sharpen the issues and the quality of the record, aiding the Court in resolving the issues before it.  Proposed Intervenors are "not seeking to inject any new issues" into the dispute; instead, they are trying to offer their unique perspective to resolve the existing ones.  *Narragansett Elec. Co. v. Constellation Energy Commodities Grp. Inc.*, 526 F. Supp. 2d 260, 275 (D.R.I. 2007).

Because of this unique perspective, district courts routinely grant permissive intervention to advocacy organizations, even when a government party defends a challenged action.  *See, e.g.*, *Tirrell v. Edelblut*, No. 24-cv-251, 2025 WL 1939965, at *3–4 (D.N.H. July 15, 2025) (allowing "a membership-based organization that represents cisgender athletes" to intervene as a defendant in a suit challenging state restrictions on transgender athletes); Order at 3, *Judicial Watch, Inc. v. Pennsylvania*, Case No. 20-cv-708 (M.D. Pa. Nov. 19, 2020), Dkt. No. 50 (granting permissive intervention in NVRA case to Common Cause and LWV-PA upon finding that "the presence of the intervenors may serve to clarify issues and thereby serve judicial economy" (internal quotation marks, citation, and footnote omitted)); *Donald J. Trump for President, Inc.*, 2020 WL 8262029, at *1 (granting Rule 24(b) motion where voters and organizations "have an interest in the constitutionality of Pennsylvania's voting procedures, which goes to the heart of Plaintiffs' action" (internal quotation marks and citation omitted)).  This Court should do the same here.

## CONCLUSION

For the reasons stated above, the Court should grant the Motion to Intervene as Defendants as of right, or in the alternative, via permissive intervention.

Dated: December 9, 2025                                    Respectfully submitted,

                                                          /s/____Lynette Labinger_____

17

Ari J. Savitzky*
William Hughes*
Theresa J. Lee*
Sophia Lin Lakin*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500
asavitzky@aclu.org
whughes@aclu.org
tlee@aclu.org
slakin@aclu.org

Patricia Yan*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street NW
Washington, DC 20005
Tel.: (202) 457-0800
pyan@aclu.org

*application for admission pro hac vice
forthcoming

Lynette Labinger (Bar No. 1645)
LYNETTE LABINGER, ATTORNEY AT LAW
128 Dorrance Street, Box 710
Providence, RI 02903
*Cooperating counsel, American Civil Liberties Union
Foundation of Rhode Island*
401-465-9565
LL@labingerlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 9, 2025, a true and correct copy of the foregoing document was served via the Court's ECF system on all counsel of record and by email on counsel for the United States.

/s/_____Lynette Labinger_____