# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA,

     *Plaintiff,*

v.

GREGG M. AMORE, in his official
capacity as Secretary of State for the
State of Rhode Island,

     *Defendant.*

Case No. 25-cv-00639-MSM-PAS

## MEMORANDUM IN SUPPORT OF SEIU DISTRICT 1199NE, RHODE ISLAND ALLIANCE FOR RETIRED AMERICANS, CAROLYN BETENSKY, AND MICHAEL "ZACK" MEZERA'S MOTION TO INTERVENE AS DEFENDANTS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................................ii

INTRODUCTION .................................................................................................. 1

BACKGROUND.................................................................................................... 3

    I.   Federal law has long made voter list maintenance a state responsibility,
        consistent with the constitutional separation of powers. ................................. 3

    II.  The Department of Justice has embarked on an unprecedented nationwide
        campaign to amass personal voter registration data held by the states. ......... 5

    III. The Department of Justice sues Secretary Amore to obtain Rhode Island's
        voter registration list. ..................................................................................... 7

    IV. Proposed Intervenors' personal information is placed in jeopardy by DOJ's
        demands. ........................................................................................................ 8

LEGAL STANDARD............................................................................................ 13

ARGUMENT ....................................................................................................... 14

    I.   Proposed Intervenors are entitled to intervene as of right under
        Rule 24(a)(2). ................................................................................................ 14

      A. The motion is timely...................................................................................... 14

      B. Proposed Intervenors have an interest in protecting their sensitive and
         personal information from improper disclosure to DOJ, which is
         threatened by this action. ............................................................................ 14

      C. The existing parties do not adequately represent Proposed Intervenors. .... 18

    II.  Alternatively, Proposed Intervenors should be granted permissive
        intervention. ................................................................................................. 20

CONCLUSION.................................................................................................... 22

# TABLE OF AUTHORITIES

## CASES

*1789 Found. Inc. v. Fontes,*
No. CV-24-02987-PHX-SPL, 2025 WL 834919 (D. Ariz. Mar. 17, 2025) .................................................................................................. 21

*Animal Prot. Inst. v. Martin,*
241 F.R.D. 66 (D. Me. 2007) ............................................................. 20

*Arizona v. Inter Tribal Council of Ariz., Inc.,*
570 U.S. 1 (2013) ................................................................................ 4

*B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.,*
440 F.3d 541 (1st Cir. 2006) .......................................... 13–14, 17, 19

*Berger v. N.C. State Conf. of the NAACP,*
597 U.S. 179 (2022) ....................................................................... 3, 19

*Conservation L. Found. of New Eng., Inc. v. Mosbacher,*
966 F.2d 39 (1st Cir. 1992) .............................................................. 19

*Daggett v. Comm'n on Governmental Ethics & Election Pracs.,*
172 F.3d 104 (1st Cir. 1999) ............................................................ 21

*In re Exch. Union Co.,*
No. 24-MC-91645-ADB, 2025 WL 894652 (D. Mass. Mar. 24, 2025) ............. 21

*Fiandaca v. Cunningham,*
827 F.2d 825 (1st Cir. 1987) ............................................................ 14

*Foster v. Love,*
522 U.S. 67 (1997) .............................................................................. 3

*Franconia Mins. (US) LLC v. United States,*
319 F.R.D. 261 (D. Minn. 2017) ....................................................... 21

*Fund for Animals, Inc. v. Norton,*
322 F.3d 728 (D.C. Cir. 2003) .......................................................... 18

*Husted v. A. Philip Randolph Inst.,*
584 U.S. 756 (2018) ............................................................................ 4

*Issa v. Newsom,*
    No. 2:20-cv-01044-MCE-CKD, 2020 WL 3074351 (E.D. Cal. June 10, 2020) ............................................................................................ 17

*Jud. Watch, Inc. v. Ill. State Bd. of Elections,*
    No. 1:24-cv-01867, 2024 WL 3454706 (N.D. Ill. July 18, 2024) ..................... 17

*Kalbers v. U.S. Dep't of Just.,*
    22 F.4th 816 (9th Cir. 2021) ............................................................. 15

*Kennedy v. Lynd,*
    306 F.2d 222 (5th Cir. 1962) ............................................................... 7

*Kleissler v. U.S. Forest Serv.,*
    157 F.3d 964 (3d Cir. 1998) .............................................................. 19

*League of Women Voters of N.C. v. North Carolina,*
    No. 1:13-cv-660, 2014 WL 12770081 (M.D.N.C. Jan. 27, 2014) ..................... 21

*McDonough v. City of Portland,*
    No. 2:15-cv-00153-JDL, 2015 WL 3755289 (D. Me. June 16, 2015) ............... 18

*NERO Int'l Holding, Co. v. NEROtix Unlimited Inc.,*
    585 F. Supp. 3d 152 (D. Mass. 2022) ................................................. 14

*Paher v. Cegavske,*
    No. 3:20-cv-00243-MMD-WGC, 2020 WL 2042365 (D. Nev. Apr. 28, 2020) ............................................................................................ 17

