# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | |
| v. | Case No. 25-cv-00639-MSM-PAS |
| GREGG M. AMORE, in his official capacity as Secretary of State for the State of Rhode Island, | |
| *Defendant*. | |

## SEIU DISTRICT 1199NE, RHODE ISLAND ALLIANCE FOR RETIRED AMERICANS, CAROLYN BETENSKY, AND MICHAEL "ZACK" MEZERA'S MOTION TO DISMISS

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND .................................................................................................. 2

    I.   Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers. ................................. 2

    II.  The Department of Justice has embarked on an unprecedented campaign to amass personal voter registration data held by the States............................. 4

    III. The Department of Justice sues Secretary Amore to obtain Rhode Island's voter registration list. ................................................................................. 7

LEGAL STANDARD .......................................................................................... 8

ARGUMENT ...................................................................................................... 8

    I.   DOJ did not state an adequate, truthful basis and purpose for the demand as Title III requires............................................................................................ 9

    II.  Title III does not prohibit redacting sensitive voter information. .................. 15

    III. DOJ's failure to comply with the Privacy Act is independent grounds for dismissal........................................................................................................ 18

CONCLUSION .................................................................................................. 22

# TABLE OF AUTHORITIES

## CASES

*Alabama ex rel. Gallion v. Rogers*,
    187 F. Supp. 848 (M.D. Ala. 1960) ............................................................. 10, 11

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
    570 U.S. 1 (2013) ...................................................................................... 3, 17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................... 8

*Blackstone Realty LLC v. FDIC*,
    244 F.3d 193 (1st Cir. 2001) ......................................................................... 22

*Brown v. Bank of Am., N.A.*,
    5 F. Supp. 3d 121 (D. Me. 2014) ..................................................................... 8

*CFPB v. Accrediting Council for Indep. Colls. & Schs.*,
    854 F.3d 683 (D.C. Cir. 2017) ........................................................................ 9

*CFPB v. Source for Pub. Data, L.P.*,
    903 F.3d 456 (5th Cir. 2018) ........................................................................ 13

*Coleman v. Kennedy*,
    313 F.2d 867 (5th Cir. 1963) .......................................................................... 9

*Davis v. Mich. Dep't of Treasury*,
    489 U.S. 803 (1989) ...................................................................................... 10

*Foster v. Love*,
    522 U.S. 67 (1997) .......................................................................................... 2

*Home Depot U.S.A., Inc. v. Jackson*,
    587 U.S. 435 (2019) ...................................................................................... 10

*Husted v. A. Philip Randolph Institute*,
    584 U.S. 756 (2018) ........................................................................................ 3

*In re Admin. Subpoena No. 25-1431-019*,
    800 F. Supp. 3d 229 (D. Mass. 2025) ........................................................... 11

*In re Coleman,*
    208 F. Supp. 199............................................................................. 9, 12

*In re Subpoena No. 25-1431-014, No. MC 25-39,*
    2025 WL 3252648 (E.D. Pa. Nov. 21, 2025) .................................... 11

*Kennedy v. Bruce,*
    298 F.2d 860 (5th Cir. 1962) .......................................................... 9

*Kennedy v. Lynd,*
    306 F.2d 222 (5th Cir. 1962) ......................................... 7, 9, 10, 12, 16

*League of Women Voters v. U.S. Dep't of Homeland Sec., No.,*
    3501, 2025 WL 3198970 (D.D.C. Nov. 17, 2025)................................. 18, 20, 21

*Martin v. Applied Cellular Tech., Inc.,*
    284 F.3d 1 (1st Cir. 2002) ............................................................. 9

*Morales-Cruz v. Univ. of P.R.,*
    676 F.3d 220 (1st Cir. 2012) ......................................................... 8

*New England Cleaning Servs., Inc. v. Am. Arb. Assoc.,*
    199 F.3d 542 (1st Cir. 1999) ......................................................... 8

*Pejepscot Indus. Park, Inc. v. Maine Cent. R.R.,*
    215 F.3d 195 (1st Cir. 2000) ......................................................... 13

*Project Vote, Inc. v. Kemp,*
    208 F. Supp. 3d 1320 (N.D. Ga. 2016) ........................................... 15

*Project Vote/Voting for Am. v. Long,*
    682 F.3d 331 (4th Cir. 2012) ......................................................... 15

*Project Vote/Voting For Am., Inc. v. Long,*
    752 F. Supp. 2d 697 (E.D. Va. 2010) ............................................. 16

*Pub. Int. Legal Found., Inc. v. Bellows,*
    92 F.4th 36 (1st Cir. 2024) ..................................................... 2, 15, 18

*Pub. Int. Legal Found., Inc. v. Matthews,*
    589 F. Supp. 3d 932 (C.D. Ill. 2022) ............................................. 15

*Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections,*
    996 F.3d 257 (4th Cir. 2021) ......................................................... 15

iii

*Republican Nat'l Comm. v. N.C. State Bd. of Elections,*
    120 F.4th 390 (4th Cir. 2024) ............................................................................ 3

*Robinson v. Shell Oil Co.,*
    519 U.S. 337 (1997) ...................................................................................... 10

*True the Vote v. Hosemann,*
    43 F. Supp. 3d 693 (S.D. Miss. 2014) ............................................................ 16

*Util. Air Regul. Grp. v. EPA,*
    573 U.S. 302 (2014) ...................................................................................... 10

*Voter Reference Found., LLC v. Torrez,*
    160 F.4th 1068 (10th Cir. 2025) .................................................................... 17

