# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>v.<br><br>GREGG M. AMORE, in his official capacity as Secretary of State for the State of Rhode Island,<br><br>*Defendant.* | Case No. 25-cv-00639-MSM-PAS |

## SEIU DISTRICT 1199NE, RHODE ISLAND ALLIANCE FOR RETIRED AMERICANS, CAROLYN BETENSKY, AND MICHAEL "ZACK" MEZERA'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................... 2

ARGUMENT ......................................................................................................................... 4

    I.   The Federal Rules govern DOJ's claim. ............................................................. 4

    II.  The Court must conduct meaningful review of DOJ's demand. ....................... 6

    III. The proper procedural course is for the Court to resolve the pending motions to dismiss and then, if needed, to proceed to discovery. .................................... 9

CONCLUSION .................................................................................................................... 11

# TABLE OF AUTHORITIES

**CASES**

*In re Admin. Subpoena No. 25-1431-019*,
    800 F. Supp. 3d 229 (D. Mass. 2025) .................................................................... 7

*Beddall v. State St. Bank & Tr. Co.*,
    137 F.3d 12 (1st Cir. 1998) ................................................................................... 9

*CFPB v. Accrediting Council for Indep. Colls. & Schs.*,
    854 F.3d 683 (D.C. Cir. 2017) .............................................................................. 6

*CFPB v. Source for Pub. Data, L.P.*,
    903 F.3d 456 (5th Cir. 2018) ................................................................................ 6

*Correa-Martinez v. Arrillaga-Belendez*,
    903 F.2d 49 (1st Cir. 1990) ................................................................................... 9

*Doe v. Brown Univ.*,
    270 F. Supp. 3d 556 (D.R.I. 2017) ....................................................................... 9

*Gahagan v. USCIS*,
    911 F.3d 298 (5th Cir. 2018) ................................................................................ 6

*Kennedy v. Lynd*,
    306 F.2d 222 (5th Cir. 1962) ........................................................................ 5, 7, 8

*Rios-Campbell v. U.S. Dep't of Com.*,
    927 F.3d 21 (1st Cir. 2019) ................................................................................... 9

*State of Ala. ex rel. Gallion v. Rogers*,
    187 F. Supp. 848 (M.D. Ala. 1960) ...................................................................... 7

*Sugarloaf Funding, LLC v. U.S. Dep't of Treasury*,
    584 F.3d 340 (1st Cir. 2009) ................................................................................. 6

*United States v. Lynd*,
    301 F.2d 818 (5th Cir. 1962) ................................................................................ 7

*United States v. Powell*,
    379 U.S. 48 (1964) ...................................................................................... 1, 5, 6

*Velez v. Awning Windows, Inc.*,
   375 F.3d 35 (1st Cir. 2004) .................................................................................... 11

**FEDERAL STATUTES**

26 U.S.C. § 7604(a) ................................................................................................... 5

29 U.S.C. § 161(2) ..................................................................................................... 5

52 U.S.C. § 20705 ................................................................................................. 1, 5

**FEDERAL RULES**

Fed. R. Civ. P. 1 ..................................................................................................... 1, 4

Fed. R. Civ. P. 81(a) ................................................................................................... 4

**OTHER AUTHORITIES**

AAG Harmeet Dhillon (@AAGHarmeetDhillon),  X (Dec. 18, 2025, at 9:24
   ET),  https://x.com/AAGDhillon/status/2001659823335616795 ..................... 10

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to
   Build National Voter Roll*, N.Y. Times (Sep. 9, 2025),
   https://perma.cc/8VP4-WRXD ...................................................................... 10

## INTRODUCTION

The Federal Rules of Civil Procedure lay out the typical lifecycle of a civil action. After the filing of a civil complaint, a defendant may file a motion to dismiss under Rule 12(b). Then, if a plaintiff states a claim, the case proceeds to discovery, summary judgment, and trial if necessary. Over the course of that process, a defendant has multiple opportunities to test the legal and factual bases of the plaintiff's claims and to build any necessary record. The Federal Rules also provide familiar governing standards for courts to apply at each step, all with an eye toward the ordered and efficient resolution of disputes.

