IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br><br>v.<br><br><br>GREGG M. AMORE, in his official capacity as Secretary of State of Rhode Island,<br><br>Defendant. | Case No. 25-cv-639-MSM-PAS<br><br><br>CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS AND REPLY TO OPPOSITIONS TO UNITED STATES' MOTION TO COMPEL |

## **Table of Contents**

INTRODUCTION...................................................................................................1

STATEMENT OF FACTS .......................................................................................2

LEGAL STANDARD ..............................................................................................3

MOTIONS TO DISMISS ARE NOT PROPER WHEN THE ATTORNEY
GENERAL BRINGS A CLAIM UNDER TITLE III. .................................................4

THE ATTORNEY GENERAL IS ENTITLED TO THE DEMANDED RECORDS
.............................................................................................................................5

THE ATTORNEY GENERAL IS SUMMARILY ENTITLED TO THE
DEMANDED RECORDS .......................................................................................10

THE ATTORNEY GENERAL IS ENTITLED TO UNREDACTED RECORDS IN
ELECTRONIC FORMAT .......................................................................................11

THE DEMAND DOES NOT VIOLATE THE PRIVACY ACT .............................15

CONCLUSION .......................................................................................................21

## CONSOLIDATED OPPOSITION TO MOTIONS TO DISMISS AND REPLY TO OPPOSITION TO MOTION TO COMPEL

In response to Defendants' Motions to Dismiss and in Reply to Defendants' Responses to the Motion to Compel, the United States respectfully requests the Motions to Dismiss be denied and the Motion to Compel be Granted.

## INTRODUCTION

Congress has charged the Attorney General with enforcing the voting rights of Americans and has granted the Attorney General sweeping prelitigation investigative powers.  Title III of the Civil Rights Act of 1960 (CRA) provides that upon a demand from the Attorney General to any person having custody, possession, or control of any record or paper relating to any application, registration, payment of poll tax, or other act requisite to voting, such record or paper shall be produced. 52 U.S.C. §§20701, 20703.

In their pending motions, Defendants seek to rewrite the Civil Rights Act and place restrictions and limitations on the power granted to the Attorney General that have no basis in law.  Defendants further request that the Court deviate from the summary procedures dictated by the CRA and expounded upon by the only appellate

Court that has addressed the issue. *See Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962).[1]  The Court should refuse the Defendants' invitation and deny their motions.

## STATEMENT OF FACTS

Pursuant to U.S.C. § 20703, on September 8, 2025, the Attorney General, through her representatives, sent a letter to Rhode Island Secretary of State Gregg Amore, the State's chief election officer, demanding the State's unredacted statewide voter registration list containing all fields. *See* Decl. of Maureen S. Riordan Doc 2-2 Ex 1.  As stated in the letter, the basis for the demand was Title III of the Civil Rights Act of 1960 (CRA) codified at 52 U.S.C. §20701, *et seq,* and the purpose was to "ascertain Rhode Island's compliance with the list maintenance requirements of the NVRA and HAVA."  The letter informed the Secretary of State that the list is subject to federal privacy protections, specifically Section 304 of the CRA.  It further informed the Secretary of State that the statewide voter registration list could be produced via encrypted email or using the Department of Justice's secure file-sharing system.

---

[1]  A district court in California has granted an order to dismiss a request for records in California, *United States v. Weber*, No. 2:25-cv-09149 (C.D.Cal. January 15, 2026).  As explained below, the California district court failed to follow the correct procedure for an Order to Show Cause under the CRA.

Secretary of State Amore responded that he would provide a copy of the publicly available voter registration list but, he would not provide an unredacted copy citing state privacy laws, the Privacy Act of 1974 and the E-Government Act of 2004. The Attorney General then instituted these summary proceedings to compel the production.

## LEGAL STANDARD

The Attorney General's filing of her application for an order under Title III "is not the commencement of an ordinary, traditional civil action with all of its trappings." *Lynd,* at 225. It is "a special statutory proceeding in which the courts play a limited, albeit vital, role." *Id.* "Since it is a special statutory proceeding, it does not require pleadings which satisfy usual notions under the Federal Rules of Civil Procedure." *Id.* at 225-26; *see also Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 854 (M.D. Ala. 1960) (holding the Attorney General's demand for records was "purely investigative" not adjudicatory).

