IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Civil No. 5:25-cv-00283-M-RJ

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>NORTH CAROLINA STATE BOARD OF ELECTIONS;<br>SAM HAYES, in his official capacity as Executive Director of the North Carolina State Board of Elections;<br>FRANCIS X. DE LUCA,<br>JEFF CARMON,<br>STACY EGGERS IV,<br>SIOBHAN O'DUFFY MILLEN, and<br>ROBERT RUCHO, in their official capacities as Members of the North Carolina State Board of Elections; and<br>STATE OF NORTH CAROLINA,<br><br>        Defendants. | ORDER |

      These matters come before the court on the North Carolina Alliance for Retired Americans' Motion for Reconsideration of its Motion to Intervene as Defendant [DE 73] and the Democratic National Committee's Renewed Motion to Intervene [as a Defendant] [DE 75]. Plaintiff and Defendants oppose both motions. For the reasons that follow, the motions are denied.

      On September 8, 2025, this court issued a Consent Judgment and Order ("Order") at the request of the parties, following their settlement of the issue raised in this enforcement action—i.e., whether Defendants had violated "the requirements of Section 303(a) of the Help America Vote Act of 2002 ('HAVA') with respect to the conduct of elections for Federal office in the State of North Carolina." Compl. ¶ 1. The court ordered that the State Board Defendants "ensure that North

Carolina's voter registration forms and instructions and the State's HAVA List used for *elections for Federal office* fully compl[y] with Section 303(a)(5) of HAVA, 52 U.S.C. § 21083(a)(5)." Order ¶ 3, DE 72 (emphasis added). The court further ordered that State Board Defendants refrain "from engaging in any act or practice" for "*elections for Federal offices*" that "fails to comply with the requirements of Section 303(a) of HAVA." *Id.* at ¶ 4 (emphasis added). In fact, the court specified that "[t]he terms of this Order apply to all elections for Federal office held in North Carolina." *Id.* at ¶ 2.

Prior to entry of the Order, the North Carolina Alliance for Retired Americans ("Alliance"), the Democratic National Committee ("DNC"), and others filed motions to intervene as defendants in the action. DE 7, 34, 39. The court reviewed the motions and determined that "all interests are adequately represented by the parties in this enforcement action, and the matters raised in the action are fully and finally settled"; thus, the court denied the proposed intervenors' motions as moot. DE 72 at 12. The present motions by the Alliance and the DNC followed,[1] and the court is now fully apprised.

Alliance's Motion to Reconsider

The Federal Rules of Civil Procedure do not expressly contemplate motions to "reconsider." Rather, a party in a civil case may move to alter or amend a judgment pursuant to Rule 59(e) or move for relief from a judgment or order pursuant to Rule 60(b). Here, the Alliance seeks relief pursuant to Rule 59(e). DE 74 at 2, 6, 13. "This rule was promulgated to make clear that the district court, with broad discretion, could 'rectify its own mistakes in the period immediately following the entry of judgment.'" *Daulatzai v. Maryland*, 97 F.4th 166, 177–78 (4th Cir. 2024) (quoting

---

[1] During the briefing period, the federal government experienced a lapse in appropriations and, at the parties' request, the court stayed the proceedings until the stay was lifted on December 4, 2025. DE 78, 79. The motions were submitted to the undersigned on December 9, 2025.

*White v. N.H. Dep't of Emp. Sec.*, 455 U.S. 445, 450 (1982)). "Rule 59(e) is generally invoked 'only to support reconsideration of matters properly encompassed in a decision on the merits.'" *Id.* (quoting *White*, 455 U.S. at 451). While a court is authorized to reconsider its ruling on virtually any basis that it determines might have been an error in its judgment, "courts will not address new arguments or evidence that the moving party could have raised before the decision issued." *Id.* (quoting *Banister v. Davis*, 590 U.S. 504, 508 (2020)).

The Alliance contends that it is "entitled to intervention as of right" and argues that the court erred in several ways when it entered the Order by: (1) failing to recognize that the State Board Defendants do not adequately represent the Alliance's interests; (2) failing to consider the impact of the Order on voters in state and local elections (DE 74 at 1, 4, 5, 11); (3) permitting "the [Department of Justice] full access to North Carolina's voter records" in apparent violation of N.C. Gen. Stat. §§ 132-1.10(b) and 163-82.10(a1); and (4) failing to permit submissions by *amicus curiae* before the Order was entered, as suggested by the parties.

Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, a district court "must permit intervention as a matter of right if the movant can demonstrate '(1) an interest in the subject matter of the action; (2) that the protection of this interest would be impaired because of the action; and (3) that the applicant's interest is not adequately represented by existing parties to the litigation.'" *Stuart v. Huff*, 706 F.3d 345, 349 (4th Cir. 2013) (quoting *Teague v. Bakker*, 931 F.2d 259, 260–61 (4th Cir. 1991)). "If intervention of right is not warranted, a court may still allow an applicant to intervene permissively under Rule 24(b), although in that case the court must consider 'whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.'" *Id.* (citing Fed. R. Civ. P. 24(b)(3)).

