# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA,

     *Plaintiff,*

v.

GREGG M. AMORE, in his official capacity as Secretary of State for the State of Rhode Island,

     *Defendant.*

Case No. 25-cv-00639-MSM-PAS

## SEIU DISTRICT 1199NE, RHODE ISLAND ALLIANCE FOR RETIRED AMERICANS, CAROLYN BETENSKY, AND MICHAEL "ZACK" MEZERA'S REPLY IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

INTRODUCTION ............................................................................................... 1

ARGUMENT .................................................................................................... 3

I.    The motion to dismiss is procedurally proper................................................ 3

II.   The Court must review the lawfulness of DOJ's demand. ................................ 4

III.  DOJ is not entitled to the voter list because it failed to provide an
      adequate basis and purpose under the CRA.................................................. 6

      A.    DOJ did not provide any statement of the basis for its demand............ 6

      B.    DOJ did not provide a legally sufficient purpose for its demand.......... 8

IV.   Title III does not prohibit redaction of sensitive voter information. .............. 11

V.    DOJ's failure to comply with the Privacy Act is further grounds for
      dismissal...................................................................................................... 15

CONCLUSION.................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alabama ex rel. Gallion v. Rogers,*
    187 F. Supp. 848 (M.D. Ala. 1960) ............................................................. 8, 12

*Blackstone Realty LLC v. F.D.I.C.,*
    244 F.3d 193 (1st Cir. 2001) ............................................................. 16

*Bostock v. Clayton Cnty.,*
    590 U.S. 644 (2020) ............................................................. 9

*CFPB v. Accrediting Council for Indep. Colls. & Schs.,*
    854 F.3d 683 (D.C. Cir. 2017) ............................................................. 5, 6

*CFPB v. Source for Pub. Data, L.P.,*
    903 F.3d 456 (5th Cir. 2018) ............................................................. 4, 5, 7

*Coalition for Open Democracy v. Scanlan,*
    No. 1:24-CV-00312-SE-TSM, 2025 WL 1503937 (D.N.H. May 27, 2025) ....... 14

*Coleman v. Kennedy,*
    313 F.2d 867 (5th Cir. 1963) ............................................................. 7

*Dinkens v. Att'y Gen. of U.S.,*
    285 F.2d 430 (5th Cir. 1961) ............................................................. 8

*Dodson v. Hollman,*
    958 F.2d 361 (1st Cir. 1992) ............................................................. 16

*Hines v. Davidowitz,*
    312 U.S. 52 (1941) ............................................................. 13

*In re Coleman,*
    208 F. Supp. 199 (S.D. Miss. 1962) ............................................................. 7

*In re Wallace,*
    170 F. Supp. 63 (M.D. Ala. 1959) ............................................................. 12

*Kennedy v. Lynd,*
    306 F.2d 222 (5th Cir. 1962) ............................................................. 3, 5, 7, 11

*Maine Forest Prods. Council v. Cormier,*
    51 F.4th 1 (1st Cir. 2022) ................................................................ 12

*Medtronic, Inc. v. Lohr,*
    518 U.S. 470 (1996) ...................................................................... 12

*Okla. Press Pub. Co. v. Walling,*
    327 U.S. 186 (1946) ........................................................................ 5

*Pejepscot Indus. Park, Inc. v. Maine Cent. R.R. Co.,*
    215 F.3d 195 (1st Cir. 2000) ........................................................... 6

*Philip Morris Inc. v. Harshbarger,*
    122 F.3d 58 (1st Cir. 1997) ...................................................... 12, 13

*Q Div. Recs., LLC v. Q Recs., QVC, Inc.,*
    No. CIV. A. 99-10828-GAO, 2000 WL 294875 (D. Mass. Feb. 11, 2000)......... 15

*Smith v. City of Jackson,*
    544 U.S. 228 (2005) ...................................................................... 13

*United States v. Apel,*
    571 U.S. 359 (2014) ........................................................................ 5

*United States v. Powell,*
    379 U.S. 48 (1964) ................................................................... 2, 4, 5

*United States v. Sepulveda-Hernandez,*
    752 F.3d 22 (1st Cir. 2014) ............................................................. 8

*United States v. Weber,*
    --- F. Supp. 3d ----, No. 2:25-cv-09149, 2026 WL 118807 (C.D. Cal.
    Jan. 15, 2026) ................................................................... *passim*

*Whitman v. Am. Trucking Ass'ns,*
    531 U.S. 457 (2001) ........................................................................ 9