*Pub. Int. Legal Found., Inc. v. Bellows,*
    92 F.4th 36 (1st Cir. 2024) ................................................................. 8

*Pub. Int. Legal Found., Inc. v. Winfrey,*
    463 F. Supp. 3d 795 (E.D. Mich. 2020) .............................................. 21

*Republican Nat'l Comm. v. N.C. State Bd. of Elections,*
    120 F.4th 390 (4th Cir. 2024) ............................................................. 4

*Sakab Saudi Holding Co. v. Aljabri,*
    2021 No. 1:21-cv-10529-NMG, 2021 WL 8999588 (D. Mass. Oct. 26, 2021) ............................................................................................ 15

*In re Sealed Case,*
    237 F.3d 657 (D.C. Cir. 2001) ........................................................... 15

*In re Thompson,*
965 F.2d 1136 (1st Cir. 1992) ........................................................ 13

*Trbovich v. United Mine Workers of Am.,*
404 U.S. 528 (1972) ..................................................................... 18

*United States v. Oregon,*
No. 6:25-cv-01666, 2025 WL 3496571 (D. Or. Dec. 5, 2025).................. 2, 15, 20

*Venetian Casino Resort, LLC v. Enwave L.V., LLC,*
No. 2:19-cv-1197-JCM-DJA, 2020 WL 1539691 (D. Nev. Jan. 7,
2020) ........................................................................................ 17

## US CONSTITUTIONAL PROVISIONS

Art. I, § 4, cl. 1 ............................................................................. 3

## FEDERAL STATUTES

52 U.S.C. § 20501(b) ...................................................................... 4

52 U.S.C. § 20507(a) ...................................................................... 4

52 U.S.C. § 20507(c)–(g) ................................................................. 4

52 U.S.C. § 21083(a)(1)(A) .............................................................. 4

52 U.S.C. § 21083(a)(2)(A) .............................................................. 4

## STATE AUTHORITIES

410 R.I.C.R. 20-00-19.5(I) ............................................................... 5

## OTHER AUTHORITIES

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to
Build National Voter Roll*, N.Y. Times (Sep. 9, 2025),
https://perma.cc/8VP4-WRXD ......................................................... 5

Fed. R. Civ. P. 24(a) ...................................................................... 2

Fed. R. Civ. P. 24(b)(1)(B) ............................................................... 13, 20

Fed. R. Civ. P. 24(b)(3) ............................................................... 13, 20

H.R. Rep. No. 86-956 (1959) ............................................................... 8

*Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls*, U.S. Dep't of Just. (Sept. 16, 2025), https://perma.cc/2F92-EEXT ............................................. 6

*Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls*, U.S. Dep't of Just. (Dec. 2, 2025), https://perma.cc/3C7K-MXQC ........................................... 7

*Justice Department Sues Six States for Failure to Provide Voter Registration Rolls*, U.S. Dep't of Just. (Sept. 25, 2025), https://perma.cc/PE2W-7F9J ............................................... 7

Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Dec. 5, 2025), https://perma.cc/24DT-7TFG ...................................... 5

Nancy Lavin & Christopher Shea, *DOJ Hits Rhode Island With Lawsuit Over Voter List Data*, R.I. Current (Dec. 2, 2025), https://rhodeislandcurrent.com/2025/12/02/doj-hits-rhode-island-with-lawsuit-over-voter-list-data/ ...................................... 5

## INTRODUCTION

The Department of Justice ("DOJ") recently embarked on an unprecedented nationwide campaign to amass a wide array of highly sensitive personal information about voters in a centralized database. As part of this operation, DOJ has sued state officials in more than a dozen states in an effort to obtain those states' voter registration lists. One of those states is Rhode Island; in the present action, DOJ sued Secretary of State Gregg M. Amore on December 2, 2025, asking this Court to compel the production of Rhode Island's complete and unredacted voter registration list, which contains sensitive and private information about every voter in the state. This assault intrudes not only on Rhode Island's constitutional prerogative to maintain and protect its own voter registration list but also on the privacy of individual Rhode Island voters who have good reason to fear their personal information being handed over to the federal government.

Accordingly, pursuant to Rule 24 of the Federal Rules of Civil Procedure, SEIU District 1199NE ("1199NE"), the Rhode Island Alliance for Retired Americans ("the Alliance"), Carolyn Betensky, and Michael "Zack" Mezera (collectively, "Proposed Intervenors") move to intervene in this litigation to defend against the federal government's overreach. 1199NE, a labor union that advocates and lobbies on behalf of its members, seeks to intervene both to preserve the privacy rights of its members and to protect its own mission-critical ability to politically empower members who are worried about investigation, scrutiny, and retaliation from the federal government. The Alliance, whose members are retirees and disproportionately likely

to be targeted by scams of various kinds, similarly seeks to protect its members' privacy and preserve its own ability to conduct its core civic engagement work. And Mr. Mezera and Dr. Betensky are registered Rhode Island voters who seek to protect the privacy of their own sensitive personal information and prevent the improper disclosure of such information to DOJ.