*Watt v. W. Nuclear, Inc.,*
    462 U.S. 36 (1983) ........................................................................................ 17

**US CONSTITUTIONAL PROVISIONS**

U.S. CONST. art. I, § 4 ............................................................................................ 2

**STATUTES**

5 U.S.C. § 55 ................................................................................................... 16, 18

5 U.S.C. § 552a ....................................................................................... 18, 19, 20, 22

18 U.S.C. § 2721 ................................................................................................. 16

42 U.S.C. § 197 .................................................................................................. 12

52 U.S.C. § 20507 ...................................................................................... 3, 13, 14, 17

52 U.S.C. § 20703 ...................................................................................... 1, 9, 12, 13

52 U.S.C. § 21083 ...................................................................................... 3, 16, 18

R.I. Gen. Laws § 17.9.1.34 ............................................................................... 5, 16

**FEDERAL RULES**

Fed. R. Civ. P. 12 ................................................................................................. 8

**REGULATIONS**

410 R.I.C.R. 20-00-19.5 ................................................................ 1, 5, 16

68 Fed. Reg. 47610 (Aug. 11, 2003) ...................................................... 20, 21

70 Fed. Reg. 43904 (July 29, 2005) ............................................................ 21

82 Fed. Reg. 24147 (May 25, 2017) ............................................................ 21

**LEGISLATIVE DOCUMENTS**

H.R. Rep. No. 86-956 (1959) ....................................................................... 7

**OTHER AUTHORITIES**

AAG Harmeet Dhillon (@AAGHarmeetDhillon), X (Dec. 18, 2025, at 9:24
    ET), https://x.com/AAGDhillon/status/2001659823335616795 ......................... 4

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to
    Build National Voter Roll*, N.Y. Times (Sep. 9, 2025),
    https://perma.cc/8VP4-WRXD ...................................................................... 4

*Justice Department Sues Arizona and Connecticut for Failure to Produce
    Voter Rolls*, U.S. Dep't of Just. (Jan. 6, 2026),
    https://perma.cc/Y5DM-J4EW ....................................................................... 7

*Justice Department Sues Four Additional States and One Locality for
    Failure to Comply with Federal Elections Laws*, U.S. Dep't of Just.
    (Dec. 12, 2025), https://perma.cc/8J58-6EER..................................................... 7

*Justice Department Sues Four States for Failure to Produce Voter Rolls*,
    U.S. Dep't of Just. (Dec. 18, 2025), https://perma.cc/584H-UMAD.................. 7

*Justice Department Sues Oregon and Maine for Failure to Provide Voter
    Registration Rolls*, U.S. Dep't of Just. (Sep. 16, 2025),
    https://perma.cc/2F92-EEXT ......................................................................... 6

*Justice Department Sues Six Additional States for Failure to Provide Voter
    Registration Rolls*, U.S. Dep't of Just. (Dec. 2, 2025),
    https://perma.cc/PJ2G-SQ2Z ........................................................................ 6

*Justice Department Sues Six States for Failure to Provide Voter Registration Rolls*, U.S. Dep't of Just. (Sep. 25, 2025), https://perma.cc/PE2W-7F9J .............................................................................. 6

Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Jan. 9, 2025), https://perma.cc/7JEK-8WSV ...................................... 4

**INTRODUCTION**

The United States Department of Justice ("DOJ") seeks to build a nationwide voter registration list, a scheme not authorized by Congress and contrary to federal laws assigning States the responsibility for overseeing voter registration. To build this unauthorized and unprecedented federal list, DOJ has demanded that Rhode Island—along with at least 40 other States—turn over its full, unredacted voter list, even though it has no actual authority to make such a demand and despite the fact that Rhode Island law protects sensitive voter information like driver's license numbers, partial social security numbers, and dates of birth from disclosure. *See* 410 R.I.C.R. 20-00-19.5(I).

Nothing in federal law authorizes the relief that DOJ seeks. DOJ relies solely on Title III of the Civil Rights Act of 1960 ("CRA"), but demands under that statute must state "the basis and the purpose" for which they are issued, and that basis and purpose must be legally valid. 52 U.S.C § 20703. DOJ's demand fails that test. DOJ claims to be investigating compliance with the National Voter Registration Act ("NVRA") and the Help America Vote Act ("HAVA"), but the CRA is concerned with protecting the constitutional right to vote—not with enforcing election administration rules—and DOJ's demands and actions in other States make clear that DOJ's true purpose is not assessing NVRA or HAVA enforcement in any event. Moreover, even if there were a valid demand, neither the CRA nor any other provision of federal law preempts Rhode Island's privacy protections or precludes Rhode Island from withholding sensitive voter data, which is all that Rhode Island has refused to

1

produce. *See, e.g., Pub. Int. Legal Found., Inc. v. Bellows* ("*PILF*"), 92 F.4th 36, 56 (1st Cir. 2024) (concluding that "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in" voter files). And DOJ has not complied with the requirements that the federal Privacy Act imposes before the collection of the private data it seeks.

Ultimately, DOJ's demands run directly contrary to the decentralized structure of the federal electoral system. *See, e.g.*, U.S. CONST. art. I, § 4, cl. 1 (giving the States principal authority over congressional elections). When enacting HAVA after the contested 2000 elections, Congress stressed that the "dispersal of responsibility for election administration has made it impossible for a single centrally controlled authority to dictate how elections will be run, and thereby be able to control the outcome." H.R. Rep. No. 107-329, pt. 1, at 31–32 (2001). DOJ's suit asserts an unprecedented federal authority over the management of federal elections, yet it cites no federal law that supplies such sweeping authority.