The U.S. Department of Justice ("DOJ") asks this Court to bypass that entire process by adjudicating a "motion to compel production of records" at the very start of the case. ECF No. 2. This may sound like an innocuous discovery motion, but it is no such thing—it would grant DOJ the final relief it seeks in this action. Nothing in the Federal Rules or the statute underlying DOJ's claim authorizes this departure from the regular course of proceeding or permits DOJ to short-circuit the Federal Rules for its own convenience. The Civil Rights Act merely states that district courts "shall have jurisdiction by appropriate process" to grant relief under that law. 52 U.S.C. § 20705. The Federal Rules set forth that process. *See* Fed. R. Civ. P. 1. The 1962 Fifth Circuit decision that DOJ relies on is irreconcilable with later Supreme Court precedent clarifying that, in circumstances involving identical statutory language, "the Federal Rules of Civil Procedures apply." *United States v. Powell*, 379 U.S. 48, 58 n.18 (1964). And, procedural issues aside, DOJ is not entitled to the relief

1

it seeks for the reasons given in the 1199NE Intervenors' contemporaneously filed motion to dismiss.

The Court should reject DOJ's effort to short-circuit the ordinary litigation process, deny DOJ's motion to compel, and allow this action to unfold as prescribed by the Federal Rules.

## BACKGROUND[1]

DOJ filed this suit on December 2, 2025, seeking to compel Defendant Gregg M. Amore, Rhode Island's Secretary of State, to turn over Rhode Island's full, unredacted statewide voter registration list. *See generally* Compl., ECF No. 1. DOJ brings only a single claim, alleging a violation of Title III of the Civil Rights Act of 1960 ("CRA"). *See id.* ¶¶ 27–29. DOJ contends that it is entitled to access the list under the CRA for the stated purpose of assessing Rhode Island's compliance with the National Voter Registration Act ("NVRA") and the Help America Vote Act ("HAVA"). *See id.* ¶ 20.

As the 1199NE Intervenors explain in their motion to dismiss, filed contemporaneously with this opposition, the Civil Rights Act of 1960 cannot support DOJ's sweeping and novel demand. *See generally* Mot. Dismiss. DOJ states no lawful, truthful basis and purpose for its demand. It says it is investigating compliance with the NVRA and HAVA, but it articulates no "basis" for believing Rhode Island—much less all 40-plus States of which DOJ is making this same demand—is violating those

---

[1] 1199NE Intervenors' motion to dismiss, filed contemporaneously with this filing, further explains the background of this litigation and DOJ's wide-ranging demands for sensitive voter information in Rhode Island and throughout the country.

2

statutes, and investigating compliance with those statutes is not a lawful purpose for an investigation under the CRA in any event, because it falls outside the CRA's focus on constitutional voting rights. *See id.* Argument § I. It is also not the true purpose for DOJ's demand, which is instead to build an unprecedented and unauthorized nationwide voter list and—as its own senior official has admitted—to use the information obtained to attempt to compel the removal of *hundreds of thousands of voters* from the rolls. *See id.* Background § II; Argument § I. In other words, DOJ's true purpose appears to be to *impede* constitutional voting rights, not protect them. This is not a lawful purpose for the demand of these records under the CRA. Rather, it is antithetical to that Act. Moreover, even if DOJ's demand were lawful, Rhode Island has offered to provide everything that DOJ could properly obtain under a valid CRA demand (or other federal laws) in any event, insisting only on redacting sensitive private information to which DOJ would never be legally entitled. *See id.* Argument § II. And DOJ has not complied with the federal privacy laws that would be necessary for it to collect the private information it demands, even if it were otherwise entitled to it. *See id.* Argument § III.

In the motion to compel, DOJ asks the Court to ignore those issues—and other issues raised by the Secretary of State and the Common Cause Intervenors in their own motions to dismiss—and skip straight to compelling production of the full set of information that DOJ demands. It asks the Court to "[o]rder Secretary Amore to produce an electronic copy of the Rhode Island Statewide Voter Registration List,"

3

including all of the sensitive fields DOJ demands. Mot. Compel Produc. at 3, ECF No. 2.