The CRA restricts the Court to a "severely limited" inquiry: (1) did the Attorney General make a written demand for federal election records stating the basis and purpose; (2) was that demand made to one or more "officer[s] of election" responsible for performing any act requisite to voting in federal elections including voter registration; (3) did the officer(s) of election fail or refuse to make the

demanded federal election records "available for inspection, reproduction, and copying"; and (4) did the Attorney General make "a simple statement" to this Court that she satisfied the first three elements. *Lynd* at 225-26; *see also* 52 U.S.C. § 20703. The Court is required to treat the application to compel as a summary proceeding. *Lynd* at 226.

## MOTIONS TO DISMISS ARE NOT PROPER WHEN THE ATTORNEY GENERAL BRINGS A CLAIM UNDER TITLE III.

The "chief purpose" of Title III of the CRA "is to facilitate the investigation of the records *before suit is filed.*" *United States v. Ass'n of Citizens Councils of La.*, 187 F. Supp. 846, 847 (W.D. La. 1960) (per curiam) (emphasis added). "[T]he function sought to be exercised by the Attorney General is… purely investigative," *Gallion*, 187 F. Supp. at 854, to evaluate "possible violations of a Federal statute," *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam) ("*Coleman II*"). As such, when the Attorney General makes an application to a court to enforce a demand for election records, it is comparable to a traditional order to show cause. *Lynd* at 225.

In *Lynd*, the Court explicitly stated that "there is no place for any other procedural device or maneuver — either before or during any hearing of the application — to ascertain the factual support for or the sufficiency of the Attorney General's statement of the basis and purpose therefore as set forth in the written

4

demand." *Lynd* at 226; *cf. United States v. Powell* 379 U.S. 48 (1964) (analyzing the process by which an IRS administrative subpoena can be enforced under a different set of statutes not applicable to the CRA).

It does not require known violations of federal law or even allegations of misconduct. In that manner, Title III enables the Attorney General to determine whether a federal lawsuit "should be instituted" and "to obtain evidence for use in such cases if and when filed." *Lynd* at 228. "Congress has specifically committed the investigative responsibility to the Attorney General and has equipped [her] with machinery thought suitable for the effective fulfillment of that obligation" through Title III of the CRA. *Id*. at 230.[2] As the Motions to Dismiss are not proper, they should be denied.

## THE ATTORNEY GENERAL IS ENTITLED TO THE DEMANDED RECORDS

Defendant correctly asserts the U.S. Constitution grants States "the primary authority to regulate federal elections." Mem. in Supp. Def. Mot. To Dismiss, Doc. 26 at 15. However, the Elections Clause provides Congress with the power to preempt any and all state statutes and rules regarding federal elections except as to

---

[2] Title III invests the Attorney General with a power akin to a grand jury which "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *United States v. Bisceglia*, 420 U.S. 141, 148 (1975).

the location of [choosing] senators. U.S. Const. art. I § 4, cl. 1. The "Clause is a default provision; it invests the States with responsibility for the mechanics of congressional elections, but only so far as Congress declines to preempt state legislative choices…Thus, it is well settled that the Elections Clause grants Congress 'the power to override state regulations' by establishing uniform rules for federal elections, binding on the States." *Foster v. Love*, 522 U.S. 67, 69 (1997) (quoting *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 832-33 (1995)). "'[T]he regulations made by Congress are paramount to those made by the State legislature; and if they conflict therewith, the latter, so far as the conflict extends, ceases to be operative.'" *Foster*, 522 U.S. at 69 (quoting *Ex Parte Siebold*, 100 U.S. 371, 384 (1879)); see also *Arizona v. Inter Tribal Council of Arizona, Inc*., 570 U.S. 1, 7-9 & n.1 (2013) (discussing the breadth of the Elections Clause).

Defendant argues the United States "seeks to displace state authority." Def. Mot. To Dismiss, Doc. 26, at 15. The Attorney General is merely exercising authority granted to her by Congress acting under the Elections Clause.  The CRA provides "every officer of election shall retain and preserve, for a period of twenty-two months from the date of [a federal election] all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election…." 52 U.S.C. § 20701.  The CRA further provides the Attorney General of the United States a correspondingly sweeping

*United States of America v. Amore*
*Combined Response to Defendants' Motions to Dismiss and Reply to Defendants' Opposition to Motion to Compel*

power to obtain Federal election records: "Any record or paper required by [52 U.S.C. § 20701] to be retained and preserved shall, upon demand in writing by the Attorney General or [her] representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying … by the Attorney General or [her] representative…." 52 U.S.C. § 20703.