Because it underlies some of the Alliance's other objections, the court will start by examining the Alliance's concern that the court failed to consider any impact its Order may have

3

on state and local elections. This concern is easily allayed; the Order provides, and this enforcement action seeks, relief specifically for statutory (HAVA) violations concerning "elections for Federal office." Thus, the action and Order are limited in nature and scope. Nothing in the Order (nor in this action for that matter) challenges, addresses, or references the State Board's policies and/or procedures regarding state and local elections. The Alliance has taken no action (nor even suggested attempting) to amend the nature or broaden the scope of this case to include purported violations of voters' statutory and/or constitutional rights concerning state and local elections. To the extent that the Alliance disagrees with the State Board's actions, if any, taken outside the scope of the Order,[2] it may pursue relief through appropriate channels. In this respect, the Alliance fails to demonstrate that disposition of this action "may as a practical matter impair or impede" the Alliance's "ability to protect" an "interest *relating to* the property or transaction that is *the subject of the action*." Fed. R. Civ. P. 24(a)(2) (emphasis added).

Second, regarding adequate representation, the Alliance does not dispute that it has an interest in ensuring the State Board complies with all statutory requirements concerning voter registration. Rather, the Alliance contends that, unlike the State Board, it has an "organizational interest in preserving its own resources" and the "consent judgment would require the Alliance to undertake significant operations to help its members comply with the Board's plan." DE 74 at 8. To the extent that the Alliance references the State Board's "plan" as set forth in the Order, the court

---

[2] The Alliance characterizes "issues relating to state and local elections" as "a byproduct of the Board's choice to craft a [remedial] program implementing its agreement with DOJ that would disenfranchise voters in state and local elections." DE 83 at 1-2; *see also id.* at 7 (asserting that "the Board's remedial program [was] adopted to implement the consent judgment") (citing "ECF No. 73-1"). However, nothing in the September 8, 2025 revised memorandum, to which the Alliance refers as describing the "remedial program" (DE 73-1), indicates that any procedure concerning state and local elections arose from an agreement between the State Board and the United States, nor from the Order or any order issued in this action. In fact, in describing the content of the Order, the DNC recognizes that "[w]hether [voter] ballots will be counted in contests for state and local office is a matter of state law and outside the scope of the [Consent] Decree." DE 76 at 2.

4

finds the Alliance fails to explain or identify how it or its members are unduly burdened by the State Board's compliance with HAVA procedural requirements in North Carolina's federal elections. To the extent that the Alliance's reference is to a "plan" outside the parameters of the Order, it is not relevant to this action.

The Alliance also argues that the State Board cannot adequately represent its interests since the State Board and the United States have been "on the same team" since the initiation of the action, and the State Board has failed to "fight[] to protect the interests of voters in its state." Even if this were true, the Alliance again fails to recognize the limited scope of this enforcement action, and it has done nothing to modify or broaden it.

Finally, the Alliance asserts that the State Board failed to adequately represent its interest in objecting to the Order's "Election Day procedure" (*see* DE 72 at 9). Under the procedure, voters appearing on Election Day who present HAVA-required information, but who did not previously update their registration records with the required information, will vote by provisional ballot. *Id.* Here, the Alliance objects that "HAVA does not require relegating these voters to provisional status" and characterizes the procedure as "disfavored treatment." DE 74 at 12. However, the procedure specifies that the provisional ballots will be counted for federal elections, and provisional voting will not result in the voters' removal from voter rolls. DE 72 at 9. The Alliance fails to explain how the procedure "disfavors" its members.

Notably, the Alliance also argues that the Order "grant[s] DOJ broad access to the Alliance member[s'] voting records, despite state law providing privacy protection for much of that information." DE 74 at 8; *see also id.* at 12 ("The consent judgment would grant DOJ unfettered access to voters' driver's license numbers, dates of birth, and partial social security numbers, all of which are meant to be kept 'confidential' under state law."). Because this issue was raised by both the Alliance and the DNC, the court will address it below.

5

Case 5:25-cv-00283-M-RJ     Document 87     Filed 01/12/26     Page 5 of 9

In sum, the Alliance fails to show it has a right to intervene, in that it has failed to demonstrate an interest, which is properly related to this limited enforcement action, that was not adequately represented by the parties in this action. *See* Fed. R. Civ. P. 24(a)(2). Moreover, even if the Alliance had demonstrated it "has a claim or defense that shares with the main action a common question of law or fact," its nonessential intervention in this completed action would unduly delay and prejudice the adjudication of the government's right to enforce—and the State Board's right to implement—federal voting laws. *See Stuart*, 706 F.3d at 350 ("It is incontrovertible that motions to intervene can have profound implications for district courts' trial management functions. Additional parties can complicate routine scheduling orders, prolong and increase the burdens of discovery and motion practice, thwart settlement, and delay trial."). Thus, the court will not permit the Alliance to intervene. *See* Fed. R. Civ. P. 24(b).