**Statutes, Rules, and Regulations**

5 U.S.C. § 552a(a) .......................................................................... 15

15 U.S.C. § 49 ................................................................................. 5

26 U.S.C. § 7602 ............................................................................. 5

26 U.S.C. § 7604(a) ............................................................................................. 3

52 U.S.C. § 20507(i) ........................................................................................... 14

52 U.S.C. § 20703............................................................................................ *passim*

52 U.S.C. § 20704 .............................................................................................. 13

52 U.S.C. § 20705 ............................................................................................... 3

R.I. Gen. Laws 17-9.1-34(f) ............................................................................... 11

82 Fed. Reg. 24147 (May 25, 2017) ................................................................. 16

410 R.I.C.R. 20-00-19.5(I) ................................................................................. 11

LR Cv 7(a)(4) ...................................................................................................... 1

## Other Authorities

Antonin Scalia & Brian A. Garner, *Reading Law* (2012) ..................................... 8, 14

*Basis*, *Black's Law Dictionary* (4th ed. 1968) ................................................... 6

Mariana Alfaro, *Trump Wants to "Nationalize the Voting," Seeking to Grab States' Power*, Wash. Post (Feb. 3, 2026), https://www.washingtonpost.com/politics/2026/02/02/trump-elections-nationalize-fraud/ ............................................................................................... 1

*Read Bondi's Letter to Minn. Governor*, N.Y. Times (Jan. 24, 2026), https://www.nytimes.com/interactive/2026/01/24/us/pam-bondi-walz-doc.html ............................................................................................................. 1

# INTRODUCTION

This lawsuit is part of a relentless pressure campaign by the U.S. Department of Justice ("DOJ") to obtain full, unredacted statewide voter lists containing the sensitive personal information of every voter from States across the country. DOJ has sent demand letters to nearly every State and filed dozens of lawsuits nearly identical to this one seeking to compel the production of such voter lists. DOJ has resorted to extraordinary measures to coerce those States into complying, including a recent letter in which the Attorney General demanded that the Minnesota Governor provide DOJ with the voter list as an apparent condition for withdrawing the thousands of federal agents now in Minneapolis,[1] and recent statements from President Trump urging Republicans to "take over the voting . . . in at least 15 places" and to "nationalize the voting."[2] Recently, two federal courts have recognized the illegality of this effort and granted motions to dismiss DOJ's parallel lawsuits in California and Oregon. *See generally United States v. Weber*, --- F. Supp. 3d ----, No. 2:25-cv-09149, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026); Minute Entry, *United States v. Oregon*, No. 6:25-cv-01666 (D. Or. Jan. 26, 2026), Dkt. No. 68.

DOJ's opposition only confirms that this Court should dismiss this action, too.[3]

---

[1] *Read Bondi's Letter to Minn. Governor*, N.Y. Times (Jan. 24, 2026), https://www.nytimes.com/interactive/2026/01/24/us/pam-bondi-walz-doc.html.

[2] Mariana Alfaro, *Trump Wants to "Nationalize the Voting," Seeking to Grab States' Power*, Wash. Post (Feb. 3, 2026), https://www.washingtonpost.com/politics/2026/02/02/trump-elections-nationalize-fraud/.

[3] DOJ calls its brief a consolidated opposition to the motions to dismiss and a reply in support of its motion to compel. To the extent that the brief is a reply in support of

DOJ's threshold argument that the motions to dismiss are procedurally improper relies primarily on a 1962 Fifth Circuit decision that is irreconcilable with subsequent Supreme Court precedent construing a statute with identical operative text. *See United States v. Powell*, 379 U.S. 48, 58 n.18 (1964). And dismissal is warranted because DOJ failed to satisfy the core statutory requirement that it provide both "the basis and the purpose" for its demand under Title III of the Civil Rights Act of 1960 ("CRA"). 52 U.S.C § 20703. DOJ's opposition does not identify *any* "basis" for the demand aside from the CRA itself. DOJ instead argues, in the teeth of the statutory text, that it may demand records "merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." ECF No. 33 ("DOJ Opp.") at 5 n.2 (quoting *United States v. Bisceglia*, 420 U.S. 141, 148 (1975)); *see also id.* at 5 (contending that DOJ can demand records without "even allegations of misconduct"). But in expressly requiring that "the basis and the purpose" be provided in any demand for the production of voter information, the CRA demands more. And DOJ's stated purpose—to investigate Rhode Island's compliance with the National Voter Registration Act ("NVRA") and the Help America Vote Act ("HAVA")—is not a valid purpose under the CRA, which is concerned with protecting the constitutional right to vote rather than with enforcing election administration rules.

Two other independent reasons require dismissal here: (1) Rhode Island state law prohibits the disclosure of the sensitive information DOJ seeks, and the CRA does

---

its motion to compel, it was filed a week too late. *See* LR Cv 7(a)(4); Text Order Entering Joint Stipulation (Jan. 6, 2026). The 1199NE Intervenors therefore treat the entire brief as responsive to the motion to dismiss, and respond accordingly.

not preempt Rhode Island's privacy laws; and (2) DOJ failed to comply with prerequisites imposed by the federal Privacy Act before it can collect the data it seeks here. In both instances, DOJ simply asserts its position without any legal argument. DOJ says that the CRA preempts Rhode Island law in a single sentence—but conducts no preemption analysis anywhere in its brief. And DOJ claims that it complied with the Privacy Act—but never even tries to articulate how the notices of use it relies on could conceivably be read to encompass Rhode Island's statewide voter list. For all of these reasons, this suit should be dismissed.

## ARGUMENT

### I.    The motion to dismiss is procedurally proper.

DOJ's lead argument—that a motion to dismiss is procedurally improper in a Title III proceeding—is squarely foreclosed by Supreme Court precedent. *Contra* DOJ Opp. at 4–5, 10. In advancing this argument, DOJ relies on *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962), and a handful of other out-of-circuit civil-rights-era cases from the early 1960s. *See* DOJ Opp. at 4–5. But as the 1199NE Intervenors have explained, those cases are wholly irreconcilable with the Supreme Court's subsequent decision in *Powell*. *See* ECF No. 29 ("1199NE MTC Opp.") at 4–6.

DOJ protests that *Powell* involved a different statute. DOJ Opp. at 5, 10. But the relevant text of the statute construed in *Powell* was *identical* to the relevant part of the CRA—both provide that district courts "shall have jurisdiction by appropriate process to compel" the production of the records the government seeks. *See* 26 U.S.C. § 7604(a); 52 U.S.C. § 20705. *Powell* held that because 26 U.S.C. § 7604(a) "contain[ed] no provision specifying the procedure to be followed in invoking the

court's jurisdiction, *the Federal Rules of Civil Procedure apply*." 379 U.S. at 58 n.18 (emphasis added). The same must be true of the CRA's identical text. As a result, *Lynd*—which was never binding on this Court—has been entirely displaced,[4] and the 1199NE Intervenors' motion to dismiss under Rule 12(b)(6) is procedurally proper. *See Weber*, 2026 WL 118807, at *8 (holding that DOJ's parallel California lawsuit was governed by Federal Rules before proceeding to evaluate and grant motions to dismiss). No decision since *Powell* has held otherwise.

## II.    The Court must review the lawfulness of DOJ's demand.

DOJ is also wrong to argue that no meaningful judicial review of its demand is permitted. The CRA is unequivocal: any demand by DOJ under the CRA "*shall* contain a statement of *the basis and the purpose* therefor." 52 U.S.C. § 20703 (emphasis added). When the government comes to court to compel the production of records, courts routinely review the lawfulness of the government's demand. *See, e.g.*, *Powell*, 379 U.S. at 57 (holding that the government must show its investigation "will be conducted pursuant to a legitimate purpose" and that "the inquiry may be relevant to the purpose"); *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458–60 (5th Cir. 2018) (reversing order to enforce civil investigative demand after inquiry into the sufficiency of the purpose and basis of demand). That is because, as *Powell* explains, "[i]t is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused." 379 U.S. at 58. Contrary to

---

[4] DOJ also fails to address or even acknowledge the many significant differences between the facts and context of *Lynd* and those in DOJ's current spree of demands for voter lists here and throughout the country, as the 1199NE Intervenors have also catalogued. *See* 1199NE MTC Opp. at 7–9; *see generally* DOJ Opp.

DOJ's argument, *see* DOJ Opp. at 10, this is not limited to records requested pursuant to the IRS's authority under 26 U.S.C. § 7602. *See, e.g.*, *Source for Pub. Data, L.P.*, 903 F.3d at 458–60 (civil investigative demand issued by CFPB); *CFPB v. Accrediting Council for Indep. Colls. & Schs.* ("*ACICS*"), 854 F.3d 683, 690 (D.C. Cir. 2017) (same).

DOJ's attempt to distinguish these cases as involving a mere "subpoena" power fails. For one thing, *neither* the CRA *nor* 26 U.S.C. § 7602 uses the word "subpoena," so DOJ's contention that "[t]he word 'subpoena' is nowhere to be found in Title III," DOJ Opp. at 10, does nothing to distinguish this case from IRS cases like *Powell*. Nor does the word "subpoena" appear in *Powell* except in one stray reference in which the Court was summarizing a different case under the Fair Labor Standards Act, which incorporated the FTC Act's authorization for administrative "subpoena[s]." *See* 379 U.S. at 57 (citing *Okla. Press Pub. Co. v. Walling*, 327 U.S. 186, 216 (1946)); *see also Okla. Press. Pub. Co.*, 327 U.S. at 200 n.24; 15 U.S.C. § 49.

Moreover, DOJ's argument that "[f]ederal election records requests pursuant to the CRA do not have" the same "limitations" as does the IRS's subpoena power, DOJ Opp. at 10, "is not a legal argument; it simply assumes the conclusion." *United States v. Apel*, 571 U.S. 359, 370 (2014). In fact, the CRA does impose limitations, including the express requirement that the demand state "the basis and the purpose" for the government's request. 52 U.S.C. § 20703. Even under the *Lynd* court's understanding of the law, under the CRA, a court must decide "whether the written demand has been made" according to "§ [20703]." 306 F.2d at 226. The Court must therefore conduct a meaningful review of DOJ's demand for Rhode Island's voter list

5

to determine whether it satisfies the CRA. *See, e.g., ACICS*, 854 F.3d at 690 (declining to enforce civil investigative demand where agency failed to comply with statutory requirements); *Weber*, 2026 WL 118807, at *8–10 (holding that "DOJ has not complied with Title III of the CRA and has provided an inadequate statement of basis and purpose" and dismissing claim as a result).

## III.  DOJ is not entitled to the voter list because it failed to provide an adequate basis and purpose under the CRA.

DOJ's demand for Rhode Island's statewide voter registration list fails to satisfy the CRA's express statutory requirement to provide a statement of "the basis *and* the purpose for" its demand. *See* 52 U.S.C. § 20703 ("This demand shall contain a statement of the basis *and* the purpose therefor.") (emphasis added); *see also* ECF No. 28 ("1199NE Mot. Dismiss") at 12–13.

### A.  DOJ did not provide any statement of the basis for its demand.

As 1199NE Intervenors have explained, DOJ failed to include *any* statement of the "basis" for its demand in its September 8, 2025 letter to Secretary Amore. *See* 1199NE Mot. Dismiss at 12–13. In its opposition, DOJ puzzlingly asserts that "the basis for the demand was Title III of the Civil Rights Act of 1960 (CRA)." DOJ Opp. at 2. But that is the *authority* under which the request was purportedly made, not the factual *basis* for the request. *See, e.g.*, *Basis*, *Black's Law Dictionary* (4th ed. 1968) (including definitions for "basis" such as the "groundwork," "support," or "foundation" of something). The CRA cannot be the "basis" for a CRA demand under the statute— if it could, the statutory requirement to provide the "basis" would be superfluous, as any CRA demand is necessarily issued under the CRA. *See Pejepscot Indus. Park, Inc.*

*v. Maine Cent. R.R. Co.*, 215 F.3d 195, 202 (1st Cir. 2000) ("A reading that renders a statutory provision surplusage is disfavored.").

Even the civil-rights-era cases that DOJ relies on show that DOJ has historically understood this requirement to call for an accounting of the factual basis for its investigation. *See, e.g., Lynd*, 306 F.2d at 229 n.6 ("This demand is *based upon* information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction.") (emphasis added); *In re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962), *aff'd sub nom. Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) (similar). In contrast, DOJ's fishing expedition here, whose purpose (in DOJ's own words) is to "ascertain Rhode Island's compliance with the list maintenance requirements of the NVRA and HAVA," with no hint or suggestion of a "possible" violation of any law, falls short of meeting this standard. Riordan Decl., Ex. 1 at 1, ECF No. 2-2; *see also* 1199NE Mot. Dismiss. at 11–12.

DOJ also asserts that the factual support for its purported basis cannot be challenged, *see* DOJ Opp. at 8, but the question of whether DOJ's stated basis must be "'plausible,' 'truthful,' or 'adequate,'" *id.*, is not one that this Court need answer, because DOJ's demand failed to provide *any basis at all*.[5] As such, DOJ undeniably failed to specify "the basis . . . for" its demand. That by itself is sufficient to require dismissal. *See, e.g., Source for Pub. Data*, 903 F.3d at 460 (declining to enforce civil

---

[5] That said, the 1199NE Intervenors submit that it would be quite shocking to entitle DOJ to sensitive voter information on implausible, false, or inadequate grounds.

investigative demand because "[an agency] must comply with statutory requirements, and here it did not"); *Weber*, 2026 WL 118807, at *9 (holding that DOJ failed to "establish[] the basis for its request" because it failed to explain why it believed California violated the NVRA or why the voter registration list was necessary for its investigation).

### B.    DOJ did not provide a legally sufficient purpose for its demand.

DOJ's demand also fails to satisfy Title III's separate "purpose" requirement. Congress enacted Title III "to secure a more effective protection of the right to vote." *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961); *see also* H.R. Rep. No. 86-956, at 7 (1959) (explaining Congress enacted Title III to aid DOJ "during any investigation it may conduct on complaints of a denial to vote"). But DOJ is not seeking Rhode Island's voter list because it suspects any specific violations of federal law or infringement of the right to vote. Rather, DOJ's opposition confirms that DOJ seeks the list to assess Rhode Island's compliance with the administrative requirements of the NVRA and HAVA. *See* DOJ Opp. at 8. As explained, this is not a sufficient purpose under Title III. *See* 1199NE Mot. Dismiss. at 9–12.

DOJ's opposition contends that CRA investigations cannot be limited to those based on racial discrimination or violations of the right to vote. DOJ Opp. at 7. But DOJ's argument ignores that, when construing the "purpose" requirement, the "statute ought to be read as a whole." *United States v. Sepulveda-Hernandez*, 752 F.3d 22, 27 (1st Cir. 2014); *see also* Antonin Scalia & Brian A. Garner, *Reading Law*

145 (2012) ("The text must be construed as a whole."). DOJ also ignores the well-established principle that courts must "account for both the specific context in which . . . language is used and the broader context of the statute as a whole." 1199NE Mot. Dismiss at 10 (quoting *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 321 (2014) (alteration in original) (citation modified)).

Here, the term "purpose" must be read in the context of the CRA—a law designed to enhance DOJ's enforcement powers for the protection of *civil rights* provided by the Civil Rights Act of 1957. *See id.* at 10–12; *see also Bostock v. Clayton Cnty.*, 590 U.S. 644, 655 (2020) (interpreting Title VII of the Civil Rights Act of 1964 by "orient[ing] ourselves to the time of the statute's adoption"). To do otherwise would be to assume Congress intended for DOJ to be able to demand state election records for the purpose of investigating compliance with *any* federal statute, even if those statues dealt with subjects as far afield from the CRA as antitrust, bankruptcy, or admiralty law. Had Congress intended such a sweeping result, it surely would have said so explicitly. *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress . . . does not, one might say, hide elephants in mouseholes.").

As the 1199NE Intervenors have noted, DOJ has not cited any case in which a court has upheld a demand made under the CRA for the purpose of assessing States' NVRA or HAVA compliance. *See* 1199NE Mot. Dismiss at 12. DOJ now contends that it "has pursued successful matters" to obtain voter lists under the CRA for this purpose. DOJ Opp. at 15 & n.5. But in neither of the instances it cites was the applicability of the CRA contested or resolved by a court. In the first, Georgia entered

a consent decree with DOJ immediately after DOJ sued to "resolv[e] this matter without the need for litigation," and in the second, Texas chose to enter a Memorandum of Understanding with DOJ without any litigation. *See id.*, Exs. 2–4. In other words, the fact remains that no *court* has ever held that investigating NVRA and HAVA compliance is a proper purpose under the CRA.

In addition, even assuming that assessing NVRA or HAVA compliance was a valid purpose, Rhode Island's full and unredacted voter list is neither helpful nor necessary for this purpose because it cannot tell DOJ anything about the list maintenance procedures Rhode Island undertook. *See* 1199NE Mot. Dismiss at 14–15. DOJ offers no answer on this point, *see generally* DOJ Opp., further undermining its claim. *See Weber*, 2026 WL 118807, at *9 ("even if compliance with the NVRA was a valid purpose, the DOJ states no reason why an unredacted version of California's voter list is necessary under the NVRA").

Finally, DOJ's claim must also be dismissed because, whatever the propriety of its stated purpose, there is ample evidence that it was not its true purpose. *See* 1199NE Mot. Dismiss at 15. DOJ calls such concerns "speculative" and argues that its motives may not be questioned, but it never tries to explain why these concerns are wrong. *See* DOJ Opp. at 9. As noted, the 1960s-era cases that DOJ relies on all involved situations where Title III was unquestionably being used for its stated purpose—investigating the potential denial of voting rights on the basis of race—and so there was no need for any such inquiry. *See* 1199NE Mot. Dismiss at 12 n.10. And, as the California court correctly observed, courts need not accept "contrived"

rationales, particularly when DOJ's own recent public statements have made clear that its purposes go "beyond their purported compliance check with the NVRA and into the territory of comprehensive data collection." *Weber*, 2026 WL 118807, at \*10 (citing *Dep't of Commerce v. New York*, 588 U.S. 752, 756 (2019)).

## IV.   Title III does not prohibit redaction of sensitive voter information.

DOJ's complaint must also be dismissed because Rhode Island is entitled to redact sensitive personal information from any production of the statewide voter list, including if produced in response to a demand under the CRA. *See* 1199NE Mot. Dismiss at 15–18. Indeed, Secretary Amore has already offered to provide DOJ with a copy of the publicly available voter registration list, meaning that the only dispute here is whether DOJ can compel disclosure of *sensitive personal information*. DOJ does not contest that Rhode Island law protects such information. *See generally* DOJ Opp.; *see also* 410 R.I.C.R. 20-00-19.5(I); R.I. Gen. Laws § 17-9.1-34(f). The only question is whether the CRA preempts these laws and demands the production of sensitive information to begin with. It does not.

*First*, as previously noted, the chief case on which DOJ relies itself makes clear that Title III is intended to reach only "*public* records which ought ordinarily to be open to legitimate reasonable inspection," *not* "confidential, private papers and effects." *Lynd*, 306 F.2d at 231 (emphasis added); *see also* 1199NE Mot. Dismiss at 16. DOJ entirely fails to address or even acknowledge this. *See* DOJ Opp. at 11–15.

*Second*, Title III does not preempt Rhode Island's privacy laws protecting the information at issue. *See* 1199NE Mot. Dismiss at 15–18. DOJ asserts in one sentence that the CRA preempts such laws—but it entirely fails to make any argument to this

11

effect or to conduct any preemption analysis. *See* DOJ Opp. at 11.[6] This failure is fatal for DOJ's claim, as "the burden of proving preemption lies with the parties asserting it (here, the plaintiffs)." *Maine Forest Prods. Council v. Cormier*, 51 F.4th 1, 6 (1st Cir. 2022) (citing *Capron v. Off. of Att'y Gen. of Mass.*, 944 F.3d 9, 21 (1st Cir. 2019)).

Title III contains no express preemption provision, *see* 52 U.S.C. § 20703, and DOJ does not attempt to claim it does. To preempt Rhode Island's privacy laws, then, the CRA must impliedly conflict with those privacy laws. Both the Supreme Court and First Circuit, however, have recognized a strong presumption against implied preemption, *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996); *Philip Morris Inc. v. Harshbarger*, 122 F.3d 58, 68 (1st Cir. 1997), pursuant to which courts should assume that state law is not preempted unless that was the "clear and manifest purpose of Congress." *Philip Morris*, 122 F.3d at 68 (citation omitted).

Title III does not evince anything resembling a "clear and manifest purpose" that Congress intended to preempt state privacy laws that protect highly sensitive information. To the contrary, the issue is completely unaddressed, which is hardly

---

[6] DOJ also misidentifies the source of law under which the CRA was enacted in contending that Congress was "acting under the Elections Clause." DOJ Opp. at 5–6. As the 1199NE Intervenors have explained, Title III of the CRA was passed by Congress to investigate denials of the right to vote based on race. *See* 1199NE Mot. Dismiss at 10–11; *see also Weber*, 2026 WL 118807 at *8 ("The purpose of Title III is to detect voting-related racial discrimination."). And the cases DOJ relies on held that the CRA was enacted pursuant to the Fifteenth Amendment, not the Elections Clause. *See Gallion*, 187 F. Supp. at 853–54 (collecting cases upholding the Civil Rights Acts of 1957 and 1960 as "appropriate legislation" under the Fifteenth Amendment); *see also In re Wallace*, 170 F. Supp. 63, 66 (M.D. Ala. 1959). Thus, even if the CRA showed any indication that it was intended to preempt state privacy laws—which it does not—the case law DOJ has cited about the supposed breadth of the Elections Clause in preempting state law is still irrelevant. *See* DOJ Opp. at 6.

surprising, as the private information sought here was not even required to be provided on registration forms until well after the enactment of Title III, which means Congress could not have intended it to require disclosure of that information. *See* 1199NE Mot. Dismiss at 16–17. The most DOJ can do is to point to 52 U.S.C. § 20704, which requires DOJ to protect information received pursuant to the demand, to suggest that the CRA must therefore envision the production of sensitive material. *See* DOJ Opp. at 12. But that is miles away from the "actual conflict" needed for implied preemption, which requires a situation where "compliance with both state and federal law is a 'physical impossibility'" or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Philip Morris*, 122 F.3d at 68 (citing *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 143 (1963) and *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). Because no such actual conflict exists, Rhode Island's privacy laws are not preempted.

*Third*, the overwhelming judicial consensus that redaction is permitted under the NVRA reinforces that it should also be permitted under the CRA. *See* 1199NE Mot. Dismiss at 15–16. DOJ argues that "the NVRA does not supersede the CRA as a later enacted statute," DOJ Opp. at 11–12, but that argument misses the point. The NVRA does not supersede the CRA; rather, the two provisions should be interpreted similarly because they address closely related subjects and Congress used markedly similar language in crafting those enactments. *See, e.g.*, *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) (plurality opinion) ("[W]hen Congress uses the same language in two statutes having similar purposes . . . it is appropriate to presume that Congress

intended that text to have the same meaning in both statutes."); Scalia & Garner at 252 ("[L]aws dealing with the same subject . . . should if possible be interpreted harmoniously.").[7] A straightforward application of that principle dooms DOJ's claim. Numerous courts have held that the NVRA does not prohibit States from redacting precisely the information that DOJ demands here. *See, e.g.*, 1199NE Mot. Dismiss at 15–16 (collecting cases); *Weber*, 2026 WL 118807, at *12–13 (noting that DOJ conceded that States are entitled to redact sensitive voter information under the NVRA in briefs as recently as 2023). Because the NVRA and Title III should be interpreted similarly with respect to demands for the information at issue, Title III cannot be read to preempt state privacy laws that prohibit the disclosure of highly sensitive voter information. It would make little sense to conclude that the CRA demands that Rhode Island provide sensitive information for purposes of allowing DOJ to assess the State's NVRA compliance, when the NVRA itself does not require production of that information. DOJ, once again, has no answer to this, and this too is another independent basis for dismissal.[8]

---

[7] Both Title III and the NVRA require disclosure of certain records relating to voter registration, and they employ similar language to do so. *Compare* Title III, 52 U.S.C. § 20703 (covered voting records held by a state election official "shall, upon demand in writing by the Attorney General . . . be made available for inspection"), *with* NVRA, 52 U.S.C. § 20507(i)(1) (requiring that States "shall make [covered voting records] available for public inspection").

[8] There is also no merit to DOJ's contention that it should be handed the sensitive information it seeks because "private parties have been granted access to even more detailed voter data than what the United States has requested." DOJ Opp. at 14. To the contrary, in the case DOJ cites, *Coalition for Open Democracy v. Scanlan*, No. 1:24-CV-00312-SE-TSM, 2025 WL 1503937 (D.N.H. May 27, 2025), the court excluded social security numbers and other confidential information, and entered a

**V.    DOJ's failure to comply with the Privacy Act is further grounds for dismissal.**

Finally, DOJ's claim must also be dismissed based on its failure to comply with the Privacy Act. *See* 1199NE Mot. Dismiss at 18–22. DOJ contends that because the Privacy Act regulates only federal agencies, it "does not restrict the ability of state actors to share information with federal agencies." DOJ Opp. at 15. But this ignores the central point: the Privacy Act imposes statutory requirements on DOJ that must be completed before DOJ may maintain, collect, or use Rhode Island's statewide voter registration list. *See* 5 U.S.C. § 552a(a)(3) (defining "maintain" to include "maintain, collect, use, or disseminate"). That the Privacy Act does not regulate state entities is irrelevant, because it bars *DOJ* from obtaining the relief it seeks in this action. *See Weber*, 2026 WL 118807, at *17–18 (holding DOJ's request for California's voter list violated Privacy Act in granting motion to dismiss).

DOJ next insists that it is not required to plead compliance with the Privacy Act, DOJ Opp. at 16, but that too is beside the point. It is well established that "[g]ranting a motion to dismiss is appropriate when the allegations in the pleadings make it certain that a bar to relief exists." *Q Div. Recs., LLC v. Q Recs., QVC, Inc.*, No. CIV. A. 99-10828-GAO, 2000 WL 294875, at *6 (D. Mass. Feb. 11, 2000) (citing

---

protective order strictly limiting who can view the limited information that was produced, how they can view it, and for what purposes. *See* Protective Order & Schedule A, *Coal. for Open Democracy v. Formella*, No. 1:24-CV-00312-SE-TSM (D.N.H. June 18, 2025), Dkt. Nos. 87 & 87-1. Despite having been told this in several parallel cases, *see, e.g.*, Reply Br. Supp. Mot. Intervene, *United States v. Weber*, No. 2:25-CV-09149-DOC-ADS (C.D. Cal. Nov. 3, 2025), Dkt. No. 31; Reply Br. Supp. Mot. Intervene, *United States v. Scanlan*, No. 1:25-CV-00371-AJ (D.N.H. Dec. 16, 2025), Dkt. No. 22, DOJ persists in repeating this false claim.

*LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir. 1998)); *see also Blackstone Realty LLC v. F.D.I.C.*, 244 F.3d 193, 197 (1st Cir. 2001) (holding that dismissal is proper on the basis of an affirmative defense when the facts are "clear 'on the face of the plaintiff's pleadings'") (citation omitted); *Dodson v. Hollman*, 958 F.2d 361 (1st Cir. 1992) (dismissing complaint when relief is barred). As DOJ does not contest, it was required to publish a System of Records Notice ("SORN") that would apply to Rhode Island's statewide voter list before it could collect that information. *See* 1199NE Mot. Dismiss at 20. And DOJ's complaint cites specific SORNs that DOJ apparently believed gave it this authority. Compl. ¶ 23. As explained, however, these SORNs cannot support its collection and maintenance of Rhode Island's voter registration list. *See* 1199NE Mot. Dismiss at 20–21 & n.11. It is thus clear on the face of the complaint that DOJ failed to comply with the Privacy Act, which independently warrants dismissal.

Once again, DOJ entirely fails to respond to this argument. Instead, it cites to both the same SORNs it identified in its complaint, along with a table of every other SORN ever issued by DOJ. *See* DOJ Opp. at 17 & n.8; *see also* 82 Fed. Reg. 24147 (May 25, 2017). DOJ makes no effort to explain how any SORN could be read to encompass Rhode Island's statewide voter registration list or how it has fulfilled the procedural safeguards of the Privacy Act. Because of this failure, the Privacy Act prohibits DOJ from obtaining—and then collecting, maintaining, and using—Rhode Island's statewide voter registration list and thus from prevailing on its claim.

16

## CONCLUSION

For the reasons stated above and those stated previously, the 1199NE Intervenors respectfully request that the Court dismiss the complaint.

Dated: February 3, 2026

Respectfully submitted,

*/s/ Amy R. Romero*
Amy R. Romero (RI Bar # 8262)
DELUCA, WEIZENBAUM, BARRY & REVENS, LTD.
199 North Main Street
Providence, RI 02903
Telephone: (401) 453-1500
amy@dwbrlaw.com
Cooperating counsel, Lawyers' Committee for RI

David R. Fox*
Robert Golan-Vilella*
Qizhou Ge*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Suite 400
Washington, D.C. 20001
Telephone: (202) 968-4490
Facsimile: (202) 968-4498
dfox@elias.law
rgolanvilella@elias.law
age@elias.law

Walker McKusick*
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
Telephone: (206) 656-0177
wmckusick@elias.law

*Counsel for Intervenors SEIU District
1199NE, Rhode Island Alliance for
Retired Americans, Carolyn Betensky,
and Michael "Zack" Mezera*

*\* Admitted Pro Hac Vice*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 3, 2026, I electronically filed the within document and it is available for viewing and downloading from the Court's CM/ECF system, and that the participants in the case that are registered CM/ECF users will be served electronically by the CM/ECF system.

<u>*/s/ Amy R. Romero*</u>

19