Multiple courts have allowed individuals and groups similarly situated to Proposed Intervenors, including another state chapter of the Alliance, to intervene as defendants in the other suits DOJ has brought seeking voter lists. *See generally United States v. Oregon*, No. 6:25-cv-01666, 2025 WL 3496571 (D. Or. Dec. 5, 2025) (granting intervention as of right to Oregon social welfare organization and three registered Oregon voters); *United States v. Benson*, No. 1:25-cv-01148 (W.D. Mich. Dec. 9, 2025), ECF No. 45 (granting intervention as of right to Michigan Alliance for Retired Americans and Michigan voters); Minute Order, *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Nov. 19, 2025), ECF No. 70 (granting two separate motions to intervene by groups including NAACP and League of Women Voters of California). This Court should do the same.

Proposed Intervenors readily satisfy the standard for intervention as of right. *See* Fed. R. Civ. P. 24(a). They have a clear interest in ensuring the continued privacy of their personal information, and that interest is directly threatened and could be severely impaired by this suit. While Secretary of State Amore is a governmental defendant who must consider the "broader public-policy implications" of the issues presented in this suit, Proposed Intervenors are solely concerned with protecting

their privacy, "full stop." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 196 (2022) (citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538–39 (1972)). As such, Secretary Amore has competing obligations that Proposed Intervenors do not and thus may not litigate the case as vigorously as Proposed Intervenors. And once Proposed Intervenors' privacy rights are violated, the harm cannot be undone. Federal courts routinely grant intervention as of right to intervenors like these to ensure that their rights are zealously defended.

Alternatively, Proposed Intervenors should be granted permissive intervention under Rule 24(b) to ensure that Rhode Island voters have a voice in this case, the core subject of which is the disclosure of *their* personal information. At a minimum, Proposed Intervenors will help to develop the issues in this case and ensure vigorous presentation of arguments that the existing Defendant may be limited in presenting. Those considerations weigh strongly in favor of permissive intervention. And Proposed Intervenors will abide by any schedule ordered by the Court or agreed to by the existing parties—they will not delay this case.

## BACKGROUND

### I. Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers.

The U.S. Constitution "invests the States with responsibility for the mechanics" of elections, subject to any decision by Congress to "preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997); *see also* U.S. Const. art. I, § 4, cl. 1. Accordingly, as a default matter, the Constitution assigns states the

responsibility for determining voter eligibility and maintaining lists of eligible voters. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013).

While Congress has enacted certain laws governing voter registration, these laws augment existing "state voter-registration systems," *id.* at 5, and confirm that states are the custodians of voter registration data. Congress in 1993 enacted the National Voter Registration Act ("NVRA") to serve "two main objectives: increasing voter registration and removing ineligible persons from the States' voter registration rolls." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018); *see also* 52 U.S.C. § 20501(b). The NVRA tellingly charges *states*—not the federal government—with the "administration of voter registration for elections for Federal office," 52 U.S.C. § 20507(a), including as to maintaining voter lists (subject to strict procedural safeguards), *id.* § 20507(c)–(g). It similarly makes *states* the custodians of voter lists, *see Husted*, 584 U.S. at 761.

In the wake of the 2000 elections, Congress enacted the Help America Vote Act ("HAVA") "to improve voting systems and voter access." *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 394 (4th Cir. 2024). Like the NVRA, HAVA regulates how *states* maintain voter lists, requiring they create a "computerized statewide voter registration list" and "perform list maintenance." 52 U.S.C. § 21083(a)(1)(A), (a)(2)(A). HAVA is abundantly clear that this list is to be "defined, maintained, and administered at the State level." *Id.* § 21083(a)(1)(A).

## II. The Department of Justice has embarked on an unprecedented nationwide campaign to amass personal voter registration data held by the states.

This spring, DOJ launched a campaign to demand broad and unprecedented access to state voter files, including personal information about each registered voter like date of birth, driver's license number, and social security number. DOJ has reportedly sent demands to at least forty states, with plans to make similar demands on all fifty states.[1] It seeks to use the data to create a national voter database that will, in turn, be used to seek to substantiate President Trump's unfounded accusations that millions of non-citizens have voted illegally in recent elections.[2] The vast majority of states have refused to comply, appropriately declining to turn over sensitive personal information that is typically protected by state law.[3] Rhode Island law, for example, provides confidentiality protections for sensitive personal information provided in the context of voter registration. *See* 410 R.I.C.R. 20-00-19.5(I).

As part of this broader pressure campaign, DOJ set its sights on Rhode Island. On September 8, 2025, DOJ sent a letter to Secretary of State Amore asking that the

---

[1] *See* Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://perma.cc/8VP4-WRXD; Nancy Lavin & Christopher Shea, *DOJ Hits Rhode Island With Lawsuit Over Voter List Data*, R.I. Current (Dec. 2, 2025), https://rhodeislandcurrent.com/2025/12/02/doj-hits-rhode-island-with-lawsuit-over-voter-list-data/.

[2] Barrett & Corasantini, *supra* note 1.

[3] *See* Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Dec. 5, 2025), https://perma.cc/24DT-7TFG (reporting that only two states—Indiana and Wyoming—have given DOJ everything it sought).

Secretary provide DOJ with "a copy of Rhode Island's statewide voter registration list" within fourteen days. Riordan Decl., Ex. 1 at 1, ECF No. 2-2. DOJ was explicit that the statewide voter registration list "should contain *all fields*" and "must include the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number[.]" Riordan Decl., Ex. 1 at 1. Secretary Amore responded by letter eight days later, on September 16, 2025. Riordan Decl., Ex. 2 at 1, ECF No. 2-2. In that response, Secretary Amore stated that Rhode Island would provide DOJ with "a copy of the publicly available voter registration list," but objected to the request for "*all fields*," including personally identifiable information such as driver's license number and partial social security number. Riordan Decl., Ex. 2 at 1.

As noted, around the same time as DOJ was making these demands of Rhode Island, it made similar demands to scores of other states, the vast majority of which have refused to turn over highly sensitive personal voter information. Beginning in September 2025, DOJ began filing lawsuits against some—but not all—of these states. On September 16, 2025, DOJ brought actions against Oregon and Maine, alleging in both cases that DOJ was entitled to the voter information it sought under three statutes: the NVRA, HAVA, and the Civil Rights Act of 1960.[4] On September 25, 2025, DOJ filed another set of lawsuits, this time against California, Michigan,

---

[4] *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls*, U.S. Dep't of Just. (Sept. 16, 2025), https://perma.cc/2F92-EEXT.

Minnesota, New York, New Hampshire, and Pennsylvania.[5] Again, DOJ brought its claims under all of these same three statutes, excepting only the NVRA claim in states that are exempt from the NVRA.

### III. The Department of Justice sues Secretary Amore to obtain Rhode Island's voter registration list.

DOJ filed this suit on December 2, 2025, seeking to compel Secretary Amore to provide Rhode Island's full, unredacted statewide voter registration list. *See generally* Compl., ECF No. 1. This action is part of a *third* wave of suits filed by DOJ, in which DOJ simultaneously brought actions against Delaware, Maryland, New Mexico, Rhode Island, Vermont, and Washington.[6]

Interestingly, however, in this action DOJ has chosen not to bring claims under either HAVA or the NVRA, as it did in the previous suits. Instead, DOJ brings only a single count: namely, it alleges that, in refusing to fully comply with DOJ's requests, Secretary Amore violated Section 303 of the Civil Rights Act of 1960. This act is a long dormant Civil Rights era law that permits DOJ to review certain voting records to investigate "question[s] concerning infringement or denial of . . . constitutional voting rights." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962). Congress enacted the law to preserve "the right of all qualified citizens to vote without discrimination

---

[5] *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls*, U.S. Dep't of Just. (Sept. 25, 2025), https://perma.cc/PE2W-7F9J.
[6] *Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls*, U.S. Dep't of Just. (Dec. 2, 2025), https://perma.cc/3C7K-MXQC.

on account of race," and specifically to facilitate "investigation[s]" authorized under the Civil Rights Act of 1957. H.R. Rep. No. 86-956, at 7 (1959).

DOJ, however, admits that it is not seeking to enforce these laws or investigate the unconstitutional denial of the right to vote. Instead, DOJ's own *stated* purpose in making the request was "to ascertain Rhode Island's compliance with the list maintenance requirements of the NVRA and HAVA." Compl. ¶ 20. These are laws with their own separate procedures and enforcement mechanisms. And DOJ has not brought claims against Rhode Island under those statutes, unlike in its previous lawsuits against *other* states. Rather, in this case, DOJ hangs its hat solely on Section 303 of the Civil Rights Act of 1960. But Section 303 is not a roving authorization for the federal government to demand any voter information it wants from any state for any purpose the federal government can conceivably concoct. Accordingly, Section 303 does not require the disclosure DOJ seeks here.[7]

## IV. Proposed Intervenors' personal information is placed in jeopardy by DOJ's demands.

Proposed Intervenors include 1199NE and the Alliance, organizations whose members are registered voters across Rhode Island, as well as civically engaged, registered voters in Rhode Island whose confidential personal information—driver's

---

[7] Moreover, even if Section 303 did apply, it would not prohibit Rhode Island from redacting confidential and sensitive voter information that has nothing to do with investigating the denial of the right to vote, just as it would be entitled to do under the NVRA. *See Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024).

license numbers, partial social security numbers, and full dates of birth—will be disclosed to DOJ if it prevails in its suit.

*1199NE*. 1199NE, the New England Health Care Employees Union, represents healthcare workers in Connecticut and Rhode Island and has united workers to win a voice at work to demand improvements for people in nursing homes, hospitals, and state- and community-based healthcare services. Ex. A ("Baril Decl.") ¶ 3. 1199NE has more than 30,000 members, including 4,000 to 5,000 in Rhode Island, who elect leadership and decide priorities. *Id.* ¶ 4. 1199NE is very politically engaged; it advocates on behalf of its members and lobbies for and proposes legislation that protects healthcare workers. *Id.* ¶ 5.

To that end, it is important to 1199NE that its members are politically engaged and able to register to vote and vote, and it runs various programs to register and turn out its members to vote. *Id.* 1199NE's ability to help its members become and stay politically engaged and advance legislation important to its membership will be directly frustrated by DOJ's efforts to obtain a complete, unredacted state voter file. *Id.* ¶¶ 6–12. 1199NE's members—which include many workers outside of hospitals who are foreign-born, low-income, and marginalized—fear that if their personal information is handed over to the federal government, additional scrutiny, investigation, and retaliation will follow, not only against themselves but also against their family and community members. *Id.* ¶¶ 8–10. In particular, members who are naturalized citizens are concerned that the federal government will use the complete voter registration information to accuse them of illegally registering and may opt out

of registering out of fear that they will be targeted and wrongfully accused. *Id.* ¶ 9. DOJ's efforts to obtain Rhode Island's complete voter registration list thus threaten to sow distrust among members, deter them from voter registration and voting due to fear, and make it harder for 1199NE to turn out these members and accomplish a core part of its work of engaging members to participate politically. *Id.* ¶¶ 6–12. Union members have also been targeted by right-wing organizations and in connection with immigration enforcement raids, and 1199NE is concerned that the personal information in Rhode Island's voter registration list may be used to further target, persecute, and blacklist its members. *Id.* ¶ 13.

**The Alliance.** The Alliance is a nonpartisan organization incorporated in Rhode Island and a chartered state affiliate of the national Alliance for Retired Americans. *See* Ex. B ("Boudreau Decl.") ¶ 4. Its mission is to ensure social and economic justice and full civil rights for retirees after a lifetime of work. *Id.* ¶ 6. The Alliance has approximately 22,000 members in Rhode Island, including retirees from public and private sector unions, community organizations, and individual activists. *Id.* ¶ 5. Most of those members are more than 60 years old. *Id.*

Should DOJ prevail in this suit, it will affect the Alliance and its members in several ways. The Alliance is acutely aware that its members, who tend to be older citizens, are frequently targeted for different types of scams. *See id.* ¶ 9. Many of its members, including Mr. Boudreau, have serious concerns regarding the disclosure of their personal information to DOJ. They fear that the federal government will not adequately safeguard this information and that it will expose the Alliance's members

in particular to potential harm. *See id.* ¶¶ 8, 11. In addition, a central goal of the Alliance's civic engagement work is to encourage its members to be politically active and to participate in the electoral process. *Id.* ¶ 7. That will become more difficult if Rhode Island voters, including its members, fear that their personal information will be turned over to the federal government simply because they have registered to vote. *Id.* ¶ 10.

**Carolyn Betensky.** Dr. Carolyn Betensky is a registered voter in Rhode Island and is a professor and chair of the English Department at the University of Rhode Island. Ex. C ("Betensky Decl.") ¶¶ 2–3. She is also a leader of her union, the American Association of University Professors ("AAUP"), and has served in the past as a national and local board member for the organization. *Id.* ¶ 3. The AAUP has been a strong proponent of academic freedom, even in the face of threats against academics who research topics the federal government views with hostility. *See id.* ¶¶ 3, 8. And as an activist herself, Dr. Betensky has attended numerous demonstrations, including several against the policies of the Trump administration. *Id.* ¶ 5. She has also volunteered to register student voters and to serve as an election observer because she believes strongly in the right to vote. *Id.* ¶ 4.

Due to her positions with AAUP and her own activism, Dr. Betensky is concerned by how DOJ may use her personal information. *See id.* ¶ 8. Academics and activists alike have been targeted for their opposition to the federal government. *See id.* This targeting has come from the government as well as from private actors, whom she fears may gain access to her sensitive voter information if DOJ does not properly

safeguard that data. *See id.* ¶¶ 7, 11. Dr. Betensky is also concerned about the impacts that the relief DOJ seeks may have on voter engagement efforts, especially among students who already face barriers to participating as new voters. *Id.* ¶ 10. And as a regular international traveler, she fears hostile enforcement at the border when she returns to the United States. *See id.* ¶ 9. In short, Dr. Betensky reasonably fears that DOJ's efforts to obtain Rhode Island's statewide voter list will make her organizational work more difficult and her individual information less secure.

**Michael "Zack" Mezera.** Michael "Zack" Mezera is a registered voter in Rhode Island. Ex. D ("Mezera Decl.") ¶ 2. For more than a decade he has worked in the fields of politics and organizing in Rhode Island, including most recently as Rhode Island Political Director for the Working Families Party. *Id.* ¶ 3. In that capacity and elsewhere, he has often been involved in public-facing political activity, for example testifying before the Rhode Island General Assembly, writing opinion pieces, and organizing political protests. *Id.* ¶ 6. At times, this involves taking public stances opposed to the current administration; for example, Mr. Mezera was a lead organizer of Rhode Island's "Hands Off" protest in the spring of 2025. *See id.* Mr. Mezera opposes the disclosure of his sensitive personal information to the federal government for multiple reasons. *Id.* ¶ 7. For one, he does not trust the federal government to handle the information responsibly, and he has had his personal information leaked in previous data breaches, and is concerned about the increased risk of harm he and other Rhode Island voters will be subjected to if it does not. *See id.* ¶ 8. In addition, given the administration's known history of targeting its political enemies, he also

worries about the risk of political retribution toward himself and other political organizers he works with, many of whom are from marginalized communities and potentially susceptible to government pressure. *See id.* ¶ 9.

## LEGAL STANDARD

A movant has a right to intervene under Rule 24(a)(2) where "(1) it timely moved to intervene; (2) it has an interest relating to the property or transaction that forms the basis of the ongoing suit; (3) the disposition of the action threatens to create a practical impediment to its ability to protect[] its interest; and (4) no existing party adequately represents its interests." *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 544–45 (1st Cir. 2006). Courts also have discretion to grant permissive intervention if the movant has "a claim or defense that shares with the main action a common question of law or fact," if doing so will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1)(B), (b)(3).[8] There is a strong "policy favoring liberal intervention under Rule 24." *In re Thompson*, 965 F.2d 1136, 1143 n.11 (1st Cir. 1992).

---

[8] In compliance with Rule 24(c)'s requirement that a motion to intervene be accompanied by a "pleading," Proposed Intervenors attach a proposed answer to this motion. *See* Ex. E. Proposed Intervenors reserve the right to file a motion to dismiss under Rule 12 ahead of any deadline set by the Court or the Federal Rules.

**ARGUMENT**

**I.    Proposed Intervenors are entitled to intervene as of right under Rule 24(a)(2).**

**A.    The motion is timely.**

Proposed Intervenors' motion—filed a mere week after DOJ brought suit and before any case schedule has been set—is plainly timely. *See, e.g.*, *Fiandaca v. Cunningham*, 827 F.2d 825, 834 (1st Cir. 1987) (holding motion timely where filed by intervenors "days" after "learning that their interests may be affected"); *NERO Int'l Holding, Co. v. NEROtix Unlimited Inc.*, 585 F. Supp. 3d 152, 156–57 (D. Mass. 2022) (holding motion to intervene filed "roughly two-and-a-half months after Plaintiffs filed the Complaint" to be timely). Moreover, because no case schedule has yet been set and no substantive events have yet occurred in the case, there is no risk of prejudice to the existing parties. *See NERO Int'l Holding*, 585 F. Supp. 3d at 156 (finding no prejudice where motion was filed prior to scheduling conference and "the case had not progressed past the initial pleadings"). Proposed Intervenors further agree to abide by any schedule set by the Court or the existing parties.

**B.    Proposed Intervenors have an interest in protecting their sensitive and personal information from improper disclosure to DOJ, which is threatened by this action.**

Proposed Intervenors also satisfy Rule 24(a)(2)'s interest factors because each has interests at stake in this matter that "as a practical matter, may be impaired by this litigation." *B. Fernandez*, 440 F.3d at 545. Mr. Mezera and Dr. Betensky are registered Rhode Island voters, and each strongly opposes the disclosure of their sensitive personal information to the federal government. *See supra* Background

Section IV. "[T]hat is all Rule 24 demands" and by itself provides them with an interest that supports intervention. *Sakab Saudi Holding Co. v. Aljabri*, No. 1:21-cv-10529-NMG, 2021 WL 8999588, at *2 (D. Mass. Oct. 26, 2021) (finding Rule 24(a)(2) satisfied where the "plaintiff's claims 'could result' in the disclosure of privileged information" (quoting *B. Fernandez*, 440 F.3d at 545)); *see also, e.g.*, *Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 827 (9th Cir. 2021) (recognizing "straightforward" protectable interest in confidentiality of non-public documents); *In re Sealed Case*, 237 F.3d 657, 663–64 (D.C. Cir. 2001) (holding intervenors had "legally cognizable interest in maintaining the confidentiality" of records). The District of Oregon, too, reached this same conclusion in granting intervention as of right to Oregon voters and an Oregon social-welfare organization in a nearly identical lawsuit brought by DOJ seeking that state's voter registration list. *See Oregon*, 2025 WL 3496571, at *1 (granting intervention because "the outcome of this litigation will directly affect the protectable privacy interests Proposed Intervenors assert").

In addition, even beyond their privacy concerns, each individual has discrete interests tied to their participation in Rhode Island's civic life. Mr. Mezera is a politically engaged individual whose work at times has involved taking public stances on politically charged issues, including in opposition to the current administration. *See* Mezera Decl. ¶ 6. He worries about retribution toward political organizers such as himself, many of whom are from marginalized communities and potentially susceptible to government pressure. *See id.* ¶ 9. Similarly, Dr. Betensky is also very politically engaged; she is both a member of a group that participates in anti-

administration protests and an active member of the AAUP, which has been publicly opposed to the current administration and its policies (including in active litigation). *See* Betensky Decl. ¶¶ 3, 5, 8. She also often crosses international borders to visit family in Canada and for academic purposes, and is thus concerned about being targeted by hostile border enforcement. *See id.* ¶ 9. Both individuals thus reasonably fear the prospect of their sensitive personal information being disclosed to the federal government without their consent. *See id.* ¶ 7; Mezera Decl. ¶ 7.

Much the same is true of 1199NE and the Alliance. This lawsuit threatens the personal information of 1199NE's more than 4,000 members and the Alliance's roughly 22,000 members, and the privacy of members' information is of great importance to both groups. *See* Baril Decl. ¶¶ 4, 7–12; Boudreau Decl. ¶¶ 5, 9. Some of 1199NE's members are concerned about the prospect of investigation, scrutiny, and retaliation affecting them and their families and communities if their protected personal information is handed over directly to the federal government. *See* Baril Decl. ¶¶ 8–11. Some may opt out of registering and voting out of fear of being targeted or wrongfully accused by the federal government, who they feel cannot be trusted to handle sensitive personal information responsibly. *See id.* ¶¶ 7–12. That would undermine a core part of 1199NE's mission of advocating on behalf of its members and advancing legislation that protects healthcare workers, which relies on its members' ability to participate in the electoral process. *See id.* ¶¶ 5, 12. 1199NE is also concerned about the use of personal information in Rhode Island's voter registration list to further target, persecute, and blacklist its members. *See id.* ¶ 13.

For the Alliance, too, its members' participation in the electoral process is central to its mission. *See* Boudreau Decl. ¶ 7. And that mission will also be frustrated if its members are discouraged from participating in the political process because they know being registered to vote entails the disclosure of their personal information to a federal government they cannot trust to handle it securely. *Id.* ¶¶ 10–11. Courts have long held that organizations have a recognized interest in preserving and pursuing their own mission-critical organizational activities, particularly when it comes to ensuring their constituents' ability to vote. *See, e.g.*, *Jud. Watch, Inc. v. Ill. State Bd. of Elections*, No. 1:24-cv-01867, 2024 WL 3454706, at *3 (N.D. Ill. July 18, 2024); *Paher v. Cegavske*, No. 3:20-cv-00243-MMD-WGC, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020); *Issa v. Newsom*, No. 2:20-cv-01044-MCE-CKD, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020).

For similar reasons, as a "practical matter," all of these interests "may be impaired by this litigation." *B. Fernandez*, 440 F.3d at 545. "Once an applicant has established a significantly protectable interest in an action, courts regularly find that disposition of the case may, as a practical matter, impair an applicant's ability to protect that interest." *Venetian Casino Resort, LLC v. Enwave L.V., LLC*, No. 2:19-cv-1197-JCM-DJA, 2020 WL 1539691, at *3 (D. Nev. Jan. 7, 2020) (citing *California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006)). The unredacted statewide voter list that DOJ demands includes precisely the personal information that Proposed Intervenors have interests in protecting. For this simple reason, if DOJ

prevails in this action and gets access to this information, those interests will by definition be impaired.

## C. The existing parties do not adequately represent Proposed Intervenors.

The existing parties also do not adequately represent the interests of Proposed Intervenors. As courts have long recognized, the "burden of making that showing should be treated as minimal" and the movant need only show that the existing parties' representation "*may be*" inadequate. *Trbovich*, 404 U.S. at 538 n.10 (emphasis added).[9] Courts are "liberal in finding" that this requirement has been satisfied because "there is good reason in most cases to suppose that the applicant is the best judge of the representation of the applicant's own interests." 7C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1909 (3d ed. 2024) .

DOJ plainly does not represent Proposed Intervenors' interests. It is diametrically opposed to those interests, as it seeks to forcibly compel production of Proposed Intervenors' and their members' personal information against their wishes.

Although Secretary Amore has resisted turning over this information up to this point, he nevertheless also does not adequately represent Proposed Intervenors. Courts have "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728,

---

[9] *See also McDonough v. City of Portland*, No. 2:15-cv-00153-JDL, 2015 WL 3755289, at *3 (D. Me. June 16, 2015) (confirming burden to show inadequate representation "is not onerous" even when an existing governmental party intends to defend the action: "the intervenor need only show that the government's representation *may* be inadequate, not that it *is* inadequate" (citing *Conservation L. Found. of New Eng., Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992)).

736 (D.C. Cir. 2003). That is because the interests of government officials are "necessarily colored by [their] view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998). As a result, as the First Circuit has recognized, "a governmental entity charged by law with representing the public interest of its citizens" will not necessarily "advance the narrower interest of a private entity." *Mosbacher*, 966 F.2d at 44. The Supreme Court, too, has emphasized this point, noting that public officials must "bear in mind broader public-policy implications," whereas private litigants seek to vindicate their own rights "full stop." *Berger*, 597 U.S. at 195–96 (citing *Trbovich*, 404 U.S. at 538–39).

That is precisely the case here. As DOJ itself alleges, Rhode Island and the Secretary have certain obligations with respect to voter list maintenance under both the NVRA and HAVA. *See* Compl. ¶ 20. Proposed Intervenors, in contrast, are not "constrained" by any such competing public duties, *Mosbacher*, 966 F.2d at 44, and seek solely to vindicate the narrower privacy rights of themselves and their members, "full stop," *Berger*, 597 U.S. at 196. Their interests are thus straightforwardly "different in kind [and] degree from those" of the existing Defendants, readily satisfying the inadequacy of representation inquiry. *B. Fernandez*, 440 F.3d at 546.

Indeed, that is the same conclusion that the District of Oregon came to in granting intervention as of right in the DOJ's suit seeking Oregon's voter registration list. As that court held, "the existing Defendants have obligations under the NVRA and HAVA that Proposed Intervenors do not share and have broader public policy

obligations and considerations that may incentivize them to make compromises that Proposed Intervenors would not make," while the Oregon intervenors had "specific interests in protecting their privacy . . . and in increasing voter participation by marginalized communities." *Oregon*, 2025 WL 3496571, at *2. The court thus held that the intervenors' interests were not shared by Defendants and that the intervenors had "made a compelling showing sufficient to overcome any presumption of adequacy." *Id.* Because Proposed Intervenors assert those same interests and the exact same dynamic is present here, this Court should reach the same conclusion.

## II. Alternatively, Proposed Intervenors should be granted permissive intervention.

This Court should alternatively exercise its discretion to grant permissive intervention. Rule 24(b) "should be construed liberally" in favor of intervention, *Animal Prot. Inst. v. Martin*, 241 F.R.D. 66, 68 (D. Me. 2007) (citation omitted), and it is readily satisfied here. Proposed Intervenors assert a "claim or defense that shares with the main action a common question of law or fact," Fed. R. Civ. P. 24(b)(1)(B), as they seek to intervene to argue that DOJ is not entitled to relief on its claim and that DOJ is not entitled to access their and their members' personal information, *see generally* Ex. E. Further, granting intervention would not "unduly delay or prejudice the adjudication" of the matter. Fed. R. Civ. P. 24(b)(3). Again, Proposed Intervenors have moved with haste to intervene in this action just 7 days after the suit was filed, and Proposed Intervenors agree to abide by any schedule entered by the Court or agreed to by the existing parties.

The nature of Proposed Intervenors' interests here also bolsters their case for intervention. The fact that Proposed Intervenors are intervening to assert Mr. Mezera's, Dr. Betensky's, and 119NE and the Alliance's members' "confidentiality and/or privacy interest[s]" that are at stake in this case alone "warrants an opportunity to permissively intervene to protect that interest." *In re Exch. Union Co.*, No. 24-MC-91645-ADB, 2025 WL 894652, at *3 (D. Mass. Mar. 24, 2025). In addition, courts also regularly allow civic organizations and individual voters to intervene to ensure their voices are heard when litigation implicates the rights of all voters. *See, e.g.*, *1789 Found. Inc. v. Fontes*, No. CV-24-02987-PHX-SPL, 2025 WL 834919, at *4 (D. Ariz. Mar. 17, 2025) (permitting advocacy organizations to intervene as defendants); *Pub. Int. Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 802 (E.D. Mich. 2020) (permitting voting rights organizations to intervene as defendants); *League of Women Voters of N.C. v. North Carolina*, No. 1:13-cv-660, 2014 WL 12770081, at *3 (M.D.N.C. Jan. 27, 2014) (permitting individual voters to intervene). Here, Proposed Intervenors offer a critically important perspective in this matter that will not otherwise be represented: that of the individual voters whose information is at issue. *See supra* Background Section IV. This unique perspective will be "helpful in fully developing the case." *Daggett v. Comm'n on Governmental Ethics & Election Pracs.*, 172 F.3d 104, 113 (1st Cir. 1999); *see also Franconia Mins. (US) LLC v. United States*, 319 F.R.D. 261, 268 (D. Minn. 2017) (observing that "the Court expects to profit from a diversity of viewpoints as they illuminate the ultimate questions posed by the parties" in granting permissive intervention). These considerations, in

addition to the clear satisfaction of Rule 24(b), strongly weigh in favor of permissive intervention.

## CONCLUSION

For all of the foregoing reasons, Proposed Intervenors respectfully request that the Court grant them intervention as of right—or in the alternative grant permissive intervention—to allow them to protect the significant interests they have at stake in this case.

Dated: December 9, 2025

Respectfully submitted,

*/s/ Amy R. Romero*
Amy R. Romero (RI Bar # 8262)
DELUCA, WEIZENBAUM, BARRY & REVENS, LTD.
199 North Main Street
Providence, RI 02903
Telephone: (401) 453-1500
amy@dwbrlaw.com
Cooperating counsel, Lawyers' Committee for RI

David R. Fox*
Robert Golan-Vilella*
Qizhou Ge*
Marisa A. O'Gara*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Suite 400
Washington, D.C. 20001
Telephone: (202) 968-4490
Facsimile: (202) 968-4498
dfox@elias.law
rgolanvilella@elias.law
age@elias.law
mogara@elias.law

Walker McKusick*
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101

Telephone: (206) 656-0177
wmckusick@elias.law

*Counsel for Proposed Intervenors*

**Pro Hac Vice Applications Forthcoming*