The Court should dismiss the Complaint.

## BACKGROUND

### I.   Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers.

The U.S. Constitution "invests the States with responsibility for the mechanics" of elections, subject to any decision by Congress to "preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997); *see also* U.S. CONST. art. I, § 4, cl. 1. It is therefore *States*, not the federal government, that are primarily responsible for determining voter eligibility and maintaining lists of eligible voters.

2

Congress may preempt state law, but that power extends "[only] so far as it is exercised, and no farther." *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 9 (2013). Where Congress has not spoken on an issue, state law controls. *See id.*

Federal laws governing voter registration confirm that it remains primarily a state responsibility. Federal law sits "atop state voter-registration systems"; it does not displace them. *Id.* at 5. The NVRA charges *States*—not the federal government— with the "administration of voter registration for elections for Federal office." 52 U.S.C. § 20507(a). It makes States responsible for maintaining voter lists (subject to strict procedural safeguards). *Id.* § 20507(c)–(g). And it makes States the custodians of voter registration data. *See Husted v. A. Philip Randolph Institute*, 584 U.S. 756, 761 (2018).

HAVA, enacted "to improve voting systems and voter access" after the 2000 election, is similar. *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 394 (4th Cir. 2024). Like the NVRA, HAVA regulates how States maintain voter lists, requiring *States* to create a "computerized statewide voter registration list" and "perform list maintenance." 52 U.S.C. § 21083(a)(1)(A), (a)(2)(A). HAVA is abundantly clear that this list is to be "defined, maintained, and administered at the State level." *Id.* § 21083(a)(1)(A).

Neither the NVRA nor HAVA tasks the federal government with compiling a federal voter registration list. Instead, Congress has "left it up to the States to maintain accurate lists of those eligible to vote in federal elections," *Husted*, 584 U.S. at 761, subject only to the specific requirements of the NVRA and HAVA, which

3

purposefully operate through the States themselves.

## II. The Department of Justice has embarked on an unprecedented campaign to amass personal voter registration data held by the States.

In the spring of 2025, DOJ launched an unprecedented campaign to demand broad access to state voter files, which include sensitive and personal information about each registered voter such as date of birth, driver's license number, and social security number. DOJ has reportedly sent demands to at least 40 States, with plans to make similar demands on all 50.[1] It seeks to use the data to create a national voter database that will, in turn, be used to attempt to substantiate President Trump's unfounded accusations that millions of non-citizens have voted illegally in recent elections.[2] In recent public statements, moreover, Assistant Attorney General Harmeet Dhillon made clear that DOJ also intends to use it to attempt to compel the removal of *hundreds of thousands* of voters from the rolls.[3]

According to many of the States subject to these demands, DOJ has sought not simply read-only access, but "materials that define or explain how" the voter information is coded into the registration database, "potentially because additional information about database coding would assist in transferring data . . . into other

---

[1] Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Jan. 9, 2025), https://perma.cc/7JEK-8WSV; Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://perma.cc/8VP4-WRXD.

[2] Barrett & Corasantini, *supra* note 1.

[3] *See* AAG Harmeet Dhillon (@AAGHarmeetDhillon), X (Dec. 18, 2025, at 9:24 ET), https://x.com/AAGDhillon/status/2001659823335616795 (stating in video discussing these lawsuits: "You're going to see hundreds of thousands of people in some States being removed from the voter rolls.").

federal databases." Br. of Amici Curiae Maryland et al. in Supp. of Mot. to Dismiss at 6, *United States v. Bd. of Elections of N.Y.*, No. 1:25-CV-01338-MAD (N.D.N.Y. Jan. 6, 2026), ECF No. 79-1. The vast majority of States have refused to comply, appropriately declining to turn over sensitive personal information that is typically protected by privacy laws.[4] Rhode Island law, for example, includes confidentiality protections for sensitive personal information provided in the context of voter registration. *See* 410 R.I.C.R. 20-00-19.5(I); *see also* R.I. Gen. Laws § 17-9.1-34(f) (providing that the Secretary of State shall not use or transmit confidential information or data "for any purpose except for voter registration purposes or pursuant to a court order").

As part of this broader pressure campaign, on September 8, 2025, DOJ sent a letter to Secretary of State Gregg M. Amore asking that the Secretary provide DOJ with "a copy of Rhode Island's statewide voter registration list" within 14 days. Riordan Decl., Ex. 1 at 1, ECF No. 2-2. DOJ insisted that the statewide voter registration list "should contain *all fields*" and "must include the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number." *Id.* According to DOJ, the purpose of this request was to "ascertain Rhode Island's compliance with the list maintenance requirements of the NVRA and HAVA." *Id.* at 2. Secretary Amore responded by letter eight days later, on September 16. Riordan Decl., Ex. 2 at 1, ECF No. 2-2. In that response, Secretary Amore stated that Rhode Island would provide

---

[4] *See* Martinez-Ochoa, O'Connor & Berry, *supra* note 1.

DOJ with "a copy of the publicly available voter registration list," but objected to the request for "*all fields*," including personally identifiable information such as driver's license number and partial social security number. *Id.*

Around the same time as DOJ was making these demands of Rhode Island, it made similar demands to scores of other States, the vast majority of which have similarly refused to turn over highly sensitive personal voter information. Beginning in September 2025, DOJ began filing lawsuits against some of these States; as of the time of this filing, it has filed 24 such suits. On September 16, DOJ brought actions against Oregon and Maine, alleging in both cases that DOJ was entitled to the voter information it sought under three statutes: the NVRA, HAVA, and the CRA.[5] On September 25, DOJ filed lawsuits against California, Michigan, Minnesota, New York, New Hampshire, and Pennsylvania.[6] Again, DOJ brought its claims under all of these same three statutes, excepting only the NVRA claim in States that are exempt from the NVRA. On December 2, DOJ sued a third group of States— Delaware, Maryland, New Mexico, Rhode Island, Vermont, and Washington.[7] Notably, beginning with the lawsuits filed on December 2, DOJ asserted only a single claim under the CRA, in an implicit acknowledgement of the weakness of its NVRA and HAVA claims filed in the earlier actions. The lawsuits are otherwise essentially

---

[5] *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls*, U.S. Dep't of Just. (Sep. 16, 2025), https://perma.cc/2F92-EEXT.

[6] *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls*, U.S. Dep't of Just. (Sep. 25, 2025), https://perma.cc/PE2W-7F9J.

[7] *Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls*, U.S. Dep't of Just. (Dec. 2, 2025), https://perma.cc/PJ2G-SQ2Z.

identical to the first few waves. Similarly, in mid-December, DOJ filed a fourth and fifth wave of suits against Colorado, Hawaii, Massachusetts, Nevada, the District of Columbia, Georgia, Illinois, and Wisconsin, alleging claims under the CRA only.[8] Most recently, on January 6, 2026, DOJ brought suit against Arizona and Connecticut, again alleging only one claim under the CRA.[9]

### III.   The Department of Justice sues Secretary Amore to obtain Rhode Island's voter registration list.

DOJ filed this suit on December 2, 2025, seeking to compel Secretary Amore to provide Rhode Island's full, unredacted statewide voter registration list. *See generally* Compl., ECF No. 1. DOJ brings only a single count: namely, that, in refusing to fully comply with DOJ's requests, Secretary Amore violated Title III of the CRA. Title III is a Civil Rights-era law that permits DOJ to review certain voting records to investigate "question[s] concerning infringement or denial of . . . constitutional voting rights." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962). Congress enacted the law to preserve "the right of all qualified citizens to vote without discrimination on account of race," and specifically to facilitate "investigation[s]" authorized under the Civil Rights Act of 1957. H.R. Rep. No. 86-956, at 7 (1959).

DOJ, however, admits that it is not seeking to enforce these laws or investigate the unconstitutional denial of the right to vote. Rather, DOJ's stated purpose in

---

[8] *Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections Laws*, U.S. Dep't of Just. (Dec. 12, 2025), https://perma.cc/8J58-6EER; *Justice Department Sues Four States for Failure to Produce Voter Rolls*, U.S. Dep't of Just. (Dec. 18, 2025), https://perma.cc/584H-UMAD.
[9] *Justice Department Sues Arizona and Connecticut for Failure to Produce Voter Rolls*, U.S. Dep't of Just. (Jan. 6, 2026), https://perma.cc/Y5DM-J4EW.

making the request was "to ascertain Rhode Island's compliance with the list maintenance requirements of the NVRA and HAVA." Compl. ¶ 20 (citation omitted). These are laws with their own separate procedures and enforcement mechanisms, which DOJ has not invoked.

## LEGAL STANDARD

A complaint must be dismissed where it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court is not required to accept legal conclusions as true when considering a motion to dismiss." *New England Cleaning Servs., Inc. v. Am. Arb. Assoc.*, 199 F.3d 542, 545 (1st Cir. 1999). Instead, "the court must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009)); *see also Iqbal*, 556 U.S. at 678 (explaining that courts need not accept "legal conclusions" as true at the motion to dismiss stage). "In other words, '[i]f a plaintiff's claims do not establish recognized legal theories for which relief may be granted, the court must dismiss the complaint.'" *Brown v. Bank of Am., N.A.*, 5 F. Supp. 3d 121, 123 (D. Me. 2014) (alteration in original) (citation omitted).

## ARGUMENT

The Complaint should be dismissed because DOJ's demand did not include a valid statement of "the basis and the purpose" for the demand, as Title III of the CRA requires; because federal law does not preempt Rhode Island's state-law privacy protections for the sensitive data Rhode Island has withheld; and because DOJ has

8

not complied with the federal restrictions on compiling the sensitive data it seeks. There is therefore no "cognizable [legal] theory" for DOJ's requested relief. *Martin v. Applied Cellular Tech., Inc.*, 284 F.3d 1, 6 (1st Cir. 2002).

## I.    DOJ did not state an adequate, truthful basis and purpose for the demand as Title III requires.

A demand for records under Title III must state "the basis and the purpose therefor." 52 U.S.C. § 20703. DOJ has previously understood this dual requirement, and, in *Lynd*, provided an explicit statement of *both* the "basis" *and* "purpose" of its demand, as required by Title III:

> This demand is based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction. The purpose of this demand is to examine the aforesaid records in order to ascertain whether or not violations of Federal law in regard to registration and voting have occurred.

306 F.2d at 229 n.6 (internal quotation marks omitted). Other Title III cases from that period likewise discuss—consistent with Title III's express requirements—an explicit statement of both a "basis" and "purpose" for DOJ's demand. *See Kennedy v. Bruce*, 298 F.2d 860, 861 (5th Cir. 1962); *In re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962), *aff'd sub nom. Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963). Here, however, DOJ's demand fails to adequately allege *either* a basis or a purpose, for at least four reasons.

*First*, DOJ's stated purpose for issuing the demand to Secretary Amore—to "ascertain Rhode Island's compliance with the list maintenance requirements of the NVRA and HAVA," Riordan Decl., Ex. 1, ECF No. 2-2 at 2—is not sufficient under Title III. *See CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683,

689–90 (D.C. Cir. 2017) (rejecting "perfunctory" statement of purpose in issuing civil investigative demand, reasoning agencies "are . . . not afforded unfettered authority to cast about for potential wrongdoing" (internal quotation marks and citation omitted)). Title III permits DOJ to review voting records for "question[s] concerning infringement or denial of . . . constitutional voting rights." *Lynd*, 306 F.2d at 228. Its "purpose is to enable the Attorney General to determine whether" a suit to enforce the CRA is appropriate, *id.*, not to ascertain compliance with distinct laws serving separate purposes with their own enforcement mechanisms and—in the NVRA's case—disclosure provisions.

In interpreting the "purpose" requirement, the Court should "account for both 'the specific context in which . . . language is used' and 'the broader context of the statute as a whole.'" *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 321 (2014) (alteration in original) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)); *see also Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 441 (2019) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989))). Congress enacted Title III to buttress protections of the constitutional right to vote in the Civil Rights Act of 1957. *See* H.R. Rep. No. 86-956, at 3 (finding that while "some progress" had been made since the 1957 Act, there was a "need for additional legislation to implement the enforcement of civil rights"); *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960) ("The legislative history leaves no doubt but that [Title III] is

designed to secure a more effective protection of the right to vote."), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961) (per curiam).

In the Civil Rights Act of 1957, Congress had tasked DOJ with protecting the "right of all qualified citizens to vote without discrimination on account of race." H.R. Rep. No. 86-956, at 7. Despite this charge, DOJ's efforts were stymied by "the refusal of some state and local authority to permit" inspection of certain voter records. *Id.* DOJ had "no existing power in civil proceedings to require the production of [voter registration] records during any investigation" concerning "complaints of a denial to vote because of race." *Id.* Congress found that without granting DOJ a "suitable provision for access to voting records during the course of an investigation," its ability to protect the right to vote was "rendered relatively ineffective." *Id.* Congress thus enacted Title III of the Civil Rights Act of 1960 to assist DOJ in those investigations. Title III had nothing to do with investigating the administrative voter registration-list requirements enacted in the NVRA and HAVA decades later.

The Court should reject DOJ's efforts to justify its demands with a purpose disconnected from the statutory scheme. *See In re Subpoena No. 25-1431-014*, No. MC 25-39, 2025 WL 3252648, at *17 (E.D. Pa. Nov. 21, 2025) (rejecting subpoena seeking private health information when DOJ "invoke[d] sweeping needs" for the information "far removed from those claimed purposes granted by Congress"); *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229, 236–39 (D. Mass. 2025) (similar). Prior enforcement of Title III confirms that it is meant to be used only for investigating the denial of voting rights. Shortly after the law's enactment, courts

11

upheld DOJ demand letters that stated they were "based upon information in the possession of the Attorney General tending to show that discriminations on the basis of race and color have been made with respect to registration and voting within your jurisdiction." *In re Coleman*, 208 F. Supp. at 199–200; *see also Lynd*, 306 F.2d at 229 n.6 (same). DOJ has yet to cite a single instance in which a court has upheld a demand for records made under Title III to assess state compliance with the NVRA or HAVA.[10]

In fact, DOJ's stated purpose is not just divorced from Title III's scope—it is antithetical to Title III's purpose. DOJ says that it wants to use the records it is demanding to attempt to compel States to remove hundreds of thousands of voters from the rolls. *Supra* note 3. Far from protecting constitutional voting rights, DOJ seeks to undermine them.

*Second*, DOJ's request to Rhode Island entirely failed to articulate "the basis" for the request. Not only does it fail to even assert that Rhode Island has denied the right to vote or otherwise infringed on anyone's voting rights, it even fails to assert a basis for what it claims its purpose to be: investigating Rhode Island's list

---

[10] While some of the 1960s-era cases that interpreted Title III included language indicating broad deference to the Attorney General's statement of a "basis and . . . purpose" for requesting records, *see Lynd*, 306 F.2d at 226 (quoting 42 U.S.C. § 1974b, recodified at 52 U.S.C. § 20703), those cases involved circumstances where Title III was unquestionably being used for its intended purpose: investigations into the potential denial of voting rights on account of race. Those prior cases are thus fundamentally different from the circumstances here, where DOJ has not even tried to assert that it seeks to investigate any possible denial of the constitutional right to vote. Nor has it even offered any justifiable basis to support the need for records to evaluate compliance with the two *other* statutes it has invoked.

maintenance practices for compliance with the NVRA and HAVA. DOJ's September 8 letter demanding Rhode Island's voter registration list with all fields did not articulate any specific concerns or documented issues with Rhode Island's list maintenance efforts, much less provide a factual basis to conclude that its efforts might not be "reasonable," which is all that the NVRA requires. 52 U.S.C. § 20507(a)(4); *see also id.* § 21085 (committing "specific choices on the methods of complying with" HAVA "to the discretion of the State"); Riordan Decl., Ex. 2, ECF No. 2-2. The lack of a stated basis is fatal—Congress expressly required DOJ to state "the basis *and* the purpose" of its request, 52 U.S.C. § 20703 (emphasis added), and the Court must give meaning to both requirements. *See Pejepscot Indus. Park, Inc. v. Maine Cent. R.R.*, 215 F.3d 195, 202 (1st Cir. 2000) ("A reading that renders a statutory provision surplusage is disfavored."). "Simply put, [DOJ's demand] does not identify what conduct, it believes, constitute[d] an alleged violation." *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458–59 (5th Cir. 2018) (quashing civil investigative demand that failed to provide basis for investigation).

That omission is critical: even if Title III could be used to investigate matters unrelated to denial of the right to vote, it requires that both the purpose *and the basis* of DOJ's request shall be contained in the *demand itself*, not as a post-hoc rationale advanced in litigation. *See* 52 U.S.C. § 20703 ("*This demand* shall contain a statement of the basis and the purpose therefor." (emphasis added)). DOJ's failure to include a "basis" in its demand to Rhode Island therefore independently warrants dismissal.

*Third*, context shows that "the basis and the purpose" that DOJ included in its

13

demands to Rhode Island was not the true basis and purpose for its request. Neither DOJ's letter on September 8, 2025, demanding Rhode Island's voter registration list nor its subsequent Complaint identified any deficiencies with Rhode Island's list maintenance procedures. *See generally* Riordan Decl., Ex. 1, ECF No. 2-2; Compl. Nor did they identify any evidence of anomalies, or express any concern or provide any reason to suspect that Rhode Island's list maintenance efforts were not "reasonable." The lack of any stated basis for DOJ's investigation of *Rhode Island* is further highlighted by the fact that DOJ has made carbon copy demands to at least 40 States and has sued more than 20 based on nearly identical boilerplate claims and allegations. *See supra* Background § II. This nationwide effort to collect state voter registration lists undermines any notion that DOJ has a "basis" for investigating Rhode Island specifically.

In addition, Rhode Island's full and unredacted statewide voter file is simply not helpful or necessary to determine whether Rhode Island "conduct[ed] a general program that makes a reasonable effort to remove the names of ineligible voters" by virtue of "death" or "a change in the residence of the registrant," 52 U.S.C. § 20507(a)(4); Compl. ¶ 12. The unredacted voter file cannot tell DOJ anything about the list maintenance procedures that Rhode Island undertook within its discretion under the NVRA and HAVA. If DOJ were to obtain the unredacted voter file, the data would be outdated almost immediately, and even if DOJ were able to use the data to identify voters who have moved or died since that single snapshot in time, it would not mean that Rhode Island did not make a "reasonable" list maintenance effort

14

under the NVRA or HAVA.

*Finally*, DOJ's claim is further undermined by the ample evidence of what its true aims are. Namely, DOJ seeks to use the information it is demanding from States across the country to create an unauthorized, unprecedented national voter database, and—as its own senior official has stated publicly—to compel the removal of countless individuals from the voting rolls. *See* Background § II. This, too, only reinforces that DOJ's stated basis and purpose of its demand were not in fact the true basis and purpose, compelling dismissal of its claim.

## II.    Title III does not prohibit redacting sensitive voter information.

Even if DOJ met Title III's requirements, nothing in that provision or any other federal law preempts Rhode Island's state-law privacy protections of sensitive voter data and requires the production of the *unredacted* voter file, which is all that Rhode Island has refused to produce. The First Circuit has squarely held that "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in" voter files, such as driver's license numbers, partial social security numbers, and dates of birth. *PILF*, 92 F.4th at 56. That is no outlier—many other courts have reached the same conclusion. *See Project Vote/Voting for Am. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012) (affirming district court order to redact social security numbers before disclosure under NVRA); *Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 268 (4th Cir. 2021) (recognizing that the NVRA permits redactions to "protect sensitive information"); *Pub. Int. Legal Found., Inc. v. Matthews*, 589 F. Supp. 3d 932, 942 (C.D. Ill. 2022) (holding the NVRA permits "proper redaction of highly sensitive information"); *Project Vote, Inc. v. Kemp*, 208 F.

Supp. 3d 1320, 1344 (N.D. Ga. 2016) (holding the NVRA "does not require the disclosure of sensitive information that implicates special privacy concerns," including telephone numbers, partial social security numbers, partial email addresses, and birth dates); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 739 (S.D. Miss. 2014) (holding the NVRA "does not require the disclosure of unredacted voter registration documents, including voter registrant birthdates"); *Project Vote/Voting For Am., Inc. v. Long*, 752 F. Supp. 2d 697, 711 (E.D. Va. 2010) (holding the NVRA permits redacting social security numbers).

Similarly, nothing in the text of Title III prohibits the redaction of private information that courts have repeatedly held may be redacted under the NVRA. Title III says nothing about the issue, but as *Lynd*—the central case DOJ relies on—recognizes, Congress seems to have contemplated the production of *public* records, not private data. Thus, that court concluded that Title III is intended to reach *only* "public records which ought ordinarily to be open to legitimate reasonable inspection," *not* "confidential, private papers and effects." *Lynd*, 306 F.2d at 231. In contrast, the information DOJ demands here is safeguarded from prying eyes under both federal and state privacy laws. *See, e.g.*, 5 U.S.C. § 552a; 18 U.S.C. § 2721; 410 R.I.C.R. 20-00-19.5(I); R.I. Gen. Laws § 17-9.1-34(f). Driver's license numbers and partial social security numbers were not required to be provided on registration forms until 2002, *see* 52 U.S.C. § 21083(a)(5)(A)(i), so the Congress that enacted Title III could not have possibly intended it to require disclosure of such information (or concluded that doing so was necessary to conduct the investigations that Title III was enacted to support).

*See Watt v. W. Nuclear, Inc.*, 462 U.S. 36, 47 (1983) (interpreting statute to avoid result that "Congress could not have expected"). Congress's authority to preempt state laws governing elections extends only "so far as it is exercised, and no farther." *Inter Tribal Council*, 570 U.S. at 9 (citation omitted). Nothing in the text of Title III purports to preempt state-law privacy protections.

The conclusion that Title III does not entitle DOJ to the sensitive data it seeks is reinforced by analyzing the choices Congress made when it enacted the NVRA and HAVA. If Congress had thought that it was necessary or desirable for DOJ to have access to a database containing highly sensitive information about every voter in a State so that DOJ would be able to ensure that the State was complying with its list maintenance obligations under those statutes, it would have done so in *the NVRA and HAVA themselves*. But Congress did not do so. In fact, Congress created a *different* mechanism meant to ascertain States' compliance with list maintenance obligations: the NVRA inspection provision, located at 52 U.S.C. § 20507(i). Congress "envisioned" this inspection to allow for "critical scrutiny and public audits of voter data"—but nonetheless permitted the redaction of sensitive voter data. *Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1082, 1083 n.14 (10th Cir. 2025). Congress specified that records subject to inspection under that provision must include the "names and addresses" of certain voters, 52 U.S.C. § 20507(i)(2), but stopped short of requiring States to go beyond that and disclose sensitive voter information. As for HAVA, it contains no disclosure provision at all, and instead explicitly confirms that voter registration lists must be "maintained" and

17

"administered at the State level"—not by the federal government. 52 U.S.C. § 21083(a)(1)(A). In short, it simply makes no sense to say that Congress intended Title III to preempt state privacy laws protecting highly sensitive information so that the federal government could assess compliance with voter list maintenance under the NVRA and HAVA—statutes passed decades later that reflect a congressional judgment *not* to preempt such laws

Secretary Amore has already offered to provide DOJ with a copy of the publicly available voter registration list. Riordan Decl., Ex. 2, ECF No. 2-2. Thus, the only dispute here is whether DOJ can compel disclosure of sensitive, personal information. Just as with the NVRA, nothing in Title III prohibits the "redaction of uniquely or highly sensitive personal information in the Voter File." *PILF*, 92 F.4th at 56. In short, nothing provides DOJ with authority to access Rhode Island's unredacted voter registration list, particularly given Rhode Island's state-law protections.

## III.    DOJ's failure to comply with the Privacy Act is independent grounds for dismissal.

The Privacy Act, codified at 5 U.S.C. § 552a, *et seq.*, "offers substantial protection[] regarding governmental use and retention of identifiable personal information." *League of Women Voters v. U.S. Dep't of Homeland Sec.*, No: 25-cv-3501, 2025 WL 3198970, at *1 (D.D.C. Nov. 17, 2025). It does so in part by "adopt[ing] procedural safeguards when the records maintained by a federal agency, *i.e.*, a 'system of records,' are changed or used in a new way." *Id.* at *2 (quoting 5 U.S.C. § 552a(a)(5), (e)). In its rushed effort to sweep up the sensitive information of every registered voter in Rhode Island, DOJ overlooked the Privacy Act's basic procedural

requirements. As a result, the Privacy Act independently prohibits DOJ from obtaining Rhode Island's statewide voter registration list.

The Privacy Act imposes certain obligations on any agency that "maintains" a "system of records." 5 U.S.C. § 552a(e). Both of those terms are given specific definitions by the statute. A "system of records" is defined as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." *Id.* § 552a(a)(5); *see also id.* § 552a(a)(4) (defining "record" to include "any item, collection, or grouping of information about an individual that is maintained by an agency . . . that contains his *name, or the identifying number . . . or other identifying particular assigned to the individual*" (emphasis added)). Rhode Island's statewide voter registration list, which contains the names and other unique identifying information of all registered voters in Rhode Island, plainly qualifies as a "system of records" under the Privacy Act. *Cf.* Compl. at 8 (demanding statewide voter registration list including "each registrant's name, date of birth, address, and . . . the last four digits of the registrant's social security number, driver's license/state identification number, or the unique HAVA identifier"). The term "maintain" is defined to include "maintain, collect, use, or disseminate." 5 U.S.C. § 552a(a)(3). Accordingly, if DOJ were to "collect," "use," or "maintain" Rhode Island's statewide voter registration list, the obligations imposed by subsection (e) of the Privacy Act are triggered. *See id.* § 552a(e)(4). And that is precisely the relief DOJ seeks here: an order from this Court to collect Rhode Island's statewide voter list. Compl. at 8.

As DOJ attempts to amass state voter registration data onto its own servers, the Privacy Act imposes specific obligations. Most relevant here, "when an agency 'establish[es] or revis[es]' any 'system of records,' it must 'publish in the Federal Register . . . a notice of the existence and character of the system of records,' *i.e.*, a System of Records Notice (SORN)." *League of Women Voters*, 2025 WL 3198970, at *2 (alterations in original) (quoting 5 U.S.C. § 552a(e)(4)). A SORN must include, among other things, the name and location of the system, the categories of individuals on whom records are maintained in the system, the categories of records maintained in the system, and all "routine use[s]" to which the system can be put as well as the "categories of users and the purpose of such use." *Id.*

DOJ does not appear to dispute that the Privacy Act is applicable here, nor that DOJ must publish a SORN that would apply to Rhode Island's statewide voter registration list. In fact, DOJ's complaint provides the specific SORN that DOJ apparently believes provides authority for it to collect Rhode Island's voter registration list, identifying it as "JUSTICE/CRT – 001," the "Central Civil Rights Division Index File and Associated Records." Compl. ¶ 23; *see also id.* ¶ 22 (stating that DOJ's September 8 Letter communicated "that the requested records will be maintained consistent with Privacy Act protections").

That SORN, however, does not extend to a record such as a statewide voter registration list. It notifies the public that the categories of individuals covered by the system may include "[s]ubjects of investigations, victims, [and] potential witnesses," in addition to other categories not relevant here. 68 Fed. Reg. 47610, 47611 (Aug. 11,

2003). Applied here, this would implausibly mean *every* registered voter in Rhode Island (or, given DOJ's near-nationwide demands, every registered voter in the country) is a subject under investigation, victim, or witness in some unnamed case. Similarly, the SORN describes the categories of records in this system to "consist of case files, matters, memoranda, correspondence, studies, and reports relating to enforcement of civil rights laws and other various duties of the Civil Rights Division." *Id.* While this language would seemingly cover run-of-the-mill files maintained for specific Civil Rights Division investigations and litigation matters, it would be a startling construction of these terms to find that they extend to a statewide (or nationwide) voter registration list that has never before been compiled by the federal government, as DOJ presses here.[11]

To hold that this SORN is sufficient under the Privacy Act to allow DOJ to collate sensitive information about every registered voter in Rhode Island (and the country) would nullify the statute's "procedural safeguards," which "Congress enacted to . . . permit an individual to determine what records pertaining to him are collected, maintained, used, or disseminated by federal agencies" and to "ensure adequate safeguards are provided to prevent misuse of such information." *League of Women Voters*, 2025 WL 3198970, at *2 (citation modified). If DOJ wishes to take such a radical step and compile a federal database of the registered voters in the

---

[11] DOJ cites two other notices in the Federal Register, Compl. ¶ 23, but they are also irrelevant. The first adds an additional "routine use" to the SORN that is not applicable here. *See* 70 Fed. Reg. 43904, 43904 (July 29, 2005). The second adds a blanket routine use to all DOJ SORNs that is relevant only in the event of a data breach of DOJ systems. *See* 82 Fed. Reg. 24147 (May 25, 2017).

United States, the Privacy Act requires (at a minimum) that DOJ adhere to strict notice-and-comment requirements, by first providing "adequate advance notice" to two congressional committees and the Office of Management and Budget to evaluate the effects on privacy and other rights and then publishing a SORN in the Federal Register that accurately discloses the system of records it intends to create and the uses to which it will put that information with the opportunity for written data, views, and arguments from interested persons. 5 U.S.C. § 552a(e)(4); *see also id.* § 552a(r); *id.* § 552a(e)(11) (requiring a 30-day notice period "of any new use or intended use of the information in the system," to "provide an opportunity for interested persons to submit written data, views, or arguments to the agency").

In short, because the SORN that DOJ identifies does not cover the system of records it intends to maintain, the Privacy Act prohibits DOJ from collecting Rhode Island's statewide voter registration list.[12]

## CONCLUSION

For the reasons stated above, the 1199NE Intervenors respectfully request that the Court dismiss the complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

---

[12] There is no impediment to the Court dismissing the complaint based on DOJ's failure to comply with the Privacy Act. Even if the Court construes failure to comply with the Privacy Act as an affirmative defense, "[i]t is well established that affirmative defenses . . . may be raised in a motion to dismiss an action for failure to state a claim" so long as the defense is clear "on the face of the plaintiff's pleadings." *Blackstone Realty LLC v. FDIC*, 244 F.3d 193, 197 (1st Cir. 2001) (citation omitted). Here, the complaint explicitly pleads compliance with a specific SORN, Compl. ¶ 23, and for the reasons stated above, that SORN cannot justify DOJ's collection and maintenance of Rhode Island's voter registration list.

Dated: January 13, 2026

Respectfully submitted,

*/s/ Amy R. Romero*
Amy R. Romero (RI Bar # 8262)
DELUCA, WEIZENBAUM, BARRY & REVENS, LTD.
199 North Main Street
Providence, RI 02903
Telephone: (401) 453-1500
amy@dwbrlaw.com
Cooperating counsel, Lawyers' Committee for RI

David R. Fox*
Robert Golan-Vilella*
Qizhou Ge*
Marisa A. O'Gara*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Suite 400
Washington, D.C. 20001
Telephone: (202) 968-4490
Facsimile: (202) 968-4498
dfox@elias.law
rgolanvilella@elias.law
age@elias.law
mogara@elias.law

Walker McKusick*
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
Telephone: (206) 656-0177
wmckusick@elias.law

*Counsel for Intervenors SEIU District 1199NE, Rhode Island Alliance for Retired Americans, Carolyn Betensky, and Michael "Zack" Mezera*

*\* Admitted Pro Hac Vice*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 13, 2026, I electronically filed the within motion and it is available for viewing and downloading from the Court's CM/ECF system, and that the participants in the case that are registered CM/ECF users will be served electronically by the CM/ECF system.

<u>*/s/ Amy R. Romero*</u>