## ARGUMENT

The Federal Rules of Civil Procedure govern this civil action, like any other. Nothing in the CRA's text supports DOJ's contention that the CRA "displaces" the Federal Rules or authorizes a "special statutory proceeding." Mem. Supp. Mot. Compel Produc, at 13, ECF No. 2-1. And DOJ is wrong to minimize the Court's rule in reviewing the lawfulness of the relief it seeks. The Court should deny DOJ's motion and permit this litigation to unfold under the normal course—starting with resolving the motions to dismiss DOJ's baseless claim.

### I. The Federal Rules govern DOJ's claim.

The Court should reject DOJ's request to short-circuit the Federal Rules in this case. Those Rules "govern the procedure in *all civil actions and proceedings* in the United States district courts, except as stated in Rule 81." Fed. R. Civ. P. 1 (emphasis added). This case is just such an action. While Rule 81 sets out a narrow set of prescribed cases that are exempt from the ordinary rules—such as certain admiralty or bankruptcy actions—none involve the CRA. *See* Fed. R. Civ. P. 81(a). Just the opposite. Rule 81(a)(5) expressly provides that "proceedings to compel testimony or the production of documents through a subpoena issued by a United States officer or agency under a federal statute" are subject to the Rules, "except as otherwise provided by statute, by local rule, or by court order in the proceedings." As a result, even if Title III document requests could be characterized as a subpoena, they would still be subject to the Rules, as none of the sources listed in Rule 81(a)(5) provide an

4

exception for document requests under Title III. Congress knows how to prescribe streamlined proceedings for that circumstance, *see, e.g.*, 29 U.S.C. § 161(2), and it did not do so in the CRA.

DOJ identifies nothing in the text of the CRA that supports its demand for an immediate grant of the final relief it seeks in this case. The statute says only that district courts "shall have jurisdiction *by appropriate process* to compel the production" of the documents sought. 52 U.S.C. § 20705 (emphasis added). Nothing in that language suggests that the "appropriate process" should be something other than that which federal courts ordinarily use to resolve contested cases. And as the Supreme Court has held, where a statute of this type "contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, *the Federal Rules of Civil Procedure apply*." *Powell*, 379 U.S. at 58 n.18 (emphasis added). *Powell* is directly on point, because the relevant text of the statute in *Powell* was identical to the relevant text of Section 20705, providing that the federal courts "shall have jurisdiction by appropriate process to compel" the production sought. 26 U.S.C. § 7604(a).

DOJ's contrary argument relies on a Fifth Circuit decision from 1962, *Kennedy v. Lynd*, 306 F.2d 222, 225 (5th Cir. 1962). But *Lynd* is entirely irreconcilable with *Powell*, which the Supreme Court decided two years later. Where *Lynd* says that enforcement proceedings under Title III "do[] not require pleadings which satisfy usual notions under the Federal Rules of Civil Procedure," 306 F.2d at 225–26, *Powell* explains—construing a statute with identical text—that "the Federal Rules of Civil

5

Procedure apply," and that "proceedings are instituted by filing a complaint, followed by answer and hearing," 379 U.S. at 58 n.18. After *Powell*, *Lynd*—which was never binding on this Court—would not control even in the Fifth Circuit. *E.g.*, *Gahagan v. USCIS*, 911 F.3d 298, 302 (5th Cir. 2018) ("Fifth Circuit precedent is implicitly overruled if a subsequent Supreme Court opinion 'establishes a rule of law inconsistent with' that precedent." (quoting *Gonzales v. Thaler*, 623 F.3d 222, 226 (5th Cir. 2010))). This Court should follow *Powell* instead.

## II. The Court must conduct meaningful review of DOJ's demand.

DOJ is also wrong to minimize the Court's role in reviewing the legality of DOJ's demand. To invoke the powers of a federal court to enforce a subpoena, the government must show its investigation "will be conducted pursuant to a legitimate purpose" and that "the inquiry may be relevant to the purpose." *Powell*, 379 U.S. at 57. After all, "[i]t is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused." *Id.* at 58. And "an abuse would take place if the summons had been issued for an improper purpose." *Id.*

Unsurprisingly, then, courts—including the same circuit court that issued *Lynd*—regularly engage in meaningful judicial review of government document requests issued under a variety of statutory schemes. *E.g.*, *Sugarloaf Funding, LLC v. U.S. Dep't of Treasury*, 584 F.3d 340, 347–50 (1st Cir. 2009) (allowing summons recipient opportunity to rebut government's prima facie case); *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458–60 (5th Cir. 2018) (reversing order to enforce civil investigative demand after inquiry into the sufficiency of the purpose and basis of demand); *CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 690

6

(D.C. Cir. 2017) (rejecting "perfunctory" statement of purpose in issuing civil investigative demand, reasoning agencies are "not afforded unfettered authority to cast about for potential wrongdoing" (quoting *In re Sealed Case (Admin. Subpoena)*, 42 F.3d 1412, 1418 (D.C. Cir. 1994)); *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229, 237 (D. Mass. 2025) (quashing subpoena when DOJ "failed to show proper purpose" under the statutory scheme, rejecting notion that "the Government's self-proclaimed say-so" is sufficient to "preclude any form of judicial review"). Nothing in Title III justifies any different treatment.

In arguing otherwise, DOJ relies on *Lynd* and some other cases from the deep South in the early 1960s. But the context in which those cases were decided was vastly different. *Lynd* involved demands for voter records from counties in Mississippi and parishes in Louisiana "based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction." 306 F.2d at 229 n.6. That was undeniably a valid "purpose" under 52 U.S.C. § 20703, as eliminating racial discrimination in voting was the explicit purpose of Title III, *see State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960) ("The legislative history leaves no doubt but that [Title III of the CRA] is designed to secure a more effective protection of the right to vote."), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961). And there could be no serious question that DOJ had a valid "basis" to suspect racial discrimination in voting in localities where Black residents had overwhelmingly been excluded from the voter rolls. *See, e.g., United States v.*

7

*Lynd*, 301 F.2d 818, 821 (5th Cir. 1962) (explaining that "[n]o Negro had been registered in Forrest County during defendant Lynd's term of office," while "none of the defendants nor their deputies were able to testify to any individual white person who had been rejected."). Moreover, *Lynd* emphasized that it was "of great importance" that the records DOJ sought there were "public records which ought ordinarily to be open to legitimate reasonable inspection," not "confidential, private papers." *Lynd*, 306 F.2d at 231. Here, in contrast, Secretary Amore has offered to provide the public records—it is only private, confidential information that is at issue. And even *Lynd* emphasized that if there were a "genuine dispute" whether the records sought fell within the scope of Title III, the court would need to adjudicate that issue. *Id.* at 226.

None of the factors that made *Lynd* such an easy case are present here. The avowed purpose of DOJ's request falls outside of Title III, because—even by DOJ's own telling—the demand relates, not to the protection of constitutional voting rights, but merely administrative requirements imposed by other statutes with their own enforcement and investigatory mechanisms. *See* Mot. Dismiss, Argument § I. There is therefore at least a "genuine dispute" whether the records are subject to production under Title III. *Lynd*, 306 F.3d at 226. Indeed, public reporting and statements by DOJ officials themselves strongly indicate that DOJ's real purpose is to impede voting rights, not protect them. DOJ has provided no reason to believe that it has a valid basis to suspect that there are NVRA and HAVA violations in Rhode Island, much less in all 40-plus States from which DOJ has demanded similar records. Finally, the

8

records that DOJ seeks here are confidential, not public. *Lynd*'s approach may have made sense for requests for public voter registration forms in 1960s Mississippi. But it is entirely inappropriate for the brave new world ushered in by DOJ's wave of extraordinary document demands targeting quintessential private information about all registered voters in the entire state of Rhode Island, and nearly every other State, too.

### III. The proper procedural course is for the Court to resolve the pending motions to dismiss and then, if needed, to proceed to discovery.

Consistent with the above, the Court can and should resolve this case via the pending motions to dismiss, not through a "motion to compel production of records" that is not sanctioned by the Federal Rules or any statute. The Federal Rules provide for motions to dismiss for a simple and sound reason: to "test the sufficiency of the complaint." *Doe v. Brown Univ.*, 270 F. Supp. 3d 556, 559 (D.R.I. 2017) (citing *Godin v. Schencks*, 629 F.3d 79, 89 (1st Cir. 2010)). Motions to dismiss thus serve a crucial gatekeeping function: they are "the tiger patrolling the courthouse gate," guarding against legally defective claims. *Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 52 (1st Cir. 1990). The Federal Rules likewise set an early deadline for motions to dismiss because they are a "time-sensitive . . . screening mechanism[s] designed to weed out cases that do not warrant either discovery or trial." *Rios-Campbell v. U.S. Dep't of Com.*, 927 F.3d 21, 24 (1st Cir. 2019) (citation modified). Accordingly, "the drafters of the Civil Rules" "envisioned Rule 12(b)(6) motions as a swift, uncomplicated way to weed out plainly unmeritorious cases[.]" *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998).

9

As explained more fully in the 1199NE Intervenors' motion to dismiss, DOJ asserts novel authority to compel the production of an unredacted copy of Rhode Island's complete statewide voter registration list, without any valid statutory basis to do so. *See* Mot. Dismiss, Argument §§ I–III. In light of the fatal legal deficiencies in DOJ's complaint, resolving DOJ's motion to compel first would flip the process backwards, depriving Intervenors and the Secretary of State of their right and opportunity to test the legal sufficiency of DOJ's claims at the outset, as the Rules envision. The motions to dismiss are thus the proper vehicle to resolve DOJ's claim.

Even if the Court denies the motions to dismiss in whole or in part, the next step would be to permit discovery on DOJ's claim. Even at this early stage, it is apparent that there are potential disputes of material fact that may bear on the resolution of this case. For example, even assuming DOJ could seek records under the Civil Rights Act of 1960 to assess Rhode Island's compliance with the NVRA and HAVA, there is a genuine dispute of fact as to whether that is in fact DOJ's purpose. Public reporting has indicated that DOJ intends to create a nationwide voter list, an unprecedented scheme not authorized by any source of law.[2] And Assistant Attorney General Harmeet Dhillon has even stated publicly that DOJ intends to use the information to attempt to compel removal of *hundreds of thousands* of voters from the rolls.[3] Granting DOJ the final relief it seeks before the Secretary and Intervenors

---

[2] Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://perma.cc/8VP4-WRXD.
[3] *See* AAG Harmeet Dhillon (@AAGHarmeetDhillon), X (Dec. 18, 2025, at 9:24 ET), https://x.com/AAGDhillon/status/2001659823335616795 (stating in video discussing

10

have the opportunity to conduct discovery relevant to this and other factual disputes would be premature and contrary to the well-established practices that govern civil litigation. *See, e.g., Velez v. Awning Windows, Inc.*, 375 F.3d 35, 39 (1st Cir. 2004) ("[T]rial courts should refrain from entertaining summary judgment motions until after the parties have had a sufficient opportunity to conduct necessary discovery.").

## CONCLUSION

For the reasons stated above, the 1199NE Intervenors respectfully request that this Court deny DOJ's motion to compel production.

Dated: January 13, 2026

Respectfully submitted,

*/s/ Amy R. Romero*
Amy R. Romero (RI Bar # 8262)
DELUCA, WEIZENBAUM, BARRY & REVENS, LTD.
199 North Main Street
Providence, RI 02903
Telephone: (401) 453-1500
amy@dwbrlaw.com
Cooperating counsel, Lawyers' Committee for RI

David R. Fox*
Robert Golan-Vilella*
Qizhou Ge*
Marisa A. O'Gara*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Suite 400
Washington, D.C. 20001
Telephone: (202) 968-4490
Facsimile: (202) 968-4498
dfox@elias.law
rgolanvilella@elias.law
age@elias.law

---

these lawsuits: "You're going to see hundreds of thousands of people in some States being removed from the voter rolls.").

11

>mogara@elias.law
>
>Walker McKusick\*
>**ELIAS LAW GROUP LLP**
>1700 Seventh Avenue, Suite 2100
>Seattle, WA 98101
>Telephone: (206) 656-0177
>wmckusick@elias.law
>
>*Counsel for Intervenors SEIU District 1199NE, Rhode Island Alliance for Retired Americans, Carolyn Betensky, and Michael "Zack" Mezera*
>
>*\* Appearing Pro Hac Vice*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 13, 2026, I electronically filed the within document and it is available for viewing and downloading from the Court's CM/ECF system, and that the participants in the case that are registered CM/ECF users will be served electronically by the CM/ECF system.

<em>/s/ Amy R. Romero</em>