Defendants argue Congressional intent narrows the broad scope of the Attorney General's investigative authority to racially discriminatory voter registration practices. *See* Def. Mot. To Dismiss, Doc. 26, at 17; Intervenor Common Cause's Mot. To Dismiss, Doc. 25, at 23. However, nothing in Title III of the CRA provides such a limitation. Neither the words "race," "racial," nor "discrimination" appear anywhere in the statutory text of Title III. The Supreme Court "[has] stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 461-62 (2002) (quoting *Connecticut Nat. Bank* v. *Germain,* 503 U.S. 249, 253-254 (1992)). It is the words on the page that control, not what Congress may or may not have intended. "After all, only the words on the page constitute the law adopted by Congress and approved by the President. If judges could add to, remodel, update, or detract from old statutory

terms inspired only by extratextual sources and our own imaginations, [they] would risk amending statutes outside the legislative process…." *Bostock v. Clayton Cnty., Ga.*, 590 U.S. 644, 654-55 (2020). Yet amending the statute to require an investigation into racially discriminatory practices outside the legislative process is precisely what the Defendants ask this Court to do. The Court should refuse.

The Defendants further desire the Court to amend the CRA to allow a challenge to the basis and purpose stated by Attorney General in her demand for records. The demand letter states that the authority under which the Attorney General is making the demand is the CRA. Decl. of Maureen S. Riordan, Doc. 2-2 Ex 1. The letter also states that the purpose for which the records are sought is to "ascertain Rhode Island's compliance with the list maintenance requirements of the NVRA and HAVA." *Id.* Therefore, the Attorney General has complied with the basic requirements of the CRA to state the "basis and the purpose" of the demand. 52 U.S.C. § 20703. Defendants' descriptions of the stated basis and purpose not being "plausible," "truthful," or "adequate" are found nowhere in the text of Title III. Def. Mot. To Dismiss, Doc. 26, at 18-23; SEIU Mot. To Dismiss, Doc 28 at 9.

As found by the Court in *Lynd,* 306 F.2d 222, 226, the stated basis and purpose of the Attorney General cannot be challenged "to ascertain the factual support for or the sufficiency of the Attorney General's statement of the basis and purpose therefore as set forth in the written demand." *Id.* "The Attorney General [must] identify in a

8

general way the reasons for [her] demand." *Coleman II* at 868 (citation omitted).
"Clearly a sufficient statement would be the assertion that the demand was made for
the purpose of investigating *possible violations* of a Federal statute." *Id.* (emphasis
added); *see also Coleman I*, 208 F. Supp. 199, 200 (SD. Miss. 1962) (the written
demand need only indicate the records were needed "to see if any federal laws were
violated"). The United States has plainly satisfied that requirement.

In addition to the basis and purpose being nonreviewable, allowing the
Defendants to assert ulterior motives, *See e.g.* SEIU Mot. TO Dismiss, Doc. 28 at
15; Common Cause Mot. To Dismiss, Doc 25, invites improper speculation. *See*
Order, *United States v. N.C. St. Board of Elections,* No. 5:25-cv-283 (W.D.N.C., filed
Jan. 12, 2026), Attached as Ex. 1, at 7 (Myers, J., finding arguments that the United
States is trying to use the CRA to build a national voter database in a suit for voter
rolls "speculative and premature"). *But see* Order, *United States v. Shirley Weber*,
No. 2:25-cv-9149 (C.D.Calif., filed Jan. 15, 2026) (Carter, J., granting Defendants'
Motions to Dismiss) and Docket Order, *United States v. Oregon*, No. 6:25-cv-1666
(D.Ore., entered Jan. 26, 2026) (Kasubhai, J., granting Defendants' Motions to
Dismiss, Docket No. 68, formal opinion to follow).

## THE ATTORNEY GENERAL IS SUMMARILY ENTITLED TO THE DEMANDED RECORDS

The CRA is a unique and sweeping investigative tool.  It does not grant the Attorney General mere subpoena power as stated by the Defendants.  Congress has in many instances granted various arms of the federal government subpoena power and knows how to do so when it wishes. *See e.g.* 26 U.S.C. § 7602.  Defendants rely on comparison to such statutes and Court interpretations of them to assume a court should treat the Attorney General's demand here in a similar fashion.  The cases Defendants cite, such as *Becker v. United States*, 451 U.S. 1306 (1981), *United States v. Powell*, 379 U.S. 48 (1964), and *Sugarloaf Funding, LLC v. U.S. Dep't of Treasury*, 584 F.3d 340 (1st Cir. 2009), all are interpreting limits to the IRS's subpoena power pursuant to 26 USC § 7602. Federal election records requests pursuant to the CRA do not have such limitations to interpret.  Had Congress only granted subpoena power, the statute would say so.  Rather the statute authorizes the Attorney General to make a demand, and to seek a Court Order to Compel.  The word "subpoena" is nowhere to be found in the text of Title III, and the Court should not amend the statute to add it and diminish the power of the Attorney General.

## THE ATTORNEY GENERAL IS ENTITLED TO UNREDACTED RECORDS IN ELECTRONIC FORMAT

The CRA allows the Attorney General to demand all records relating to any act requisite to voting. 52 U.S.C. § 20701. Nothing in the text of the CRA allows a state to withhold any part of any record. Such an allowance would frustrate the investigation of the Attorney General. To the extent that state privacy laws prohibit the disclosure of certain information, they are preempted by the CRA. *Foster*, 522 U.S. at 69. HAVA mandates that the records sought by the Attorney General contain the information the Defendants seek to redact. The CRA entitles the Attorney General to the entire file, and in response, Defendants allege that the NVRA and cases interpreting it allow for redactions. This line of argument however suffers from two fatal flaws: firstly, the Attorney General has not made her demand under the NVRA, and secondly NVRA by its own terms expands the powers of the Attorney General, it does not restrict them.

The cases cited by the Defendants all involve private parties seeking records from the state pursuant to 52 U.S.C. § 20510, which creates a private right of action to enforce the NVRA. However, 52 U.S.C. § 20510(d), titled "Relation to other Laws" specifically states that "the rights and remedies established by this section are in addition to all other rights and remedies provided by law…" Accordingly, the

11

NVRA does not supersede the CRA as a later enacted statute. All of the powers granted to the Attorney General by the CRA are as effective today as they were in 1960.

Additionally, 52 U.S.C. § 20704 requires the Attorney General to protect any information received pursuant to the demand and places an affirmative duty on her not to disclose any record produced pursuant to the CRA. This section would be surplusage if the Attorney General was only entitled to the same redacted records as a member of the public. No purpose would be served by the Attorney General protecting publicly available information. In addition to the requirements of the CRA itself, the records are subject to the Privacy Act and the various existing Department of Justice's systems of records notices ("SORN"), most of which are identified with their citations in U.S. Dep't of Just., Privacy Act of 1974; System of Records, 82 Fed. Reg. 24147-01 (May 25, 2017), listed in a table at pages 24,148-24,151.[3]

The CRA provides that the records are to be made available for "inspection, reproduction, and copying." Production of the statewide voter registration list

---

[3] Additional SORNs issued by the Civil Rights Division to supplement the Department-wide privacy practices are titled, JUSTICE/CRT – 001, "Central Civil Rights Division Index File and Associated Records," 68 Fed. Reg. 47610-01, 611 (Aug. 11, 2003); and 70 Fed. Reg. 43904-01 (July 29, 2005).

*United States of America v. Amore*
*Combined Response to Defendants' Motions to Dismiss and Reply to Defendants' Opposition to Motion to Compel*

(SVRL) via electronic format is consistent with the requirements of the CRA as HAVA already requires Rhode Island to maintain its SVRL electronically and specifies what information must be included in such a file.  Encrypted emailing or otherwise using the Department of Justice's secure file-sharing system to send the Attorney General a copy of the list is consistent with the statute.  Rhode Island alleges that providing the Attorney General an electronic copy of the SVRL would shift control of the list to the Department of Justice and analogizes such a production as akin to the United States seizing physical files and removing them from the state. Def. Mot. To Dismiss, Doc. 26-1 at 28.  In reality, production of an electronic copy of the file does exactly the opposite, allowing the state to maintain control of the records while simultaneously allowing the Attorney General to perform her investigative duties mandated by Congress.

Rhode Island further attempts to restrict the production requirements citing *Greater Birmingham Ministries, Inc. v. Secretary of State for Ala*. 105 F.4th 1324, 1332-33 (11th Cir. 2024), to support a claim that Attorney General is only entitled to onsite inspection or photocopies.  That case however was interpreting the public disclosure section of the NVRA that explicitly provides for "public inspection and, where available photocopying at a reasonable cost…", 52 U.S.C. 20507(i), and is therefore not applicable.  The Attorney General is not seeking records as a member of the public pursuant to the NVRA.  The Attorney General is seeking records in her

13

role as a federal officer who has been mandated by Congress to enforce the voting rights of all Americans pursuant to 52 U.S.C. § 20703. This statute requires the records be made available for "inspection, reproduction, and copying." Production of an electronic copy of the SVRL is consistent with the CRA.

The data the United States has requested under the CRA is the same that twenty-five states (including Rhode Island) and the District of Columbia routinely share through the Electronic Registration Information Center, ("ERIC"), to facilitate their compliance with federal list-maintenance requirements.[4] Similarly, private parties have been granted access to even more detailed voter data than what the United States has requested where necessary to bring actions to enforce federal rights. *See Coal. for Open Democracy v. Scanlan*, No. 24-CV-312-SE, 2025 WL 1503937, at *2 (D.N.H. May 27, 2025) (ACLU compelled production of "[a] copy of the New Hampshire statewide voter database and all documents concerning the use of the statewide voter database, including instruction manuals or other guides concerning the data fields contained in the database and their correct interpretation."), *appeal docketed*, No. 25-1585 (1st Cir. June 17, 2025).

---

[4] *See* ERIC, ERIC Overview, *available at* https://ericstates.org/ (last visited Jan. 6, 2026).

*United States of America v. Amore*
*Combined Response to Defendants' Motions to Dismiss and Reply to Defendants' Opposition to Motion to Compel*

Finally, the United States previously has pursued successful matters, including in litigation, to obtain statewide voter registration lists under Title III of the CRA. For example, in two of those matters against Georgia and Texas, the United States obtained the SVRLs, including drivers' license numbers and SSN4s, to evaluate compliance with the NVRA, including that Act's list maintenance requirements.[5]

## THE DEMAND DOES NOT VIOLATE THE PRIVACY ACT

Defendants argue that the Privacy Act not only demands compliance by the United States, it demands dismissal of this litigation. For multiple reasons, this is incorrect. The Privacy Act regulates federal agencies' collection, maintenance, and disclosure of information within their own systems of records—it does not restrict the ability of state actors to share information with federal agencies. The statute's plain language confirms that it applies only to federal "agencies" as defined in 5 U.S.C. § 552a(a)(1), meaning "any executive department, military department, Government corporation, Government controlled corporation, or other

---

[5] See Compl., *United States v. Georgia*, No. 1:06-cv-02442 (N.D. Ga. Oct. 12, 2006), Doc. 1. The Court entered a consent decree in the Georgia case requiring production of the SVRL. *See Georgia*, *supra*, at Doc. 4 (filed Oct. 27, 2006). The Texas matter was resolved by a Memorandum of Understanding. *See* U.S. Dep't of Just., Mem. of Understanding between the United States and Texas (May 13, 2008), *available at* https://www.justice.gov/media/1173461/dl?inline (last visited Jan. 6, 2026). For the Court's convenience, the three documents are provided as Exhibits 2-4 (attached to this Memorandum in Opp. To Mnt. to Dismiss).

establishment in the executive branch of the Government." State and local entities fall outside that definition. The Privacy Act "erects certain safeguards for an individual against an invasion of personal privacy," Pub. L. No. 93–579, § 2(b), 88 Stat. 1896 (1974), only within the scope of federal agency record systems.

Furthermore, there is no requirement in federal law requiring that the United States plead its compliance with the Privacy Act in every complaint it brings in which it may obtain records that contain personally identifiable information.[6] Rather, the Privacy Act and Section 304 of the CRA simply require that when protected information is obtained, it must be securely stored and not be subject to unauthorized dissemination or use.

The voter information that the Department is collecting is maintained according to the Privacy Act protections explained in the Civil Rights Division's Privacy Policy, which it has published online.[7] The full list of routine uses for this collection of information, which include investigations and enforcement actions, can

---

[6] Indeed, governmental compliance with relevant laws is, absent a showing to the contrary, presumed. *See, e.g.*, *Carolina Tobacco Co. v. Bureau of Customs & Border Prot.*, 402 F.3d 1345, 1350 (Fed. Cir. 2005) ("Government officials are presumed to do their duty, and one who contends they have not done so must establish that defect by 'clear evidence.'") (quoting *United States v. Armstrong*, 517 U.S. 456, 464 (1996)).

[7] *See* U.S. Dep't of Just., Civ. Rts. Div., Privacy Policy ("Privacy Policy"), *available at* https://civilrights.justice.gov/privacy-policy (last visited Jan. 6, 2026).

be found in the Department of Justice's systems of records notices ("SORN"), most of which are identified with their citations in U.S. Department of Justice, Privacy Act of 1974; System of Records, 82 Fed. Reg. 24147-01 (May 25, 2017), listed in a table at pages 24,148-24,151.[8] The statutes cited for routine use include the NVRA, HAVA, and the CRA. The records in the system of records are kept under the authority of 44 U.S.C. § 3101 and in the ordinary course of fulfilling the responsibility assigned to the Civil Rights Division under the provisions of 28 C.F.R. §§ 0.50, 0.51.

Similarly, to the extent that Movants are concerned about the transport of such data to the United States, the Department of Justice uses a secure file-sharing system, Justice Enterprise File Sharing ("JEFS"). That system implements strict access controls to ensure that each user can only access their own files and is also covered by SORNs.[9]

---

[8] Additional SORNs issued by the Civil Rights Division to supplement the Department-wide privacy practices are titled, JUSTICE/CRT – 001, "Central Civil Rights Division Index File and Associated Records," 68 Fed. Reg. 47610-01, 611 (Aug. 11, 2003); and 70 Fed. Reg. 43904-01 (July 29, 2005).

[9] *See* JUSTICE/DOJ-014, Department of Justice Employee Directory Systems, last published in full at 74 Fed. Reg. 57194 (Nov. 4, 2009), and modified at 82 Fed. Reg. 24151, 24153 (May 25, 2017); JUSTICE/DOJ-002, Department of Justice Computer Systems Activity and Access Records, last published in full at 64 Fed.

## THE E-GOVERNMENT ACT DOES NOT PREVENT THE ATTORNEY GENERAL FROM OBTAINING THE DEMANDED RECORDS

According to Defendants, the Attorney General is required to conduct a "privacy impact assessment," before initiating investigations of each state's compliance with HAVA and the NVRA. Def. Mot. To Dismiss Doc. 26-1 at 38. However, neither the text of E-Government Act nor interpretative caselaw support the Defendants' assertions.

The E-Government Act neither authorizes dismissal of this case nor limits the United States' ability to bring an application to compel production. The E-Government Act is not applicable to the United States' enforcement of HAVA and the NVRA. The United States is not initiating a new process whereby it is contacting individuals for information as contemplated by Pub. L. No. 107–347, § 208(b)(1)(A)(ii)(II), which "includes any information in an identifiable form permitting the physical or online contacting of a specific individual, if identical questions have been posed to, or identical reporting requirements imposed on, 10 or more persons, other than agencies, instrumentalities, or employees of the Federal Government." The data request is made to Defendants to provide a SVRL that they already maintain pursuant to federal law to analyze their federally required list

---

Reg. 73585-02 (Dec. 30, 1999), and modified at 66 Fed. Reg. 8425-02 (Jan. 31, 2001) and 82 Fed. Reg. 24147-01 (May 25, 2017).

maintenance. The SVRL would be kept on a system for which a Privacy Impact Assessment has been done.[10] Only when a new system is established—not when each new data request is made—is a Privacy Impact Assessment required.[11]

Applying the E-Government Act to enforcement of voting statutes would lead to an absurd result in which thousands of Privacy Impact Assessments would have to be done whenever the Voting Section gathers any voter data to ensure compliance with the NVRA and HAVA. Nothing in the E-Government Act or the purpose of the privacy provision in the Act suggests it was meant to encompass the enforcement provisions of all voting laws where voter data is examined. *See* Pub. L. No. 107–347, § 208 (a).

Even if the Court found the E-Government Act applied here—and it should not—Defendants have misplaced their reliance on *Elec. Priv. Info. Ctr. v.*

---

[10] An Initial Privacy Assessment (IPA) Determination was issued on October 12, 2012, showing that no Privacy Impact Assessment is required for the Justice Consolidated Office Network (JCON) system where personal identifying information associated with the United States' CRA demand is stored. *See* Ex. 5.

[11] When the Civil Rights Division began using ServiceNow (SNOW), a FedRAMP High-compliant Software as a Service (SaaS) cloud-hosting provider offering a suite of natively integrated applications designed to support Information Technology Service Management (ITSM), resource management, and shared support services, it prepared a Privacy Impact Assessment ("PIA") as required by the E-Government Act. *See* Office of Privacy & Civ. Liberties, DOJ Privacy Impact Assessments, *available at* https://www.justice.gov/opcl/doj-privacy-impact-assessments (last visited Jan. 26, 2026).

*Presidential Advisory Comm'n on Elec. Integrity*, 266 F. Supp. 3d 297 (D.D.C. 2017) ("*EPIC I*"). *EPIC I* does not support dismissal of a complaint based on an alleged failure to conduct a Privacy Impact Assessment. In that case, the plaintiff sought to enjoin a federal commission's collection of state voter information, claiming the commission had failed to prepare a PIA under § 208 of the E-Government Act. The D.C. Circuit affirmed dismissal of the claim on standing grounds. *See Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371 (D.C. Cir. 2017) ("*EPIC II*"). In doing so, the *EPIC II* court explained that the Act "is intended to protect *individuals*—in the present context, voters—by requiring an agency to fully consider their privacy before collecting their personal information. EPIC is not a voter and is therefore not the type of plaintiff the Congress had in mind." *Id*. at 378 (emphasis in original).

### THE COMPLAINT IS WELL PLEADED AND STATES A CLAIM

Even if the Court applies the standard procedure under FRCP Rule 12, the Motions to Dismiss should be denied. The CRA requires production of covered election records when the Attorney General 1) makes a written demand, 2) to the person having custody, possession, or control of the record, 3) the written demand contains a statement of the basis and purpose of the demand, and 4) the custodian refuses or fails to produce the records. At the motion to dismiss stage a court must accept all factual allegations as true. The Complaint alleges a demand letter was

20

sent to Defendant on September 8, 2025.  Complaint, Doc. 1 at 18.  The Complaint alleges the demand was for a copy of the state's voter registration list. Complaint, Doc. 1 at 20.  The Complaint alleges the demand was based on the Attorney General's authority granted by 52 U.S.C. § 20703.  *Id*.  The Complaint alleges the purpose of the demand was to "ascertain Rhode Island's compliance with the list maintenance requirements of the NVRA and HAVA." Complaint Doc. 1 at 5.  The Complaint alleges that Defendant refused to provide the demanded records. Complaint, Doc. 1 at 29.  As such, all elements have been alleged, and the Motions to Dismiss fail even under the normal procedures of FRCP 12.

## CONCLUSION

In light of the foregoing, the United States respectfully requests this honorable Court deny the Defendants' Motions to Dismiss, grant the United States' Motion to Compel, order the Defendant to produce the demanded records in accordance with 52 U.S.C. § 20703 and award such other and further relief as the Court finds just and proper.

DATED: January 27, 2026                Respectfully submitted,

                                       HARMEET K. DHILLON
                                       Assistant Attorney General
                                       Civil Rights Division


                                       /s/ Christopher J. Gardner
                                       CHRISTOPHER J. GARDNER
                                       BRITTANY E. BENNETT
                                       Trial Attorneys, Voting Section
                                       Civil Rights Division
                                       U.S. Department of Justice
                                       4 Constitution Square
                                       150 M Street NE, Room 8.141
                                       Washington, D.C. 20002
                                       Telephone: (202) 704-5430
                                       Email: Christopher.Gardner@usdoj.gov
                                       Email: Brittany.Bennett@usdoj.gov

*United States of America v. Amore*
*Combined Response to Defendants' Motions to Dismiss and Reply to Defendants' Opposition to Motion to Compel*

## CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2026, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

/s/ Christopher J. Gardner
CHRISTOPHER J. GARDNER
BRITTANY E. BENNETT
Trial Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Room 8.141
Washington, D.C. 20002
Telephone: (202) 704-5430
Email: Christopher.Gardner@usdoj.gov
Email: Brittany.Bennett@usdoj.gov