DNC's Renewed Motion to Intervene

The DNC renews its motion to intervene arguing that the Order presents a "live" issue in permitting the State Board to provide the United States with certain voter records, which may contain private information, and to seek a protective order governing the use and release of any confidential data. *See* Order ¶ 11 ("Disclosure Clause"). The DNC contends that the possible disclosure of private voter information (including driver's license numbers and partial social security numbers) to the government may cause some Democratic voters to remove themselves from the voter rolls. DE 76 at 4-5. To ensure that any such disclosure of private information remains confidential, the DNC proposes certain terms to be included in a protective order governing the disclosure. *Id.* at 6. In addition, the Alliance asserts generally that the Disclosure Clause "runs afoul of state privacy laws" (DE 74 at 12) and that the "DOJ has no entitlement to the sensitive voter data it seeks" (DE 83 at 7).

6

The parties oppose intervention on this basis, arguing first that the United States has made no request for information or documents pursuant to the Disclosure Clause and, thus, any request for relief is premature. The parties also contend that the Order does not grant the United States "unfettered access" to private information as suggested by the Alliance; rather, to "ensure that no unlawful use or disclosure of confidential information arises during the compliance period," the Order specifically reserves the State Board's right "to seek a protective order from the Court." DE 82 at 9. Finally, the parties assert that they will treat any confidential data in accordance with state and federal laws, including the Privacy Act, 5 U.S.C. § 552a, et seq., as set forth in paragraph 11 (or, the Disclosure Clause) of the Order. *See* DE 80 at 10-11 (the United States (more particularly, the Civil Rights Division of the Department of Justice) "has longstanding protocols in place consistent with Privacy Act protections").

The DNC is not persuaded. Citing recent news articles, the DNC contends that the Department of Justice not only is "develop[ing] a national voter file" but also has improperly "shared voter information" with the Department of Homeland Security, and argues that the United States may do the same with any information shared in accordance with the Order. The DNC asserts that intervention is necessary to protect its members' privacy interests, particularly in light of the United States' "conce[ssion] that it will grab sensitive voter data wherever it can and use that data however it wants, including sharing the data with anyone it chooses." DE 81 at 5. The Alliance echoes the DNC's concerns. *See* DE 83 at 8.

The court finds the proposed intervenors' arguments in this case speculative and premature. The DNC and Alliance's claimed interest under Rule 24(a)(2)—protecting the privacy of their members' identifying information—is, on its face, adequately represented in this action by the requirements set forth in the Order. The Disclosure Clause provides:

> 11. State Board Defendants will make available to the United States upon request

7

Case 5:25-cv-00283-M-RJ    Document 87    Filed 01/12/26    Page 7 of 9

> any non-privileged documents created or maintained by State Board Defendants regarding compliance with this Order or compliance with Section 303(a)(5) of HAVA, including voter records in the State's HAVA List and any relevant documents that the State Board Defendants may be required to produce or retain under North Carolina State law. As used herein, "voter records" means an electronic copy of the State's HAVA list including each registrant's full name, date of birth, residential address, his or her driver's license number or state identification number or the last four digits of the registrant's social security number, which is the information required under HAVA to register individuals for Federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i). All records and data received by the United States from the State Board Defendants will be kept securely and treated consistently with the Privacy Act, 5 U.S.C. § 552a, et seq. To the extent confidential records or data is requested, the State Board Defendants reserve the right to seek a protective order from the court.

Order, DE 72. No party disputes that the United States has made no request for the information described in the Disclosure Clause. If it does so in the future, the State Board has expressed its "inten[t] to seek a protective order similar to protective orders entered in other actions in which similar records were disclosed as part of litigation," and "anticipates that any such request would include the same or similar protective provisions to what is contemplated by the DNC in their moving papers." DE 82 at 9. To the extent that they are properly presented, the court will accept and consider briefs filed by *amici curiae* with any motion(s) for protective order filed in this case. Thus, in this regard, the court finds the proposed intervenors have failed to demonstrate that they have a claimed interest in the subject of this enforcement action and are so situated that disposition may impair or impede their ability to protect such interest.

The Alliance has expressed its concern that the Order "provides no guarantee that the Alliance would even be notified of [the United States'] demand, nor given time to intervene before the Board complied." DE 83 at 9. The court is not persuaded; the proposed intervenors have demonstrated their abilities to monitor and participate in this action. In fact, in its response brief, the DNC recounts its own act that purportedly led to the State Board's "change of course" in

ensuring that the Order "recogniz[e] that votes cast by registrants impacted by the Decree must be counted in federal contests." DE 76 at 2.

In conclusion, the DNC and the Alliance have failed to demonstrate they have a right or should be permitted to intervene in this HAVA enforcement action. Their motions [DE 73, 75] are DENIED.

SO ORDERED this 12th day of January, 2026.

_____
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE